SDD/PT:AAS/DMP/ICR
F.#2014R00564

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

 –  –  –  –  –  –  –  –  –  –  –  – X

UNITED STATES OF AMERICA

    - against -

YING LIN,
        also known as "Randi Lin" and
        "Randy Lin,"

                Defendant.

 –  –  –  –  –  –  –  –  –  –  –  – X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>15-601 (S-1) (DLI)</u>
(T. 18, U.S.C., §§ 554, 981(a)(1)(C), 1349,
   1512(c)(2), 1512(k), 2 and 3551 et seq.;
   T. 28, U.S.C., § 2461(c); T. 31, U.S.C.,
   §§ 5317(c), 5324(a)(3) and 5324(d)(1);
   T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

    At all times relevant to this Superseding Indictment:

<u>INTRODUCTION</u>

I.    <u>The Defendant</u>

    1.    The defendant YING LIN, also known as "Randi Lin" and "Randy Lin,"

was a native of the People's Republic of China ("PRC") and a naturalized U.S. citizen who

resided in Queens, New York.   LIN was employed by an international air carrier (the

"Carrier") headquartered in the PRC.   LIN worked as a counter agent for the Carrier at John F.

Kennedy International Airport ("JFK Airport") in Queens, New York and later as the station

chief for the Carrier at Newark Liberty International Airport in Newark, New Jersey.

II.     The Transportation Security Administration

2.      The Transportation Security Administration ("TSA") was an agency of the United States Department of Homeland Security responsible for the security of the traveling public in the United States.   Pursuant to its regulatory authority, the TSA promulgated rules and regulations regarding, inter alia, the processing and screening of cargo and luggage transported on passenger flights within and from the United States.   As a foreign carrier operating in the United States, the Carrier was subject to TSA rules and regulations.

3.      Pursuant to Title 49, United States Code, Section 44906, each foreign air carrier was required to "adopt and use a security program" approved by the TSA.   TSA implementing regulations further provided that the security program shall "[p]revent cargo and checked baggage from being loaded aboard its airplanes unless handled in accordance with the foreign air carrier's security procedures."   The implementing regulations also provided that each foreign air carrier "must apply the security measures in its security program for persons who board the aircraft for transportation, and for their property."

4.      On or about February 17, 2002, the Carrier submitted to the TSA a model security program that provided, inter alia, that "checked baggage is accepted only from ticketed passengers."   As of September 30, 2013, the Carrier's security program required that it "ensure that checked baggage is accepted only from ticketed passengers, only by an authorized representative of the carrier, and, in the United States, only at the airport counters."

III.    The PRC Mission

5.      The Permanent Mission of the PRC to the United Nations (the "PRC Mission") was a diplomatic establishment in New York, New York serving as the PRC

3

delegation to the United Nations.   The PRC also maintained a Consulate in New York, New

York, which was a diplomatic establishment that provided consular services to PRC and

foreign citizens in the New York area (the "PRC Consulate").   The PRC Mission was

responsible for representing the PRC on the United Nations Security Council and in plenary

meetings of the United Nations General Assembly.   PRC personnel stationed at the PRC

Mission included officials from various arms of the PRC government, including the People's

Liberation Army and Ministry of Defense.   In order to obtain diplomatic status in the United

States, PRC personnel stationed at the PRC Mission were required to register with the U.S.

Department of State prior to or upon their entry into the United States.

IV.     The Defendant's Smuggling Activities

6.       The defendant YING LIN, also known as "Randi Lin" and "Randy Lin,"

used her position as a counter agent with the Carrier to smuggle items onto Carrier flights

departing from JFK Airport and carry out other tasks at the direction of: (a) PRC agents

working at the PRC Mission who had registered with the U.S. State Department as employees

of the PRC "Department of Defense" (the "PRC Military Officers"); (b) other PRC agents

working at the PRC Mission and the PRC Consulate; and (c) other PRC nationals.

7.       While working at the Carrier desk at JFK Airport, the defendant YING

LIN, also known as "Randi Lin" and "Randy Lin," accepted baggage from the PRC Military

Officers.   The PRC Military Officers were not passengers of the Carrier returning to the PRC.

LIN checked the PRC Military Officers' baggage in under other passengers' names, in

violation of the Carrier's model security program.   LIN also accepted unaccompanied

baggage from other PRC agents working at the PRC Mission and the PRC Consulate for shipment to the PRC aboard the Carrier's flights.

8.     In return for providing these services to the PRC, the defendant YING LIN, also known as "Randi Lin" and "Randy Lin," received benefits from the PRC Mission and the PRC Consulate, including tax-exempt purchases of discounted liquor and electronic devices, worth tens of thousands of dollars, as well as free contracting work by PRC construction workers at LIN's personal residence in Queens, New York.

V.     Scheme to Avoid Sales Tax

9.     The defendant YING LIN, also known as "Randi Lin" and "Randy Lin," arranged to purchase tax-free liquor and electronic devices through programs only available to diplomatic clientele.   LIN arranged these purchases via communications on LIN's personal email account (the "Lin Email Account") with the PRC Military Officers and other representatives from the PRC Mission or the PRC Consulate.   Some of the emails sent or received by LIN on the Lin Email Account were routed via electronic wire communications through a server in Mountain View, California.   By arranging to fraudulently purchase these goods through programs for which she was ineligible, LIN executed a scheme to deprive New York State taxation authorities of sales tax revenue.   These goods were often delivered to LIN's personal residence in Queens, New York or to LIN at JFK Airport.

A.     Bonded Warehouse Program

10.     The U.S. Department of State, Office of Foreign Missions ("OFM"), offered the Bonded Warehouse Program to foreign missions and their personnel so they could purchase tax-free and duty-free merchandise from approved bonded warehouse facilities in the

United States.   One such bonded warehouse facility in New York State was the Diplomatic

Shop, operated by the Diplomatic Duty Free Shops of New York.   OFM approved these

purchase requests only if the associated merchandise was intended either for the official

benefit of foreign missions or for the personal use of their eligible members.   Such articles

included alcoholic beverages, cigarettes and foodstuffs.

      11.    Foreign missions and personnel wishing to obtain tax-free and duty-free

purchases from a bonded warehouse facility were required to submit requests associated with

the purchase of tax-free and duty-free merchandise from bonded warehouse facilities via the

U.S. Department of State E-Government system, which was operated in Washington, D.C.   A

purchase request indicated, inter alia, the name of the mission, the user and the intended use of

the merchandise.   After approving a purchase request, OFM provided via the E-Government

system an approval form, which a diplomatic customer needed to present to the bonded

warehouse facility at the time of purchase.

      B.    Tax-Free Purchases

      12.    New York State imposed a sales tax on the sale of all tangible goods.

All merchandise such as liquor and electronics were subject to sales tax and sales tax reporting.

Businesses that sold goods that were subject to sales tax were required to register with the New

York State Department of Taxation and Finance ("NYS Tax Department") as sales tax

vendors.   Such businesses were required to impose a sales tax on the purchases of their

customers and remit such sales taxes to the NYS Tax Department on either a monthly or

quarterly basis, depending on the size of the business.   Such businesses were required to

accurately report the total amount of gross and taxable sales to the NYS Tax Department with their monthly or quarterly payments of sales tax.

13.    Consistent with state and federal law, Apple, Inc. ("Apple"), which was a manufacturer of electronic devices that operated retail outlets in New York State, permitted diplomatic customers who presented tax-exempt identification to make tax-free purchases at Apple retail outlets.   This purchase program was only available to diplomatic personnel. Each tax-free purchase caused the creation of an internal electronic form listing the details of the tax-free purchase, including the tax-exempt identification number used by the purchaser, which Apple maintained for inspection by the NYS Tax Department.   During the period from 2010 to 2015, Apple filed New York State and Local Quarterly Sales and Use Tax Returns with the NYS Tax Department together with its quarterly payments of sales tax.   These quarterly filings purported to set forth Apple's true and accurate gross sales of taxable goods for each quarter in which they were filed.

C.    The Illegal Scheme

14.    In return for her role in smuggling articles and goods aboard Carrier flights to the PRC, and on behalf of the defendant YING LIN, also known as "Randi Lin" and "Randy Lin," the PRC Military Officers and other personnel from the PRC Mission and the PRC Consulate made numerous tax-free purchases of (a) liquor from the Diplomatic Store through the Bonded Warehouse Program and (b) electronic devices from Apple retail outlets. In making these purchases, the PRC Military Officers and other PRC Mission personnel falsely informed OFM and Apple that these purchases were made for the official use of the PRC Mission or PRC Consulate or the personal use of their personnel.   As a result of these

7

improper purchases of electronics and liquor, LIN did not pay otherwise applicable New York State sales tax on these items.   LIN illegally arranged to purchase tax-free the following items on or about the following dates, knowing that these acquisitions were not supposed to be for her personal use:

| Date | Description Of Item Purchased |
|------|-------------------------------|
| 1/4/12 | One 13-inch 256 GB Apple MacBook Air with Core i7 processor |
| 2/9/12 | One unspecified Apple computer with $1,799 retail value and one white 32 GB iPad2 with wifi |
| 5/13/12 | One 64 GB iPad3 with wifi |
| 7/16/12 | One white 4G 32 GB iPad3 with wifi |
| 12/12/12 | Four bottles of Hennessey Richard, six bottles of Hennessey Paradis Extra and six bottles of Hennessey XO Grand Champagne |
| 12/31/12 | One white 16 GB iPad2 |
| 1/28/13 | Three black Apple 5 computers and two black 16 GB iPad mini devices |
| 1/13/14 | Ten bottles of Hennessey Richard, six bottles of Hennessey Paradis Extra and twenty-four bottles of Hennessey XO Grand Champagne |
| 10/25/14 | Two 16 GB iPad mini2 devices with wifi, one 128 GB iPhone6 and one 64 GB iPhone6+ |
| 11/6/14 | Three gold 16 GB iPhone 6+ |
| 3/21/15 | One gold 64 GB iPhone and one gold 1524 edition 64 GB iPhone |
| 5/11/15 | Two iWatches with stainless steel bands |

VI.   The Defendant's Obstruction of Justice

15.   During the summer and fall of 2015, the federal government was investigating the activities of a confederate (the "Confederate") of the defendant YING LIN, also known as "Randi Lin" and "Randy Lin."   The Confederate was a PRC national who visited the United States beginning in approximately August 2015.   The Confederate was the

owner of a large residence in Old Brookville, Long Island; LIN was responsible for renovating and furnishing the property, among other property management responsibilities.   As part of its investigation of the Confederate's activities, Special Agents of the Federal Bureau of Investigation interviewed LIN's two adult daughters on October 20, 2015.   During these interviews, agents asked LIN's daughters questions about the Confederate.

16.     Following these interviews, the defendant YING LIN, also known as "Randi Lin" and "Randy Lin," warned the Confederate about the federal government's interest in the Confederate's activities and instructed him to flee immediately.   At the request of the Confederate and while working with others, LIN arranged for the Confederate's immediate departure from the United States aboard a Carrier flight to the PRC.

17.     On or about October 28, 2015, the Confederate departed for Beijing, China aboard a Carrier flight from JFK Airport.

VII.   Currency Transaction Reports

18.     Domestic financial institutions were required to file a Currency Transaction Report ("CTR") with the Internal Revenue Service for each "deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000," pursuant to Title 31, United States Code, Section 5313(a) and Title 31, Code of Federal Regulations, Section 1010.311.

19.     "Structuring" a financial transaction meant the breaking down of a sum of currency exceeding $10,000 into smaller amounts of $10,000 or less prior to transacting business with a domestic financial institution in an attempt to evade currency reporting requirements, as defined in Title 31, Code of Federal Regulations, Section 1010.100(xx).

## COUNT ONE
(Smuggling)

20.     The allegations in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

21.     In or about and between January 2010 and April 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant YING LIN, also known as "Randi Lin" and "Randy Lin," together with others, did willfully, fraudulently and knowingly export and send from the United States, merchandise, articles and objects, to wit: unaccompanied baggage aboard outbound Carrier flights to the PRC, contrary to United States laws and regulations, to wit: Title 49, United States Code, Section 44906 and TSA implementing regulations, and did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

(Title 18, United States Code, Sections 554, 2 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Commit Wire Fraud)

22.     The allegations in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

23.     In or about and between January 2010 and August 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant YING LIN, also known as "Randi Lin" and "Randy Lin," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the NYS Tax

Department, and to obtain money and property, to wit: sales tax revenue, by means of

materially false and fraudulent pretenses, representations and promises, and for the purpose of

executing such scheme and artifice, to transmit and cause to be transmitted by means of wire

communication in interstate commerce, writings, signs, signals, pictures and sounds, contrary

to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT THREE
(Obstruction of Justice)

24.     The allegations in paragraphs 15 through 17 are realleged and

incorporated as if fully set forth in this paragraph.

25.     In or about and between October 2015 and April 2016, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant YING LIN, also known as "Randi Lin" and "Randy Lin," together with others, did

knowingly, intentionally and corruptly obstruct, influence and impede, and attempt to obstruct,

influence and impede, an official proceeding, to wit: a Federal Grand Jury investigation in the

Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

### COUNT FOUR
(Conspiracy to Obstruct Justice)

26.     The allegations in paragraphs 15 through 17 are realleged and

incorporated as if fully set forth in this paragraph.

27.     In or about and between October 2015 and April 2016, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

11

defendant YING LIN, also known as "Randi Lin" and "Randy Lin," together with others, did

knowingly, intentionally and corruptly conspire to obstruct, influence and impede an official

proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York,

contrary to Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 <u>et</u> <u>seq.</u>)

COUNT FIVE
(Structuring Financial Transactions)

28.     The allegations in paragraphs 18 and 19 are incorporated as if fully set

forth in this paragraph.

29.     On or about and between August 24, 2010 and August 24, 2015, both

dates being approximate and inclusive, within the Eastern District of New York and elsewhere,

the defendant YING LIN, also known as "Randi Lin" and "Randy Lin," together with others,

for the purpose of evading the reporting requirements of Title 31, United States Code, Section

5313(a), and the regulations prescribed thereunder, did knowingly and intentionally structure

and assist in structuring one or more transactions with one or more domestic financial

institutions, to wit: Citibank, N.A., HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., and

TD Bank, N.A., by making and causing to be made cash transactions in individual amounts of

less than $10,000, but in aggregate amounts in excess of $10,000.

(Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1); Title 18,

United States Code, Sections 2 and 3551 <u>et</u> <u>seq.</u>)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH FOUR

30.     The United States hereby gives notice to the defendant that, upon her conviction of any of the offenses charged in Counts One through Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of any such offense to forfeit any property, real or personal, constituting or derived from proceeds traceable to a violation of such offense, including but not limited to approximately $199,800.00 in United States currency, seized on or about April 6, 2016 from JP Morgan Chase Safety Deposit Box Number 5366, located at 187-08 Horace Harding Expressway, in Fresh Meadows, New York.

31.     If any of the above described forfeitable property, as a result of any act or omission of the defendant;

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

13

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); Title 21, United States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT FIVE

32.    The United States hereby gives notice to the defendant that, upon her conviction of the offense charged in Count Five, the government will seek forfeiture in accordance with Title 31, United States Code, Section 5317(c), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense and any property traceable thereto, including but not limited to: (a) approximately 16,100 Yuan Renminbi, and approximately $23,500 in United States currency, both seized on or about April 5, 2016 from a residence located at 57-07 Parsons Boulevard, Fresh Meadows, New York; (b) approximately $45,200 in United States currency, seized on or about April 8, 2016 from JP Morgan Chase Safety Deposit Box Number 10239, located at 410 Northern Boulevard, in Great Neck, New York; and (c) approximately $18,950 in United States currency, approximately 8,770 Hong Kong Dollars, and approximately 1,205 Yuan Renminbi, all seized on or about April 22, 2016 from TD Bank Safety Deposit Box Number 365, located at 38-19 Main Street, in Flushing, New York.

14

33.     If any of the above described forfeitable property, as a result of any act or
omission of the defendant;

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be
divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to
seek forfeiture of any other property of the defendant up to the value of the forfeitable property
described in this forfeiture allegation.

      (Title 31, United States Code, Section 5317(c); Title 21, United States Code,
Section 853(p))

                         A TRUE BILL

                         _____

                         FOREPERSON

_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

F. #2014R00564
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

*YING LIN,*

Defendant.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 554, 981(a)(1)(C), 1349, 1512(c)(2), 1512(k), 2 and 3551 et seq.; T. 28, U.S.C., § 2461(c); T. 31, U.S.C., §§ 5317(c), 5324(a)(3) and 5324(d)(1);
T. 21, U.S.C., § 853(p)

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day.*

*of* _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Alexander A. Solomon, Assistant U.S. Attorney (718) 254-6074*