UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA                    15 CR 601 (S-1) (DLI)


-against-


YING LIN                                             ECF

------------------------------------------------------x




**MEMORANDUM OF LAW IN SUPPORT OF YING LIN'S MOTION TO DISMISS
COUNTS ONE, THREE AND FOUR OF THE S-1 INDICTMENT**

Deborah Colson
Colson Law PLLC
80 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 257-6455

# Table of Contents

**PRELIMINARY STATEMENT** ........................................................................................ 1

**PROCEDURAL HISTORY** ............................................................................................... 1

**THE SMUGGLING CHARGE MUST BE DIMISSED FOR FAILURE TO STATE AN OFFENSE** ......................................................................................................................... 3

    A.    Rules 7(c)(1) and 12(b)(3)........................................................................................ 3

    B.    The U.S. Law and Regulations Identified in Count One Do Not Impose any Legal Obligations on Ms. Lin ......................................................................................... 4

        1.    *Ms. Lin Could Not Violate 49 U.S.C. § 44906* ............................................ 5

        2.    *Ms. Lin Could Not Violate 49 C.F.R. § 1546.103(b)(4)* ................................ 6

        3.    *Ms. Lin Could Not Violate 49 C.F.R. § 1546.202*......................................... 7

**THE SMUGGLING CHARGE IS ALSO BARRED BY DUE PROCESS** ........................... 9

**THE OBSTRUCTION CHARGES FAIL TO STATE AN OFFENSE** ................................ 11

    A.    Counts Three and Four Fail to Adequately Allege an "Official Proceeding"................ 12

    B.    § 1512(c)(2) Does Not Reach Witness Tampering, Which is (At Most) All that is Alleged Here ..................................................................................................... 15

    C.    The Alleged Conduct Does Not Constitute Obstruction................................................. 18

**CONCLUSION** ............................................................................................................. 20

# Table of Authorities

**Cases**

*Arthur Anderson LLP v. U.S.,* 125 S.Ct. 2129 (2005) ................................................................ 12

*Dunn v. United States*, 442 U.S. 100 (1979)............................................................................... 9

*Franco-Casasola v. Holder*, 773 F.3d 33 (5th Cir. 2014) ................................................. 3, 4, 5, 9

*Hamling v. United States*, 418 U.S. 87 (1974)............................................................................ 3

*Johnson v. United States,* 135 S.Ct. 2551 (2015) .................................................................... 16

*McNalley v. United States*, 483 U.S. 350 (1987) ..................................................................... 17

*Russell v. United States,* 369 U.S. 749 (1962) ........................................................................... 4

*Scheidler v. National Organization for Women, Inc.,* 537 U.S. 393 (2003)............................... 17

*United States v. Abrams,* 539 F.Supp. 378 (S.D.N.Y. 1982) ...................................................... 14

*United States v. Aleynikov,* 676 F.3d 71 (2012)........................................................................... 4

*United States v. Bando,* 244 F.2d 833 (2d Cir. 1957)........................................................... 19, 20

*United States v. Batista,* 6-CR-264, 2010 WL 1193314 (E.D.N.Y. March 24, 2010).................. 12

*United States v. Binday,* 12-CR-152 (S.D.N.Y. Feb. 15, 2012) .................................................. 13

*United States v. Bliss,* 430 F.3d 640 (2d Cir. 2005)................................................................... 19

*United States v. Campo,* 840 F.3d 1249 (11th Cir. 2016) ............................................................ 9

*United States v. Cardenas,* 810 F.3d 373 (5th Cir. 2016) ........................................................... 9

*United States v. Chi Tong Kuok,* 671 F.3d 931 (9th Cir. 2012)................................................... 9

*United States v. Gabriel,* 125 F.3d 89, 105 n.13 (2d Cir. 1997).................................................. 12

*United States v. Galimah,* 12-CR-214, 2013 WL 1408635 (D. Minn. Apr. 8, 2013)................. 4, 9

*United States v. Gigliotti,* 15 Cr. 204 (RJD) .............................................................................. 18

*United States v. Ibrahim,* 11-CR-811, 2013 WL 5434156 (N.D.Ca. Sept. 27, 2013) ................. 10

*United States v. Kumar,* 617 F.3d 612 (2d Cir. 2010) ................................................................ 15

*United States v. Lanier,* 520 U.S. 259 (1997) .............................................................................. 9

*United States v. Lugo-Lopez,* 833 F.3d 453 (5th Cir. 2015) ........................................................ 9

*United States v. Mohammed,* 13-CR-250, 2014 WL 3908614 (D. Minn. Aug. 11, 2014) .......... 10

*United States v. Murphy,* 762 F.2d 1151 (1st Cir. 1985) ............................................................. 13

*United States v. Perez,* 575 F.3d 164 (2d Cir. 2009) .................................................................. 12

*United States v. Pirro,* 212 F.3d 86 (2d Cir. 2000)...................................................................... 3

*United States v. Pugh,* 15-CR-116, 2015 WL 9450598 (E.D.N.Y. Dec. 2015) .................... 13, 16

*United States v. Quattrone,* 441 F.3d 153 (2d. Cir. 2006)......................................................... 12

*United States v. Reich,* 479 F.3d 179 (2d Cir. 2007) ................................................................. 12

*United States v. Singleton,* 06-CR-080, 2006 WL 1984467 (S.D.Tex. July 14, 2006) ............... 16

*United States v. Walsh,* 194 F.3d 37 (2d Cir. 1999) .................................................................... 4

*Wang v. United States*, 13-CR-452, 2016 WL 1436679 (S.D.N.Y. April 11, 2016)............... 9, 10

*Yates v. United States.* 135 S.Ct. 1074 (2015) .............................................................. 15, 16, 17

**Statutes, Rules, and Other Authorities**

18 U.S.C. § 1073 ......................................................................................... 19

18 U.S.C. § 1512(a) ...................................................................................... 17

18 U.S.C. § 1512(b) ...................................................................................... 17

18 U.S.C. § 1512(c)(1) ............................................................................ 15, 16

18 U.S.C. § 1512(c)(2) ............................................................. 1, 12, 15, 17

18 U.S.C. § 1512(d) ...................................................................................... 17

18 U.S.C. § 1515(a)(1) .................................................................................. 12

18 U.S.C. § 1519 ..................................................................................... 15, 16

18 U.S.C. § 1520 ........................................................................................... 15

18 U.S.C. § 3142(f)(2) .................................................................................. 19

18 U.S.C. § 554 ...................................................................................... 1, 4, 9

49 C.F.R. § 1546.101(e) ................................................................................. 8

49 C.F.R. § 1546.101(f) .................................................................................. 8

49 C.F.R. § 1546.103(b)(4) ............................................................................ 6

49 C.F.R. § 1546.202 .................................................................................. 7, 8

49 C.F.R. § 1546.203(a) ............................................................................... 11

49 U.S.C. § 40102(a)(21) ............................................................................... 7

49 U.S.C. § 44901 .......................................................................................... 5

49 U.S.C. § 44901(c) .................................................................................... 10

49 U.S.C. § 44901(d)(1)(A) .......................................................................... 11

49 U.S.C. § 44901(e) .................................................................................... 10

49 U.S.C. § 44906 .................................................................................. 2, 5, 6

Fed.R.Crim. P. 12(b)(3)(B)(v) ...................................................................... 4

Fed.R.Crim. P. 6(e)(2)(A) ............................................................................ 18

Fed.R.Crim. P. 6(e)(2)(B) ............................................................................ 18

Fed.R.Crim. P. 7(c)(1) ................................................................................... 3

U.S.S.G. § 2B1.5 .......................................................................................... 10

U.S.S.G. § 2M5.1 ......................................................................................... 10

U.S.S.G. § 2M5.2 ......................................................................................... 10

U.S.S.G. § 2Q2.1 .......................................................................................... 10

U.S.S.G. § 3C1.1 .......................................................................................... 19

# I.

## PRELIMINARY STATEMENT

This memorandum is respectfully submitted in support of Ying Lin's motion to dismiss Counts One, Three, and Four of the S-1 indictment pursuant to Federal Rules of Criminal Procedure 7(c)(1) and 12(b)(3) and the Due Process Clause of the U.S. Constitution.

The defects in the S-1 indictment can be traced to the early stages of the instant prosecution. The government worked backwards in this case, arresting Ms. Lin first and investigating her conduct second. The end product is a tenuous and piecemeal indictment charging several distinct and unrelated criminal schemes, two of which have no legal basis.

This motion concerns the smuggling and obstructions of justice counts, each of which must be dismissed as a matter of law. The smuggling count (Count One) fails to state an offense within the meaning of the statute, 18 U.S.C. § 554. The statute and TSA implementing regulations cited in support of the charge do not impose any legal obligations on private individuals like Ms. Lin. Thus, she could not have violated them. The charge is also barred by Due Process because Ms. Lin had no fair notice that her alleged conduct might be criminal.

The obstruction of justice counts (Counts Three and Four) fail to allege an essential element of the offense, namely the official proceeding. Second, the actions alleged do not fall within the scope of the obstruction statute, 18 U.S.C. § 1512(c)(2), which concerns conduct related to tangible objects. Third, the alleged conduct was not obstructive.

# II.

## PROCEDURAL HISTORY

Mr. Lin was first arrested on August 25, 2015, on a criminal complaint that concerned the handling of her personal finances. That criminal complaint remains under seal.

On November 23, 2015, the government dropped two of the initial charges and indicted Ms. Lin on a single count of structuring. Nearly a year after that, in August 2016, prosecutors superseded the structuring indictment and added four unrelated charges of smuggling, wire fraud, and obstruction of justice.

The smuggling charge (Count One) concerns Ms. Lin's prior employment for Air China as counter agent at JFK airport. (Ind. ¶ 1.) Ms. Lin is accused of assisting members of the Chinese ("PRC") Mission to the United Nations and the PRC Consulate in New York City to transport "unaccompanied baggage" aboard Air China passenger flights bound for the PRC. (*Id.* at ¶ 21.) The government does not allege the baggage contained contraband, explosives or anything unsafe or, indeed, that it contained anything in particular. Nor does the government allege the baggage failed to pass through TSA security screening. The prosecution's theory is that the mere acceptance of unaccompanied baggage onto passenger flights violated 49 U.S.C. § 44906 and uncited "TSA implementing regulations," and thus amounted to a criminal exportation contrary to 18 U.S.C. § 554. (*Id.*)

The two obstruction of justice counts (Counts Three and Four) allege that, following her initial arrest, Ms. Lin improperly advised a Chinese national, visiting from the PRC, of a potential federal investigation and assisted him in changing the date of his return flight from New York to his home in the PRC. (Ind. ¶¶ 16-17.) The Chinese national is mysteriously identified as Ms. Lin's "Confederate." (*Id.* at ¶ 15.) Based on news reports and public records, however, there is no mystery: He is a businessman, and his name is Qin Fei. The government does not describe the nature of Mr. Qin's purported criminal activities or the basis for the supposed investigation against him. He is not accused of participating in the smuggling scheme.

Ms. Lin was arraigned on the S-1 indictment on September 6, 2016. On January 11, 2017, the Court granted her request to file this motion to dismiss.

## III.

### THE SMUGGLING CHARGE MUST BE DIMMISSED FOR FAILURE TO STATE AN OFFENSE

Count One must be dismissed for failure to state an offense pursuant to Federal Rules of Criminal Procedure 7(c)(1) and 12(b)(3) because the statute and TSA implementing regulations cited in support of the charge do not impose any legal obligations on private individuals like Ms. Lin.

A. Rules 7(c)(1) and 12(b)(3)

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to "be a plain, concise and definite written statement of the essential facts constituting the offense charged." To satisfy Rule 7(c)(1), the indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished," and "be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (internal quotation marks omitted) (discussing constitutional minimum); *see also United States v. Pirro,* 212 F.3d 86, 91 (2d Cir. 2000) (a "criminal defendant is entitled to an indictment that states the essential elements of the charge against h[er].")

When a charged statute "requires that [a defendant] have also violated other statutes," the other law provides further "elements that must be charged" and proven. *Franco-Casasola v. Holder*, 773 F.3d 33, 39 (5th Cir. 2014) (discussing 18 U.S.C. § 554(a)); *see id.* at 36 ("[T]he relevant elements of those other laws and regulations will also be included in an indictment

3

. . . ."); *id.* at 40 (noting that indictment, "as it was required to do, also charged specific laws that [defendant] violated and identified the operative terms").

One reason for this requirement is to inform the defendant of "the nature and cause of the accusation," *Russell v. United States,* 369 U.S. 749, 761 (1962), so that she may prepare to challenge the evidence against her. Another is "to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Walsh,* 194 F.3d 37, 44 (2d Cir. 1999).

An indictment that fails to meet these requirements should be dismissed for "failure to state an offense." Fed.R.Crim. P. 12(b)(3)(B)(v). "Since federal crimes are 'solely creatures of statute,' a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov,* 676 F.3d 71, 75-76 (2012) (citations omitted). The sufficiency of the indictment and the interpretation of a statute are both "matters of law," *id.* at 76, that can be determined prior to trial.

B. The U.S. Law and Regulations Identified in Count One Do Not Impose any Legal Obligations on Ms. Lin

Section 554 makes it a crime to fraudulently or knowingly export from the United States "any merchandise, article, or object contrary to any law or regulation of the United States." 18 U.S.C. § 544. The statute criminalizes conduct that is contrary to other U.S. laws or regulations. Thus, a conviction under § 554 requires proof of two elements: *first*, that the export was contrary to a U.S. law or regulation and *second*, that the defendant knew the export was illegal under U.S. law. *See Franco-Casasola*, 773 F.3d at 39 ("Section 554(a) requires that he [the defendant] have also violated other statutes"); *United States v. Galimah,* 12-CR-214, 2013 WL 1408635,*4 (D. Minn. Apr. 8, 2013) (knowledge of the law is an element of § 554 and collecting cases generally

agreeing that § 554 requires "knowledge of the illegality of the exportation"), *aff'd,* 758 F.3d 927, 929, 930 (8th Cir. 2014).

An indictment alleging a violation of § 554 "requires stating the other laws the defendant acted contrary to," including their elements. *Franco-Casasola,* 773 F.3d at 42; *see id*. 36, 39-40. The § 554 count here is premised upon Ms. Lin's supposed violation of a single U.S. statute, 49 U.S.C. § 44906, and unidentified "TSA implementing regulations." (Ind. ¶ 21.) Partial, uncited quotations elsewhere in the indictment suggest the regulations the government has in mind are 49 C.F.R. § 1546.103(b)(4), and  49 C.F.R. § 1546.202. *See* Ind. ¶ 3 (citing § 44906 and quoting regulations whose language matches these two). Count One fails to set forth the elements of any of these provisions. Moreover, none of the provisions imposes any legal obligations on Ms. Lin. Thus, she could not have violated them.

1. *Ms. Lin Could Not Violate 49 U.S.C. § 44906*

Section 44906 is part of the Aviation and Transportation Security Act ("the Act"), which was enacted in the aftermath of 9/11 in an effort to protect the nation's transportation systems. 49 U.S.C. § 44901 *et seq.* Section 44906 of the Act requires the TSA to continue in effect existing regulations obligating foreign air carriers to adopt and use security programs. The section provides:

> The Under Secretary of Transportation for Security shall continue in effect the requirement of section 129.25 of title 14, Code of Federal Regulations, that a foreign air carrier must adopt and use a security program approved by the Under Secretary. The Under Secretary shall not approve a security program of a foreign air carrier under section 129.25, or any successor regulation, unless the security program requires the foreign air carrier in its operations to and from airports in the United States to adhere to the identical security measures that the Under Secretary requires air carriers serving the same airports to adhere to. The foregoing requirement shall not be interpreted to limit the ability of the Under Secretary to impose additional security measures on a foreign air carrier or an air carrier when the Under Secretary determines that a specific threat warrants such additional measures. The Under Secretary shall prescribe regulations to carry out this section.

49 U.S.C. § 44906.

The plain language of § 44906 strictly limits its applicability to a single government actor, the Under Secretary of Transportation. Three of the four sentences in § 44906 begin with the words "the Under Secretary of Transportation for Security shall" or "the Under Secretary shall." 49 U.S.C. § 44906. The fourth empowers, but does not require, the Under Secretary to "impose additional security measures" as warranted. While the term "foreign air carrier" is mentioned, the provision does not impose any requirements on foreign air carriers. Rather, the statute directs the Under Secretary to oversee and approve the *content* of their security programs. Further, the statute makes no reference to private individuals and imposes no obligations on them or, indeed, on any non-governmental actors.

Because § 44906 does not impose any legal requirements on individual actors like Ms. Lin, she could not violate it under any circumstances, no matter her conduct. Thus, a smuggling charge premised upon her violation of § 44906 fails as a matter of law.

2. *Ms. Lin Could Not Violate 49 C.F.R. § 1546.103(b)(4)*

While Count One neither cites nor otherwise specifies any TSA regulation, Paragraph 3 of the S-1 indictment does refer to a "TSA implementing regulation[ ]" said to "provide that the security program shall '[p]revent cargo and checked baggage from being loaded aboard its airplanes unless handled in accordance with the air carrier's security procedures.'" This language appears to come from 49 C.F.R. § 1546.103(b)(4).

Like § 44906, § 1546.103(b), concerns the "Content of [the] security program" for a foreign air carrier. *Id.* (subsection title). It begins with the language: "Each security program must be *designed* to." *Id.* (emphasis added). When read in context—rather than as the government selectively quotes them—the four subsections, including subsection (b)(4), simply

list the things an air carrier's program "must be designed to" do. *Id.* Thus, § 1546.103(b) concerns the content of the security program, not its application, and in any event has no applicability to individual actors.

The government makes no allegation that Air China's security program was designed in violation of the regulation. (If anything, it alleges the opposite, including that TSA approved the program. *See* Ind. ¶¶ 4, 7). Even if it did, such design flaw would concern the carrier, Air China, not Ms. Lin, who in working for a foreign air carrier is not one herself. The term "foreign air carrier" is defined by statute as "a person, not a citizen of the United States, undertaking by any means, directly or indirectly, to provide foreign air transportation." 49 U.S.C. § 40102(a)(21). Ms. Lin does not qualify under this definition. She is a U.S. citizen, and the government of course does not allege she provided foreign air transportation.

Because § 1546.103(b)(4) does not impose any legal requirements on individual actors like Ms. Lin, she could not violate it. Thus, to the extent that Count One depends on an alleged violation of this regulation, the count must fail as a matter of law.

3. *Ms. Lin Could Not Violate 49 C.F.R. § 1546.202*

Paragraph 3 of the S-1 indictment also refers to a "TSA implementing regulation[ ]" said to provide that a foreign air carrier "must apply the security measures in its security program for persons who board the aircraft for transportation, and for their property." This language appears to come from 49 C.F.R. § 1546.202.

As is evident when the government's snippet is read in context, § 1546.202 is triply inapplicable here. Highlighting the language quoted by the government, the regulation states as follows:

> Each foreign air carrier operating under section 1546.101(e) or (f) *must apply the security measures in its security program for persons who board the aircraft for transportation,*

*and for their property,* to prevent or deter the carriage of any unauthorized persons, and any unauthorized weapons, explosives, incendiaries, and other destructive devices, items, or substances.

First, like the provisions discussed above, § 1546.202 imposes no legal requirements on individual actors. It concerns the actions of a "foreign air carrier."

Second, the regulation does not concern the flights at issue in the S-1 indictment. Section 1546.202 regulates the conduct of air carriers "operating under § 1546.101(e) or (f)." *Id.* Subsections (e) and (f) concern certain all-cargo aircraft. *See* 49 C.F.R. §§ 1546.101(e) and (f). The indictment makes no allegation that this case involves all-cargo aircraft. It actually alleges the opposite: that Ms. Lin assisted in checking unaccompanied baggage onto passenger flights. (Ind. ¶¶ 2, 7.)

Third, the stated purpose of § 1546.202 is not implicated here. The regulation's concluding phrase, which the government omitted, specifies that the required security measures are "to prevent and deter the carriage of any unauthorized persons, and any unauthorized weapons, explosives, incendiaries, and other destructive devices, items, or substances." The government does not allege the boarding of "unauthorized persons" or the carriage of "unauthorized … destructive devices." As to the latter, the government makes no allegation that the baggage accepted by Ms. Lin contained anything unsafe or, indeed, that it contained anything in particular. Nor does the government allege the baggage evaded the TSA security screening designed to prevent or deter such items.

Because § 1546.202 does not apply to individual actors, does not apply to passenger flights, and concerns the carriage of items not alleged in the indictment, Ms. Lin could not have acted contrary to the provision. Thus, to the extent that Count One is premised upon a violation of § 1546.202, it must fail as a matter of law.

In sum, the government has failed to allege any underlying "law or regulation of the United States" that Ms. Lin might have violated. Indeed, none of the provisions cited in support of Count One impose any legal requirements on individual actors like Ms. Lin. Count One therefore fails to state an offense, and it must be dismissed.

## IV.

### THE SMUGGLING CHARGE IS ALSO BARRED BY DUE PROCESS

Fundamental principles of due process mandate "that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Dunn v. United States,* 442 U.S. 100, 112 (1979) (citations omitted). Thus, the Due Process Clause "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier,* 520 U.S. 259, 266 (1997) (citations omitted). Here neither the TSA regulatory regime nor any prior judicial decision put Ms. Lin notice that her conduct might be criminal. Accordingly, due process reinforces the failure to state an offense explained in Part III.

As an initial matter, the government's theory of prosecution under § 554 is novel. Counsel has identified no prior decisions in any federal court concerning the "smuggling" of unaccompanied baggage. Smuggling prosecutions brought under § 554 overwhelmingly concern the exportation of contraband such as narcotics and firearms. *See, e.g., United States v. Lugo-Lopez,* 833 F.3d 453 (5th Cir. 2015) (guns and drugs); *United States v. Campo,* 840 F.3d 1249, 1264 (11th Cir. 2016) ("AR-15 upper receiver"); *United States v. Cardenas,* 810 F.3d 373, 374 (5th Cir. 2016) (ammunition); *Franco-Casasola,* 773 F.3d at 35 (firearms); *Galimah*, 758 F.3d 928 (8th Cir. 2014) (handguns); *United States v. Chi Tong Kuok,* 671 F.3d 931 (9th Cir. 2012) (defense articles); *Wang v. United States*, 13-CR-452, 2016 WL 1436679 (S.D.N.Y.

April 11, 2016) (rhinoceros horn and elephant ivory); *United States v. Mohammed,* 13-CR-250,

2014 WL 3908614 (D. Minn. Aug. 11, 2014) (firearms); *United States v. Ibrahim,* 11-CR-811,

2013 WL 5434156 (N.D.Ca. Sept. 27, 2013) (hazardous chemicals). The focus is on the content

of the items smuggled, which are commonly known to be illegal or heavily regulated,

particularly with respect to exportation. Here, again, the government does not allege that any of

the baggage contained contraband and implicitly concedes it passed through TSA security

screening.

Second, each of the U.S. Sentencing Guidelines applicable to violations of § 554 also

involve contraband or potential contraband. *See* U.S.S.G. § 2B1.5 (cultural heritage or

paleontological resources), § 2M5.1 (evasion of export controls regarding nuclear, biological or

chemical weapons); § 2M5.2 (arms, munitions or military equipment), § 2Q2.1 (fish, wildlife

and plants). None applies to the mere shipment of baggage without regard to the contents.

Indeed, were Ms. Lin convicted of facilitating the transport of unknown materials, it would not

be possible to calculate the advisory Guidelines range.

Third, the focus of the TSA regulatory regime is to keep dangerous items off of planes,

which is not the issue here. The Aviation and Transportation Security Act only twice addresses

the subject of checked baggage, both times in the context of security screening. The first

provision, 49 U.S.C. § 44901(c), requires the TSA to establish a system "to screen all checked

baggage at all airports in the United States" within sixty days of the enactment of the Act. The

second, 49 U.S.C. § 44901(e), requires an alternative means for screening checked baggage at

airports that lack an explosives detection system. One of the alternatives means specified is a

"bag match program," which "ensures that no checked baggage is placed aboard an aircraft

unless the passenger who checked the baggage is aboard the aircraft." 49 U.S.C. § 44901(e)(1).

By its own terms, however, the bag match program *only* applies to airports without an explosives detection system. It was obsolete at airports like JFK as of December 31, 2002, when the TSA was required to have deployed an explosive detection device at each airport regularly serving one or more air carriers. *Id.* § 44901(d)(1)(A).

The sole regulation concerning checked baggage on passenger planes focuses on actions by air carriers to protect against explosives and incendiaries. *See* 49 C.F.R. § 1546.203(a) ("Each foreign air carrier must use the procedures, facilities, and equipment described in its security program to prevent or deter the carriage of any unauthorized explosive or incendiary onboard aircraft in checked baggage.") Like the Act, this provision regulates the conduct of air carriers, not individuals.

In short, neither the TSA regulatory regime nor any prior judicial decisions put Ms. Lin on notice that her conduct might be criminal. Accordingly, her prosecution is also barred by due process.

## V.

## THE OBSTRUCTION CHARGES FAIL TO STATE AN OFFENSE

Counts Three and Four are brought under 18 U.S.C. § 1512(c), which provides:

> Whoever corruptly—
>
> (1) Alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) Otherwise obstructs, influences or impedes any official proceeding, or attempts to do so

shall be fined or imprisoned. The counts each charge a violation of subsection (2), which requires proof of three elements: (1) corrupt intent, (2) awareness of a pending or reasonably foreseeable official proceeding, and (3) obstruction or attempted obstruction of that proceeding.

*United States v. Batista*, 6-CR-264, 2010 WL 1193314, *10 (E.D.N.Y. March 24, 2010). Counts Three and Four fail to state an offense in accordance with Rule 7(c)(1) for three distinct reasons. First, they neglect to adequately allege an official proceeding. Second, the actions they allege do not fall within the scope of § 1512(c)(2), which concerns conduct related to tangible objects. Third, the alleged conduct was not obstructive. Thus, these counts must be dismissed as a matter of law.

A.  <u>Counts Three and Four Fail to Adequately Allege an "Official Proceeding"</u>

Congress has defined an "official proceeding" as one before a judge or grand jury, Congress, a federal government agency, insurance regulatory official, agency, agent or examiner. *See* 18 U.S.C. § 1515(a)(1). An official proceeding must involve "a detailed process of review and decision-making." *United States v. Perez,* 575 F.3d 164, 169 (2d Cir. 2009). A preliminary law enforcement investigation does not qualify. *See id.* (BOP review panel constituted an official proceeding because the panel was required to making "findings," and the process was "more than a preliminary investigation"). *See also United States v. Gabriel,* 125 F.3d 89, 105 n.13 (2d Cir. 1997) (government investigation would not constitute an "official proceeding" under § 1515(a)(1)).

To prove intent, there must be a nexus between the obstructive act and the official proceeding. As the Supreme Court has explained: "If the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Arthur Anderson LLP v. U.S.,* 125 S.Ct. 2129, 2137 (2005). *See also United States v. Reich,* 479 F.3d 179, 186 (2d Cir. 2007) (nexus requirement applies to § 1512(c)(2)); *United States v. Quattrone,* 441 F.3d 153, 171 (2d. Cir. 2006) ("The touchstone for the nexus requirement…is an act taken that would have the natural and probable effect of interfering with a judicial or grand

jury proceeding that constitutes the administration of justice; that is, the act must have a relationship in time, causation, or logic with the judicial proceedings.") (internal quotation marks omitted).

Moreover, the government needs to give the accused "at least some indication of the identity of the proceeding," including its subject matter or target. *United States v. Murphy,* 762 F.2d 1151, 1154 (1st Cir. 1985). *See,e.g., United States v. Pugh,* 15-CR-116, 2015 WL 9450598, *14 (E.D.N.Y. Dec. 2015) (declined to dismiss indictment that charged obstructing with respect to a grand jury "relating to the commission and possible commission of one or more terrorism offenses, including the offense charged in Count One"); *United States v. Binday,* 12-CR-152 (S.D.NY. Feb. 15, 2012) (ECF No. 1) (alleging a scheme to destroy documents "in connection with a Federal grand jury investigation in the Southern District of New York regarding the fraudulent procurement of life insurance policies.")

Counts Three and Four fail these requirements. Though they set forth a boilerplate allegation of the official proceeding as "a Federal Grand Jury Investigation in the Eastern District of New York," (Ind. ¶¶ 25, 27), the facts alleged in support of the counts neglect to identify the specific grand jury proceeding at issue, whether existing or reasonably foreseeable. Paragraph fifteen refers instead to an "investigation" into Mr. Qin's unspecified "activities" by "the federal government," including "Special Agents of the Federal Bureau of Investigation." (Ind. ¶ 15.)

Nor does the indictment identify the nature of Mr. Qin's purported activities. Prosecutors make just two factual allegations regarding Mr. Qin, both innocuous: first that he was visiting the United States and second that he "was the owner of a large residence in Old Brookville, Long Island." (Ind. ¶ 15.) There is no allegation that he was a target of a grand jury proceeding or that

his "activities" had anything to do with the alleged smuggling, wire fraud, or structuring, or were otherwise potentially unlawful.

Ms. Lin is thus left to speculate as to the grand jury proceeding allegedly at issue, including its subject matter and target(s), and even whether the proceeding was pending or merely foreseeable.[1] This is hardly "a plain, concise and definite written statement of the essential facts constituting the offense charged." F.R.Crim. P. 7(c)(1).

The First Circuit's decision in *Murphy* is instructive. The defendant was convicted under 18 U.S.C. § 1512(a)(1) for threatening a witness with the intent to influence the witness' testimony in an official proceeding. The appeals courts reversed his conviction and remanded with instructions to dismiss the indictment because it failed to adequately identify the proceeding. The Court explained that "[c]rucial to the preparation of any defense to a charge under the statute is at least some indication of the identity of the proceeding in which the defendant tried to influence testimony." 762 F.2d at 1154. There, "it was wholly unclear from the indictment whether the grand jury was charging that defendants tried to influence Watson's testimony in the proceeding against Dawlett, or in the proceeding against them, or in some other proceeding altogether." *Id.* The Court further observed that the defendant's trial exemplified the dangers associated with such a vague indictment because the government identified one official proceeding in its opening statement and another in its closing argument. *Id.* at 1154-55. Here, too, it is "wholly unclear from the indictment" what grand jury proceeding Ms. Lin allegedly intended to obstruct. *See also United States v. Abrams,* 539 F.Supp. 378, 385 (S.D.N.Y. 1982) (dismissing obstruction count that provided virtually "no … factual specifics" and failed to

---

[1] Indeed, the government has provided so little information about the alleged proceeding that it suggests the government was involved in a mere fishing expedition or, at best, conducting a preliminary investigation.

"detail any of the alleged acts of ... misrepresentation, or identify with any precisions the criminal investigat[ion] involved.").

At trial, the government will have to prove the existence of a pending or foreseeable grand jury proceeding and Ms. Lin's knowledge of that proceeding. Ms. Lin cannot prepare to challenge the evidence without sufficient information as to the nature of the proceeding alleged. Counts Three and Four fail to provide any factual specifics, including the target(s) or subject matter of the proceeding. Accordingly, both counts must be dismissed as a matter of law.

B. § 1512(c)(2) Does Not Reach Witness Tampering, Which is (At Most) All that is Alleged Here

Section 1512(c)(2) was enacted as part the Sarbanes-Oxley Act of 2002 ("Sarbanes Oxley"), which was passed in reaction to the Enron accounting fraud case and revelations that the company's auditor, Arthur Anderson, had destroyed potentially critical documents. *See Yates v. United States.* 135 S.Ct. 1074, 1081 (2015). Sarbanes Oxley added three related provisions to the Obstruction of Justice chapter (Chapter 73) of Title 18, and each one concerns the integrity of physical evidence. *See* 18 U.S.C. § 1519 (broadly proscribing tampering with "tangible" evidence "in relation to or in contemplation of any matter within the jurisdiction of a federal agency"); 18 U.S.C. § 1520 (prohibiting public accountants from destroying "audit or review work papers"); 18 U.S.C. § 1512(c)(1) (prohibiting additional tampering with physical evidence, including a "record, document, or other object").

Because of the sweeping language in § 1512(c)(2)—"Otherwise obstructs, influences or impedes any official proceeding, or attempts to do so"—the proper reach of the provision is an open question in this Circuit. *See United States v. Kumar,* 617 F.3d 612, 619-20 (2d Cir. 2010) (avoiding question whether § 1512(c)(2) applied to obstruction by false statements because the defendant's acts were punishable under § 1503, which had also been charged in the indictment).

But, as other courts have held, a contextual reading of the provision signals that it should be limited to obstruction with "some reasonable nexus to a record, document or tangible object." *United States v. Singleton,* 06-CR-080, 2006 WL 1984467, *3 (S.D.Tex. July 14, 2006); *see id.* n.5 (collecting cases in accord, applying § 1512(c)(2) to creation of a forged order, drafting of fake services contract, and preparation of fake document). As Judge Garaufis explains*,* relying on *Singleton,* the structure of the statute "suggests that Section 1512(c) articulates a single offense. That is, Section 1512(c)(1) is intended to enumerate conduct that violates the statute[.] Section 1512(c)(2) does not state a separate offense, but instead, is meant to criminalize difficult to enumerate conduct that would otherwise slip past 1512(c)(1)'s specific proscription." *Pugh,* 2015 WL 9450598, at *18. *See also Johnson v. United States,* 135 S.Ct. 2551, 2558 (2015) (interpreting residual clause of Armed Career Criminal Act and stating: "By asking whether the crime '*otherwise* involves conduct that presents a serious potential risk,' moreover the residual clause forces courts to interpret 'serious potential risk' in light of the four enumerated crimes— burglary, arson, extortion, and crimes involving the use of explosives.")

The Supreme Court's narrow reading in *Yates* of § 1519, another Sarbanes-Oxley provision, reinforces this approach. The Court relied on the cannon of *ejusdem generis*: "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates*, 135 S.Ct. at 1086. The Court held that the reference to "tangible object" in § 1519 should be interpreted narrowly to capture records, documents and other materials that record or preserve information, rather than widely to encompass all physical objects, including the fish at issue. *Id.* at 1087. The Court explained: "Had Congress intended 'tangible object' in § 1519 to be interpreted so generically as to capture physical objects as dissimilar as documents

and fish, Congress would have had no reason to refer specifically to 'record' or 'document.' The Government's unbounded reading of 'tangible object' would render those words misleading surplusage." *Id.*

A narrow reading of § 1512(c)(2) also makes sense given the existence of § 1512(a), (b), and (d) which expressly proscribe various different forms of witness tampering. If § 1512(c)(2) were read as an omnibus protection against all forms of obstruction, including witness tampering, then § 1512(a), (b), and (d) would become redundant. Indeed, read broadly, § 1512(c)(2) would subsume many of the detailed obstruction statutes. The Court in *Yates* rejected the government's broad reading of the term "tangible object" on the same basis, explaining that "[i]t is highly improbably that Congress would have buried a general spoliation statute covering objects of any and every kind in a provision targeting fraud in financial record keeping." *Yates,* 135 S.Ct. at 1087. Here, too, were a legislative sea change intended with the enactment of § 1512(c)(2), it is unlikely that Congress would have done so by way of a residual subsection, subordinate to a provision relating only to documents.

Finally, the rule of lenity favors resolving any ambiguity in Ms. Lin's favor. "[W]hen there are two rational readings of a criminal statute, one harsher than the other, [a court is] to choose the harsher only when Congress has spoken in clear and definite language." *Scheidler v. National Organization for Women, Inc.,* 537 U.S. 393, 409 (2003) (quoting *McNalley v. United States*, 483 U.S. 350, 359-60 (1987)). Should this Court accept the government's invitation to stretch § 1512(c)(2) to reach the conduct alleged here, this would expose individuals to a 20-year maximum sentence for the mere attempt to obstruct or impede any proceeding in *any* imaginable way. *Cf. Yates,* 135 S. Ct. at 1088 (noting that government urges a reading of § 1519 that would expose individuals to 20-year sentences for tampering with any physical object that might have

value in any federal investigation, whether pending or merely contemplated). Such a harsh reading of § 1512(c)(2) is inappropriate absent more clear and definite statutory language.

If § 1512(c)(2) is appropriately read to apply only to conduct having a reasonable nexus to records, documents or tangible objects, then it has no applicability to the facts alleged in this indictment. The government does not allege that any object of any kind is at issue. Counts Three and Four thus fail to state an offense and must be dismissed.

C.  The Alleged Conduct Does Not Constitute Obstruction

Finally, even if § 1512(c)(2) did apply to witness tampering, Ms. Lin's alleged conduct could not amount to obstruction or otherwise satisfy the *actus reus* element. The indictment notifies Ms. Lin of just two allegedly obstructive acts: (1) telling Mr. Qin of "the federal government's interest" in his unspecified activities, and (2) advising and assisting him to return home to China on a regular commercial airline flight. (Ind. ¶ 16.) Neither of these acts could have obstructed whatever official proceeding existed or may have been contemplated.

First, it is not illegal to notify someone of a grand jury proceeding, even if that person is a potential witness or target, which the government does not allege here. A grand jury witness is under no obligation of secrecy about the grand jury's existence or interest. *See* Fed.R.Crim. P. 6(e)(2)(A) ("No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)"); Fed.R.Crim. P. 6(e)(2)(B) (not including witnesses among the list of persons bound by an obligation of secrecy). *See also United States v. Gigliotti,* 15-CR-204 (RJD) (ECF No. 114) (admonishing government for including non-disclosure language in grand jury subpoenas). The government does not allege that Ms. Lin was a grand jury witness. Nor does it clearly allege a grand jury proceeding concerning Mr. Qin or his "activities" was even pending or contemplated. Since there is no rule of secrecy for actual witnesses to pending proceedings,

certainly no such rule applied here to a non-witness and in the apparent absence of any relevant proceeding.

Second, it is also not illegal to leave the jurisdiction during the pendency of a criminal investigation or, thus, to assist another in doing so. Flight to avoid prosecution or the giving of testimony is proscribed under 18 U.S.C. § 1073. But that statute contemplates the existence of a chargeable criminal offense. *See United States v. Bando,* 244 F.2d 833, 843 (2d Cir. 1957) (fleeing felon must be "subject to prosecution"). Departure during an investigation of unknown subject, status, duration, and timing is not proscribed. Were it otherwise, foreign nationals of any imaginable interest to the government would be obliged to remain in the United States indefinitely unless and until prosecutors announced a formal end to their "investigation."

Similarly, the Bail Reform Act, 18 U.S.C. § 3142, draws an explicit distinction between flight and obstruction of justice. Section 3142(f)(2) provides, in pertinent part, that pretrial detention may be ordered in any case involving "(A) a serious risk that the [defendant] will flee; *or* (B) a serious risk that the [defendant] will obstruct or attempt to obstruct justice…." *Id.* § 3142(f)(2) (emphasis added). The Sentencing Guidelines in a Note entitled "Willfully Obstructing or Impeding Proceedings," lists "avoiding or fleeing from arrest" as an example of behavior that does *not* warrant application of the sentencing adjustment. U.S.S.G. § 3C1.1, n. 5. The Second Circuit, applying this Note, has held that a defendant's flight and use of an alias prior to the filing of criminal charges does not constitute obstruction within the meaning of § 3C1.1. *See United States v. Bliss,* 430 F.3d 640, 648 (2d Cir. 2005). The Court reasoned that the defendant's conduct amounted "to little more than 'simply disappear[ing] to avoid arrest,'" and therefore "f[e]ll short of what we believe the Sentencing Commission contemplated in prescribing the enhancement for obstruction of justice." *Id.*

None of these considerations applies here to the bare conduct alleged against Ms. Lin in facilitating Mr. Qin's return home. The government does not allege that Mr. Qin was "subject to prosecution," much less that Ms. Lin knew he was. *Bando,* 244 F.2d at 843. Nor, by contrast to *Bliss,* is there any allegation that he used deception or that the government had an arrest warrant or probable cause to arrest him. Given that, on the face of the indictment, Mr. Qin was free to return home, it was not illegal to recommend and arrange for him to do so by ordinary means. For these reasons as well, Counts Three and Four must be dismissed as a matter of law.

## VI.

## CONCLUSION

For the foregoing reasons, Counts One, Three and Four must be dismissed as a matter of law.


New York, N.Y.
February 17, 2017

/s/

_____
Deborah Colson
Colson Law PLLC
80 Broad Street, 19th Floor
New York, N.Y. 10007
(212) 257-6455
