AAS:DMP/ICR
F. #2014R00564

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                     Cr. 15-601 (S-1)(DLI)

YING LIN,

              Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
COUNTS ONE, THREE AND FOUR OF THE SUPERSEDING INDICTMENT

BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York


Alexander A. Solomon
Douglas M. Pravda
Ian C. Richardson
Assistant U.S. Attorneys

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................... 1

FACTUAL BACKGROUND ...................................................... 1

    I.    The Smuggling Charge ................................................ 1

    II.    The Obstruction of Justice Charges ............................... 3

ARGUMENT ......................................................................... 4

    I.    Legal Standard on a Motion to Dismiss an Indictment........................... 4

    II.    The Smuggling Charge Adequately States an Offense
        Against the Defendant................................................. 6

        A.    The Statutory and Regulatory Scheme ..................... 6

        B.    The Court Should Reject Lin's Arguments
            for Dismissal ............................................. 10

    III.    The Smuggling Charge Does Not Violate the Due
        Process Clause ....................................................... 18

    IV.    The Obstruction Charges Adequately State an Offense
        Against the Defendant................................................. 22

        A.    Lin's Motion To Dismiss Is Premature..................... 22

        B.    The Superseding Indictment Adequately Alleges
            an Official Proceeding .................................... 23

        C.    Section 1512(c)(2) Is a Much Broader Statute
            than Lin Argues........................................... 26

        D.    Lin's Charged Conduct, If Proven at Trial,
            Constitutes Obstruction of Justice ....................... 35

    CONCLUSION..................................................................... 37

CASES

Collazos v. United States,
   368 F.3d 190 (2d Cir. 2004) ............................................................................. 29, 30

Franco-Casasola v. Holder,
   773 F.3d 33 (5th Cir. 2014) ............................................................................... 12, 13

Graziano v. United States,
   No. 12-CV-738 (JFB), 2013 WL 298116 (E.D.N.Y. Jan. 25, 2013) ........................................ 15

Johnson v. United States,
   135 S. Ct. 2551 (2015) ..................................................................................... 28, 29

Moskal v. United States,
   498 U.S. 103 (1990) ............................................................................................ 34

Standefer v. United States,
   447 U.S. 10 (1980) .............................................................................................. 14

United States v. Aguilar,
   515 U.S. 593 (1995) ............................................................. 24, 28, 31, 32, 33, 34

United States v. Ahrensfield,
   698 F.3d 1310 (10th Cir. 2012) ............................................................................ 36

United States v. Alfonso,
   143 F.3d 772 (2d Cir. 1998) ............................................................................... 4, 5

United States v. Aliperti,
   867 F. Supp. 142 (E.D.N.Y. 1994) ..................................................................... 5, 13

United States v. Bando,
   244 F.2d 833 (2d Cir. 1957) ............................................................................. 35, 36

United States v. Batista,
   No. 06-CR-265 (DLI), 2010 WL 1193314 (E.D.N.Y. Mar. 24, 2010) ................................... 36

United States v. Bernardino,
   444 Fed. Appx. 73 (5th Cir. 2011) ....................................................................... 12

United States v. Brozyna,
   571 F.2d 742 (2d Cir. 1978) ................................................................................ 12

United States v. Cardenas,
  626 Fed. Appx. 441 (5th Cir. 2015) ................................................................. 12, 13

United States v. Cardenas,
  810 F.3d 373 (5th Cir. 2016) ................................................................................ 12

United States v. Chi Tong Kuok,
  671 F.3d 931 (9th Cir. 2012) ................................................................................ 12

United States v. Citron,
  783 F.2d 307 (2d Cir. 1986) ............................................................................... 4, 5

United States v. DiCristina,
  726 F.3d 92 (2d Cir. 2013) .................................................................................. 34

United States v. Ezeta,
  752 F.3d 1182 (9th Cir. 2014) ............................................................................. 14

United States v. Gabriel,
  920 F. Supp. 498 (S.D.N.Y. 1996) ...................................................................... 24

United States v. Gray,
  642 F.3d 371 (2d Cir. 2011) ................................................................................ 34

United States v. Harper,
  No. 13-CR-601 (RJD), 2015 WL 6029530 (E.D.N.Y. Oct. 15, 2015) .................... 15

United States v. Hill,
  279 Fed. Appx. 90 (2d Cir. 2008) ....................................................................... 15

United States v. Hutcherson,
  No. 05-CR-039, 2006 WL 270019 (W.D. Va. Feb. 3, 2006) .................................. 28

United States v. Ibrahim,
  No. CR-11-0811, 2013 WL 5434156 (N.D. Cal. Sept. 27, 2013) ...................... 20, 21

United States v. Joseph,
  530 Fed. Appx. 911 (11th Cir. 2013) ................................................................... 12

United States v. Kavoukian,
  315 F.3d 139 (2d Cir. 2002) ................................................................................ 34

United States v. Kelly,
  91 F. Supp. 2d 580 (S.D.N.Y. 2000) ................................................................... 22

United States v. Kim,
  193 F.3d 567 (2d Cir. 1999) ................................................................................ 33

United States v. Kumar,
    No. 04-CR-846 (ILG), 2006 WL 6589865 (E.D.N.Y. Feb. 21, 2006).............. 26, 27, 31, 32, 33

United States v. Kumar,
    617 F.3d 612 (2d Cir. 2010) ............................................................................ 27, 31

United States v. Laurent,
    861 F. Supp. 2d 71 (E.D.N.Y. 2011)........................................................................ 5

United States v. Masterpol,
    940 F.2d 760 (2d Cir. 1991) ................................................................................... 34

United States v. Matthews,
    505 F.3d 698 (7th Cir. 2007) .................................................................................. 36

United States v. McCarthy,
    249 F. Supp. 199 (E.D.N.Y. 1966) ......................................................................... 36

United States v. Mucciante,
    21 F.3d 1228 (2d Cir. 1994) ................................................................................... 15

United States v. Murphy,
    762 F.2d 1151 (1st Cir. 1985) ................................................................................ 25

United States v. Newton,
    452 Fed. Appx. 288 (4th Cir. 2011) ....................................................................... 36

United States v. Petruk,
    781 F.3d 438 (8th Cir. 2015)................................................................................... 27

United States v. Pugh,
    No. 15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ........................... 27, 28

United States v. Reich,
    479 F.3d 179 (2d Cir. 2007).................................................................................... 24

United States v. Reyes,
    559 Fed. Appx. 274 (5th Cir. 2014) ....................................................................... 12

United States v. Richter,
    796 F.3d 1173 (10th Cir. 2015)................................................................... 18, 19, 20

United States v. Ring,
    628 F. Supp. 2d 195 (D.D.C. 2009) ....................................................................... 27

United States v. Ruffin,
    613 F.2d 408 (2d Cir. 1979).................................................................................... 14

United States v. Sampson,
  No. 13-CR-269 (DLI), 2016 WL 756565 (E.D.N.Y. Feb. 26, 2016) ...................................... 24

United States v. Singleton,
  No. 06-CR-080, 2006 WL 1984467 (S.D. Tex. July 14, 2006) ................................ 28

United States v. Stevens,
  771 F. Supp. 2d 556 (D. Md. 2011) ...................................................................... 27

United States v. Stringer,
  730 F.3d 120 (2d Cir. 2013) .................................................................................. 5

United States v. Tannenbaum,
  934 F.2d 8 (2d Cir. 1991) ..................................................................................... 14

United States v. Taylor,
  17 F. Supp. 3d 162 (E.D.N.Y. 2014) ..................................................................... 13

United States v. Thomas,
  150 F.3d 743 (7th Cir. 1998) .................................................................................. 5

United States v. Volpendesto,
  746 F.3d 273 (7th Cir. 2014) ........................................................................... 27, 36

United States v. Walsh,
  194 F.3d 37 (2d Cir. 1999) .................................................................................... 11

United States v. Yakou,
  428 F.3d 241 (D.C. Cir. 2005) ................................................................................ 5

Yates v.United States,
  135 S. Ct. 1074 (2015) .......................................................................................... 28

## STATUTES

18 U.S.C. § 2 ............................................................................. 7, 10, 14, 15

18 U.S.C. § 554 ..................................................................................... passim

18 U.S.C. § 1349 ............................................................................................ 1

18 U.S.C. § 1503 ................................................... 24, 27, 30, 31, 32, 33, 34

18 U.S.C. §§ 1512(a) ...................................................................................... 25

18 U.S.C. §§ 1512(b) ................................................................................. 22, 24

18 U.S.C. § 1512(c)(1) ................................................... 27, 28, 29, 30, 36

18 U.S.C. §§ 1512(c)(2) ........................................................................................... passim

18 U.S.C. § 1512(k) ................................................................................... 1, 22, 36

18 U.S.C. § 1515(a)(1)(A) ..................................................................................... 23

22 U.S.C. § 2778(c) ................................................................................................ 12

28 U.S.C. § 2466(a)(1) ........................................................................................... 29

31 U.S.C. § 5324 ...................................................................................................... 1

49 U.S.C. § 44906 ................................................................................... 2, 3, 7, 11

## REGULATIONS

49 C.F.R. Part 1546 ........................................................................................ 7, 11

49 C.F.R. § 1546.101 .................................................................................... 7, 9, 16

49 C.F.R. § 1546.103(b) ............................................................................... 8, 9, 15

49 C.F.R. § 1546.201 ............................................................................................... 8

49 C.F.R. § 1546.203 ........................................................................... 8, 9, 11, 16

49 C.F.R. § 1546.205 ............................................................................................... 8

## RULES

Federal Rule of Criminal Procedure 7(c) ............................................................... 4

Federal Rule of Criminal Procedure 12(b)(3) ................................................. 5, 21

## OTHER AUTHORITIES

148 Cong. Rec. H4683-01,
   2002 WL 1558880 ............................................................................................. 32

148 Cong. Rec. S6524-02,
   2002 WL 1474352 ....................................................................................... 32, 33

S. Rep. No. 107-146,
   2002 WL 863249 ............................................................................................... 32

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the defendant Ying Lin's motion to dismiss Counts One, Three and Four of the Superseding Indictment, principally on the grounds that those counts fail to state an offense. At bottom, Lin's motion amounts to a premature motion for a judgment of acquittal before the government has the opportunity to present evidence of Lin's criminal actions to a jury. For the reasons outlined below, Lin's motion should be denied.

FACTUAL BACKGROUND

On August 31, 2016, a grand jury sitting in the Eastern District of New York returned a superseding indictment charging Lin with smuggling, in violation of 18 U.S.C. § 554 (Count One), conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count Two), obstruction of justice and conspiracy to obstruct justice in violation of 18 U.S.C. §§ 1512(c)(2) and 1512(k) (Counts Three and Four), and structuring financial transactions in violation of 31 U.S.C. § 5324 (Count Five).

I.      The Smuggling Charge

As charged in the Superseding Indictment, Lin worked as a counter agent for an international air carrier (the "Air Carrier") at John F. Kennedy International Airport ("JFK Airport") in Queens, New York. (Sup. Ind. ¶ 1). The Air Carrier is headquartered in the People's Republic of China ("PRC"). Between January 2010 and April 2016, Lin used her position with the Air Carrier to smuggle items onto Air Carrier flights departing from JFK Airport to the PRC at the direction of various PRC nationals, including PRC agents working at the Permanent Mission of the PRC to the United Nations and the PRC Consulate in New York. (Sup. Ind. ¶¶ 5-6, 20-21). Specifically, Lin accepted baggage unaccompanied baggage from PRC agents working at the PRC Mission and PRC Consulate. (Sup. Ind. ¶ 7). Lin also accepted

unaccompanied baggage from PRC agents who had registered with the U.S. Department of State as employees of the PRC "Department of Defense" and then checked that baggage onto Air Carrier flights under the names of other passengers. (Sup. Ind. ¶ 7).

These actions were in violation of the Air Carrier's model security program, which provided, inter alia, that "checked baggage is accepted only from ticketed passengers, only by an authorized representative of the carrier, and, in the United States, only at the airport counters." (Sup. Ind. ¶ 4). As a result, Lin's actions were also in violation of regulations issued by the Transportation Security Administration ("TSA") regarding the processing and screening of luggage transported on passenger flights within and from the United States. (Sup. Ind. ¶ 2). Pursuant to 49 U.S.C. § 44906, each foreign air carrier was required to "adopt and use a security program" approved by the TSA. (Sup. Ind. ¶ 3). TSA implementing regulations further provided that the security program shall "[p]revent cargo and checked baggage from being loaded aboard its airplanes unless handled in accordance with the foreign air carrier's security procedures." (Sup. Ind. ¶ 3).

In return for providing these services to the PRC, Lin received benefits from the PRC Mission and the PRC Consulate, including tax-exempt purchases of discounted liquor and electronic devices, worth tens of thousands of dollars, as well as free contracting work by PRC construction workers at Lin's personal residence in Queens, New York. (Sup. Ind. ¶ 8).

These speaking allegations of the Superseding Indictment were then incorporated by reference into the smuggling charge in Count One, which charges Lin with violating 18 U.S.C. §§ 554 and 2. (Sup. Ind. ¶¶ 20-21). Count One charges that Lin "did willfully, fraudulently and knowingly export and send from the United States, merchandise, articles and objects, to wit: unaccompanied baggage aboard outbound [Air] Carrier flights to the PRC" and

"did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation," and that these actions were "contrary to United States laws and regulations, to wit: Title 49, United States Code, Section 44906 and TSA implementing regulations." (Sup. Ind. ¶ 21).

Although not alleged in the Superseding Indictment, the government has provided Lin in discovery with the content of her post-arrest statement. In that statement, Lin admitted that on at least one occasion she accepted boxes from two individuals whom she knew to work for the PRC Mission, that she placed those boxes aboard an Air Carrier flight to the PRC even though the two individuals were not traveling on that flight, and that she knew that placing unaccompanied baggage on an aircraft is a violation of airport policy and regulations.

## II.    The Obstruction of Justice Charges

As charged in the Superseding Indictment, between October 2015 and April 2016, Lin also obstructed justice and conspired to obstruct justice by, among other things, instructing another individual (the "Confederate") to flee the United States and making arrangements for the Confederate to flee. (Sup. Ind. ¶¶ 24-27). During the summer and fall of 2015, the federal government was investigating the activities of the Confederate. (Sup. Ind. ¶ 15). As part of the government's investigation of the Confederate's activities, Special Agents of the Federal Bureau of Investigation interviewed Lin's two adult daughters on October 20, 2015, during which agents asked Lin's daughters questions about the Confederate. (Sup. Ind. ¶ 15).

Following these interviews, Lin warned the Confederate about the federal government's interest in the Confederate's activities and instructed him to flee immediately. (Sup. Ind. ¶ 16). At the request of the Confederate and while working with others, Lin arranged for the Confederate's immediate departure from the United States. (Sup. Ind. ¶ 16). On or about

October 28, 2015, the Confederate departed for Beijing, PRC aboard an Air Carrier flight from JFK Airport.  (Sup. Ind. ¶ 17).

The government's trial proof will show that, prior to the interview with Lin's daughters, the government served a federal grand jury subpoena on one of Lin's daughters with respect to a pending grand jury investigation in the Eastern District of New York involving the Confederate.  As Lin was aware that her daughter had received a grand jury subpoena, she was therefore aware of a then-pending grand jury investigation in the Eastern District of New York.

The government's trial proof will also include numerous electronic messages that Lin sent to the Confederate through a third-person in order to avoid detection by law enforcement.  In those messages, Lin advised the Confederate that law enforcement was asking questions about him and encouraged him to leave the United States immediately so as to avoid apprehension.  As noted, Lin subsequently made arrangements for the Confederate's travel on an Air Carrier flight.

## ARGUMENT

I.      Legal Standard on a Motion to Dismiss an Indictment

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  The Second Circuit has instructed that an indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotation marks omitted).  It is well-settled that an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  Id.  Where an indictment does so, it is sufficiently specific to withstand a motion to dismiss.  See United States

v. Citron, 783 F.2d 307, 314 (2d Cir. 1986); United States v. Aliperti, 867 F. Supp. 142, 144 (E.D.N.Y. 1994).  As the Second Circuit has held, "When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, this court has 'repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'"  United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (internal citations omitted).

Under Federal Rule of Criminal Procedure 12(b)(3), a defense that an indictment fails to state an offense may only be raised by a pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits" (emphasis added).  Accordingly, where the motion cannot be determined without reference to the evidence that would be presented at trial, it must be denied.  "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . , the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."  Alfonso, 143 F.3d at 776-77.  Thus, a technically sufficient indictment "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial." United States v. Laurent, 861 F. Supp. 2d 71, 110 (E.D.N.Y. 2011); see also United States v. Yakou, 428 F.3d 241, 246 (D.C. Cir. 2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); United States v. Thomas, 150 F.3d 743, 747 (7th Cir. 1998) (Easterbrook, J., concurring) ("Summary judgment does not exist in criminal cases").

II.     The Smuggling Charge Adequately States an Offense Against the Defendant

Lin moves to dismiss the smuggling charge on the ground that it fails to state an offense because the statute and TSA implementing regulations do not impose any legal obligations on a private individual, such as the defendant.  Lin's motion is premised on a misunderstanding of the regulatory scheme and of the basis of the government's charge.  As set forth below, the regulatory scheme requires the Air Carrier to comply with TSA implementing regulations by designing and carrying out a security program to prevent aviation smuggling.  The Air Carrier intentionally violated those regulations, which led to unaccompanied baggage being transported on Air Carrier flights at the behest of PRC agents in violation of the Air Carrier's security program contrary to 18 U.S.C. § 554.  Lin "aided, abetted, counselled, commanded, induced, and procured" the commission of that offense, in violation of Sections 554 and 2.  Accordingly, she can and should be held to answer for her actions in a court of law.

A.     The Statutory and Regulatory Scheme

Count One, which is the smuggling count, incorporates by reference all previous paragraphs of the Superseding Indictment, including the information presented about Lin's conduct, the TSA's regulatory authority, and the Air Carrier's model security program.  (Sup. Ind. ¶ 20).  Paragraph 21 of the Superseding Indictment sets forth the operative smuggling charge against Lin:

> In or about and between January 2010 and April 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant YING LIN, also known as "Randi Lin" and "Randy Lin," together with others, did willfully, fraudulently and knowingly export and send from the United States, merchandise, articles and objects, to wit: unaccompanied baggage aboard outbound Carrier flights to the PRC, contrary to United States laws and regulations, to wit: Title 49, United States Code, Section 44906 and TSA implementing regulations, and did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of such merchandise, articles and

objects, prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

(Title 18, United States Code, Sections 554, 2 and 3551 et seq.)

(Sup. Ind. ¶ 21). That paragraph charges that Lin's conduct violating Sections 554 and 2 was "contrary to United States laws and regulations," and identifies those laws and regulations as 49 U.S.C. § 44906 and TSA implementing regulations. (Id.).

In turn, 49 U.S.C. § 44906 is titled "Foreign air carrier security programs." It imposes a requirement that "a foreign air carrier must adopt and use a security program" approved by the TSA, and permits the TSA to prescribe regulations to carry out this mandate.

Paragraph 21 of the Superseding Indictment also cites "TSA implementing regulations." Among the implementing regulations prescribed by the TSA pursuant to Section 44906 is 49 C.F.R. Part 1546, titled "FOREIGN AIR CARRIER SECURITY." That regulation governs foreign air carriers such as the Air Carrier.

Part 1546, subpart B is titled "Security Program." Section 1546.101 governs the adoption and implementation of such security programs. It provides:

> Each foreign air carrier landing or taking off in the United States must adopt and carry out, for each scheduled and public charter passenger operation or all-cargo operation, a security program that meets the requirements of –
>
> **(a)** Section 1546.103(b) and subparts C, D, and E of this part for each operation with an aircraft having a passenger seating configuration of 61 or more seats . . . .

49 C.F.R. § 1546.101. As relevant here, the Air Carrier's passenger planes that travel between JFK Airport and the PRC utilize aircraft with more than 61 seats. Accordingly, Section 1546.103(b) and subparts C (Sections 1546.201 – 1546.215), D (Section 1546.301) and E (Sections 1546.401 – 1546.411) apply to the Air Carrier passenger planes at issue here.

Section 1546.103(b) provides requirements for the content of the security

program.  It provides, in relevant part:

> **(b) Content of security program**.  Each security program required
> by § 1546.101(a) . . . must be designed to -
>
>> **(1)** Prevent or deter the carriage aboard airplanes of any
>> unauthorized explosive, incendiary, or weapon on or about each
>> individual's person or accessible property, except as provided in
>> § 1546.201(d), through screening by weapon-detecting
>> procedures or facilities;
>>
>> **(2)** Prohibit unauthorized access to airplanes;
>>
>> **(3)** Ensure that checked baggage is accepted by a responsible
>> agent of the foreign air carrier; and
>>
>> **(4)** Prevent cargo and checked baggage from being loaded
>> aboard its airplanes unless handled in accordance with the
>> foreign air carrier's security procedures.

49 C.F.R. § 1546.103(b).  The requirements in subsection (b)(3) and (b)(4) apply to checked

baggage.[1]  They provide that the Air Carrier's security program must be designed to ensure that

checked baggage is accepted by a responsible agent of the Air Carrier and to prevent checked

baggage from being loaded aboard Air Carrier airplanes unless handled in accordance with the

Air Carrier's security procedures.

Subpart C, which, as noted above, also applies to the Air Carrier's passenger

planes, sets forth regulations concerning, inter alia, the acceptance and screening of individuals

and accessible property (i.e., carry-on baggage) (see 49 C.F.R. § 1546.201), checked baggage

(see 49 C.F.R. § 1546.203), and cargo (see 49 C.F.R. § 1546.205).  The portion of that regulation

related to the acceptance and screening of checked baggage provides as follows:

> **(a) Preventing or deterring the carriage of any explosive or
> incendiary.** Each foreign air carrier must use the procedures,

---

[1]     In contrast, the requirement in subsection (b)(1) applies to an individual's person
or accessible property (referring to carry-on luggage).

facilities, and equipment described in its security program to prevent or deter the carriage of any unauthorized explosive or incendiary onboard aircraft in checked baggage.

**(b) Refusal to transport.** Each foreign air carrier must refuse to transport any individual's checked baggage or property if the individual does not consent to a search or inspection of that checked baggage or property in accordance with the system prescribed by this part.

**(c) Firearms in checked baggage.** No foreign air carrier may knowingly permit any person to transport, nor may any person transport, while aboard an aircraft being operated in the United States by that carrier, in checked baggage, a firearm, unless:

(1) The person has notified the foreign air carrier before checking the baggage that the firearm is in the baggage; and

(2) The baggage is carried in an area inaccessible to passengers.

49 C.F.R. § 1546.203. Subsection (a) makes clear that this regulation governs the process by which the Air Carrier accepts and screens checked baggage. Specifically, the Air Carrier must "use the procedures, facilities, and equipment described in its security program," the objective of which is "to prevent or deter" someone from bringing an explosive aboard a flight in checked baggage.

Taken together, these regulatory provisions applicable to checked baggage on passenger aircraft that fly from JFK Airport to the PRC provide that the Air Carrier must "adopt and carry out" a "security program" (49 C.F.R. § 1546.101) that prevents "checked baggage from being loaded aboard its airplanes" (49 C.F.R. § 1546.103(b)) without being screened using the "procedures, facilities, and equipment described in its security program" (49 C.F.R. § 1546.203). The Air Carrier's security program, which was approved by the TSA, provided in turn that "checked baggage is accepted only from ticketed passengers." (Sup. Ind. ¶ 4).

As charged in the Superseding Indictment and as the government will prove at trial, the Air Carrier intentionally failed to carry out that security program, thereby violating the

TSA regulations requiring the Air Carrier to do so.  Lin aided, abetted, counselled, commanded, induced, and procured the commission of the Air Carrier's violation of TSA regulations.[2]  In so doing, Lin "did willfully, fraudulently and knowingly export and send from the United States, merchandise, articles and objects," and "did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation," contrary to the TSA regulations set forth above.  (Sup. Ind. ¶ 21).  Accordingly, Count One appropriately states an offense in violation of Sections 554 and 2, and Lin's motion to dismiss should be denied.

B.     The Court Should Reject Lin's Arguments for Dismissal

Lin offers a variety of grounds for dismissal of Count One for failure to state an offense, all of which should be rejected.

First, Lin argues that the Superseding Indictment is defective and fails to state an offense because Section 554 requires that a defendant commit conduct that is "contrary to any law or regulation of the United States" but the Superseding Indictment does not adequately identify the laws or regulations alleged to be violated or set forth the elements of such provisions.  (Def. Mem. at 5).

Section 554 requires that smuggling activity be "contrary to any law or regulation of the United States."  18 U.S.C. § 554.  As set forth above, Count One specifically alleges that Lin's actions in violation of Sections 554 and 2 were "contrary to United States laws and regulations, to wit: Title 49, United States Code, Section 44906 and TSA implementing regulations."  (Sup. Ind. ¶ 21).

---

[2]  18 U.S.C. § 2 provides that any person who "commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission" is punishable as a principal.

Although the government did not include in the Superseding Indictment a citation to the specific TSA implementing regulations at issue, the Superseding Indictment makes clear that the gravamen of the charged crime involves "unaccompanied baggage aboard outbound [Air Carrier] flights to the PRC," (Sup. Ind. ¶ 21), and relates to violations of the Air Carrier's model security program concerning "checked baggage," (Sup. Ind. ¶ 4). Of the TSA implementing regulations promulgated pursuant to 49 U.S.C. § 44906, only the handful of regulations set forth in 49 C.F.R. Part 1546, as described in more detail above, relate to security procedures involving checked baggage.[3] Indeed, Section 44906 is titled "Foreign air carrier security programs," while the implementing regulation set forth in Part 1546 is titled "FOREIGN AIR CARRIER SECURITY." Moreover, the fact that Part 1546 was at issue was evident from the Superseding Indictment's quotations of various sections of Part 1546, which was sufficient to provide notice of the regulations that Lin is charged with violating.

Indeed, notwithstanding Lin's argument that the Superseding Indictment failed to put her on notice of which TSA regulation she violated, *she identifies the very regulation in her brief and describes it as the "sole regulation concerning checked baggage on passenger planes."* (Def. Mem. at 11, citing 49 C.F.R. 1546.203(a)). Thus, Lin was able to identify the very regulation that proscribes the conduct in which she engaged. That alone demonstrates that the notice provided in the Superseding Indictment was adequate. See United States v. Walsh, 194 F.3d 37, 44-45 (2d Cir. 1999) (indictment adequately informs a defendant of the charge

---

[3] Other regulations promulgated pursuant to 49 U.S.C. § 44906 relate to topics such as airworthiness and safety requirements for flight deck security (14 C.F.R. Part 129), TSA investigative and enforcement procedures (49 C.F.R. Part 1503), and the protection of sensitive security information (49 C.F.R. Part 1520).

where it contains sufficient notice to permit the defendant to prepare a defense); United States v. Brozyna, 571 F.2d 742, 746 (2d Cir. 1978) (same).

Nor is it necessary, as Lin argues, that the Superseding Indictment set forth the specific elements of the law or regulation violated.  For purposes of a Section 554 conviction, the Courts of Appeal have held that it is not necessary for the government to prove the elements of the underlying law or regulation, so long as the government proves that the defendant knew that the baggage was intended for export and that the exportation was illegal.  See, e.g., United States v. Cardenas, 810 F.3d 373, 374 (5th Cir. 2016) (per curiam) (holding that, where indictment charged a violation of Section 554 contrary to 22 U.S.C. § 2778(c) (control of arms exports and imports), the district court did not err in failing to charge the jury on the elements of exporting ammunition contrary to Section 2778); United States v. Cardenas, 626 Fed. Appx. 441, 442-43 (5th Cir. 2015) (same); United States v. Reyes, 559 Fed. Appx. 274, 275 (5th Cir. 2014) (same); United States v. Joseph, 530 Fed. Appx. 911, 920 (11th Cir. 2013) (describing elements of a Section 554 offense as (1) fraudulently and knowingly (2) exporting or attempting to export any merchandise, article or object (3) in violation of any law or regulation of the United States); United States v. Chi Tong Kuok, 671 F.3d 931, 944 (9th Cir. 2012) (government must prove that defendant knows item was intended for export contrary to U.S. law); United States v. Bernardino, 444 Fed. Appx. 73, 74 (5th Cir. 2011) (same).  As a matter of logic, if the government need not prove the elements of the underlying law or regulation, then it need not charge those elements in the Superseding Indictment.

Lin relies on Franco-Casasola v. Holder, 773 F.3d 33 (5th Cir. 2014), for the proposition that the government is required to set forth in an indictment the specific elements of the law and/or regulations that it charges were violated in connection with Section 554.  (Def.

Mem. at 5). Franco-Casasola quotes the language of Section 554 and then states that: "As we will explain, the relevant elements of those other laws and regulations will also be included in an indictment and the fact-finder will need to determine they were committed," 773 F.3d at 36, and "Franco-Casasola's statute of conviction, namely, Section 554(a), requires that he have also violated other statutes, which themselves provide elements that must be charged and proven to fact-finders," id. at 39. However, this Fifth Circuit case did not cite or rely on any authority in stating that proposition, which was contained in dicta. The issue that the Fifth Circuit considered was whether a Section 554 conviction was an aggravated felony for purposes of an immigration appeal, not whether the Section 554 conviction was valid. Notably, the Fifth Circuit, in the more recent opinion in Cardenas, 626 Fed. Appx. at 442-43, did not follow the dicta in Franco-Casasola.

To the extent that Lin believed that additional information was necessary, she could have moved for a bill of particulars pursuant to Rule 7(f). Should the Court wish to construe Lin's motion as one for a bill of particulars, the government respectfully submits that its explanation of the regulatory scheme set forth above sufficiently answers any such request. See United States v. Taylor, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014) (noting that a bill of particulars is not required "where the information sought by the defendant has been made available in alternative forms"); Aliperti, 867 F. Supp. at 148 (explaining that no bill of particulars is required where the information sought is provided "in the indictment or in some acceptable alternate form").

Second, Lin reviews the statute and regulations quoted in the Superseding Indictment and argues that she could not have violated any of them because the statute concerns actions by the Under Secretary of Transportation for Security while the regulations concern

actions by the Air Carrier.  As set forth above, however, the Superseding Indictment cites

Section 2, which imposes criminal liability on an individual who "aids, abets, counsels,

commands, induces or procures" the commission of a crime against the United States.  It is well-

settled that even when a defendant is not capable of committing an underlying crime, the

defendant can still be convicted under Section 2 for aiding, abetting, counseling, commanding,

inducing or procuring the commission of that crime.  "The fact that the accused does not possess

the legal capacity to commit the substantive offense does not mean that [s]he cannot be

convicted pursuant to [18 U.S.C.] § 2(a) of aiding and abetting the commission of the substantive

offense by another."  United States v. Tannenbaum, 934 F.2d 8, 14 (2d Cir. 1991); see also

United States v. Ruffin, 613 F.2d 408, 413 (2d Cir. 1979) ("Where the principal is found guilty

of a criminal offense, for instance, it is undisputed that a person may be convicted as an aider and

abettor under 18 U.S.C. s 2(a) even though [s]he may lack the capacity to violate the substantive

criminal statute.").

It is not necessary for the government to charge the Air Carrier with a crime for

Lin to be charged under Section 2.  The failure to prosecute the principal – and, indeed, even the

acquittal of the principal – does not preclude conviction of an aider and abettor.  See Standefer v.

United States, 447 U.S. 10, 20 (1980); Ruffin, 613 F.2d at 412 ("The failure to prosecute or

obtain a prior conviction of a principal, such as where he may have been granted immunity or

pleaded to a lesser offense, does not preclude conviction of the aider and abettor, as long as the

commission of the crime by a principal is proved."); see also United States v. Ezeta, 752 F.3d

1182, 1186 n.3 (9th Cir. 2014) (existence of a knowing principal is immaterial to liability under

Section 2; government does not need to prove that someone other than the defendant was guilty

of the substantive crime).

It is also well-settled that it is adequate under Rule 7 for the government to charge a violation of Section 2 only through a citation in the criminal offense charged. Indeed, the Second Circuit has held that an "aiding and abetting charge is arguably implicit in every indictment" and "it is well established that a trial judge may properly give an aiding and abetting instruction even if the indictment does not expressly charge a violation of 18 U.S.C. § 2," United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994); see also United States v. Harper, No. 13-CR-601 (RJD), 2015 WL 6029530, at *5 (E.D.N.Y. Oct. 15, 2015) (explaining that defendants could properly be convicted under Section 2(b) even where the indictment did not charge such a violation). Here, the Superseding Indictment includes the language "together with others" and cites to Section 2, which the Second Circuit has held is more than adequate to provide notice of the government's charging theory under Section 2. See United States v. Hill, 279 Fed. Appx. 90, 95 (2d Cir. 2008) (summary order) ("[T]he phrase 'together with others' and the citations to 18 U.S.C. § 2 were sufficient to put [the defendant] on notice that he faced such liability"); Graziano v. United States, No. 12-CV-738 (JFB), 2013 WL 298116, at *9 (E.D.N.Y. Jan. 25, 2013) (holding, in response to the argument that "the mere use of a parenthetical in [the indictment] to reference the aiding and abetting statute is insufficient to provide notice," that "[w]hen an indictment specifically charges a violation of 18 U.S.C. § 2, a defendant is undoubtedly on notice of his potential liability as an aider and abettor").

Third, Lin argues that the TSA regulation set forth in 49 C.F.R. 1546.103(b)(4) concerns only the "content" of the Air Carrier's security program, not its application, and therefore she could not have violated the regulation. (Def. Mem. at 6-7). That argument reflects a clear misunderstanding of the regulatory regime. The operative language set forth in Section 1546.101 requires that the Air Carrier must "adopt and carry out" a security program that meets

the requirements of additional subsections, including Section 1546.103. 49 C.F.R. Part 1546.101

(emphasis added). The fact that Section 1546.103 simply sets forth a requirement of what the

security program must provide does not therefore mean that the Air Carrier has no obligation to

carry out a program meeting those requirements. In other words, the applicable regulations

govern not merely the design and content of the security program, but also require the Air

Carrier to carry out that security program. Thus, Lin's argument that the regulation concerns

only the design of the security program is flawed.

<u>Fourth</u>, Lin erroneously argues that the stated purpose of the regulations is to

prevent or deter "the carriage of any unauthorized explosive or incendiary onboard aircraft in

checked baggage," and that the Superseding Indictment fails to state a claim because the

government does not allege that the baggage that Lin arranged to transport as unaccompanied

luggage contained any explosive or incendiary or anything in particular. (Def. Mem. at 8).[4]

The regulation at issue governs the process by which checked baggage is accepted

for transport: "Each foreign air carrier must use the procedures, facilities, and equipment

described in its security program to prevent or deter the carriage of any unauthorized explosive

or incendiary onboard aircraft in checked baggage." 49 C.F.R. Part 1546.203(a). Accordingly,

the Air Carrier must "use the procedures, facilities, and equipment" described in its security

program. The Superseding Indictment charges intentional violations of this regulation; Lin's

actions circumvented the Air Carrier's use of "the procedures, facilities, and equipment"

described in its security program.

---

[4] Lin technically makes this argument with reference to Section 1546.202, which the government quoted in the Superseding Indictment. The government construes the argument as applying equally to Section 1546.203, which the government discusses herein.

Contrary to Lin's argument, it is irrelevant whether the unaccompanied baggage actually contained an explosive or incendiary device. The regulation mandates the design and execution of "procedures, facilities, and equipment" in order "to prevent or deter" the carriage of explosives or incendiary devices. The focus of the regulation, as noted, is on the use of the procedures, facilities and equipment. When the procedures are appropriately implemented and carried out, they can prevent and deter someone from checking in a bag containing explosives. When those procedures are not followed, however, then the objective of the regulation to prevent and deter explosive and incendiary devices is not met.

Indeed, it is quite common for regulatory offenses to apply to a violation of process rather than results. For instance, an offender might keep an inaccurate record relating to the transport of a toxic substance, and thereby violate a regulation governing recordkeeping practices related to toxic substances. However, the failure to accurately record the transport might not lead to the release or improper handling of the toxic substance.

Here, the regulation does not state, as Lin suggests, that the foreign air carrier must prohibit the carriage of explosives and incendiaries, such that the regulation is violated only when the Air Carrier actually fails to prevent an explosive or incendiary from being present in checked baggage. If that were the intent of the regulation, it could have been written exactly as the regulation prohibiting the transport of firearms in checked baggage in a different subsection of the same regulation. Indeed, Section 1546.203(c) states, "No foreign air carrier may knowingly permit any person to transport, nor may any person transport . . . in checked baggage, a firearm," unless certain conditions are met. If the Air Carrier knowingly permitted an individual to transport a firearm in checked baggage without one of the exceptions being met, it would be in violation of Section 1546.203(c), which covers the result (i.e., transport of a

firearm), not the process (i.e., use of procedures to prevent or deter).  However, the government does not allege violations of Section 1546.203(c), but rather violations of Section 1546.203(a). Accordingly, Lin's argument that the Superseding Indictment fails to state an offense is incorrect.[5]

III.    The Smuggling Charge Does Not Violate the Due Process Clause

Lin argues that the smuggling charge violates her due process right because she did not have adequate notice that her conduct might be criminal. (Def. Mem. at 9).  Specifically, Lin contends that neither the statute, the United States Sentencing Guidelines, nor the TSA regulatory regime gave her adequate notice that her actions violated any criminal laws.  Lin argues that Section 554 has been used to prosecute only crimes on the basis of the content of the materials being smuggled, and have not concerned the "smuggling of unaccompanied baggage" (Def. Mem. at 9), and therefore she did not have fair notice that her conduct might be criminal.

Contrary to Lin's argument, the statutory and regulatory scheme, as set forth above, provided ample notice to Lin that her conduct violated TSA regulations.  The Tenth Circuit address the issue of "fair notice" at length in the context of a prosecution under Section 554 in United States v. Richter, 796 F.3d 1173 (10th Cir. 2015).  In that case, the defendants operated a waste removal and recycling business for electronic waste such as computer and printers.  Id. at 1179.  Colorado's regulatory scheme established several ways in which an electronic device or component became "waste," which turned on whether a device or component could be resold, donated, repaired or refurbished.  Id. at 1183-84.  The Colorado Department of Public Health and Environment subsequently issued guidance on its website clarifying how electronic waste recyclers should distinguish between a product for resale and

---

[5]  Should the Court construe the Superseding Indictment as defective, the government will seek leave to supersede in order to correct any deficiencies.

"waste." Id. at 1184. At trial on charges that the defendants exported electronic waste to the PRC in violation of Section 554, the district court incorporated the guidance from the Colorado Department of Public Health and Environment in instructing the jury as to when an electronic component became "waste." Id. On appeal, the defendants challenged that instruction as improper and argued that their convictions under Section 554 should be reversed because they did not have "fair notice that this definition" of hazardous waste contained in Colorado's guidance "might be criminally enforced against them." Id. at 1182.

The Tenth Circuit ruled that the defendants had "fair notice." First, the Tenth Circuit observed that "where a statute or regulation is aimed at a class of people with specialized knowledge, the specificity required by due process is measured by the common understanding of that group." Id. at 1189. In other words, because the defendants were members of a specialized and technical field of electronic waste recyclers operating in Colorado, which is a highly regulated industry, "it [was] fair to charge defendants with awareness" with respect to Colorado's waste program. Id. at 1190. Second, the Tenth Circuit held that the construction of the definition of electronic waste at issue was "reasonably foreseeable" based on the text of the Colorado regulation, the statutory scheme and indicia of legislative intent. Therefore, "the application of traditional tools of interpretation dictates an interpretation of the regulation consistent with the [jury instruction, and] [t]hat alone is enough to demonstrate the regulation provided defendants with the fair notice required by the Due Process Clause." Id. at 1189. Third, the Tenth Circuit found that the trial evidence established that the defendants kept informed of developments in hazardous waste regulation and had actual notice of the Colorado Department's interpretation of the regulation. Id. at 1190. "Actual notice of an agency's interpretation—even an interpretation that lacks the force and effect of law—can meet the

demands of fair notice." Id. For all these reasons, the Tenth Circuit concluded that the Colorado Department's guidance "provided the defendants with fair notice that this definition of waste would be enforced against them." Id. at 1191.

Here, all of the same factors that the Tenth Circuit considered weigh in favor of a determination that Lin had fair notice that her conduct might be criminal.

First, the statute and regulations at issue relate specifically to foreign air carriers and, more specifically, to acceptance of checked baggage by foreign air carriers. Lin, as an employee of a foreign air carrier from 2002 to 2016 with responsibility for, among other things, accepting checked baggage, was one of those people subject to the regulation and to the Air Carrier's security program implemented to comply with the regulation. Thus, it is fair to charge Lin with knowledge of the regulatory scheme governing security procedures relating to checked baggage.

While Lin argues that the focus of Section 554 prosecutions is on the content of the items smuggled, such as firearms or narcotics, the plain language of Section 554 is not so limited.[6] Section 554 does not prohibits only the export of items that are already prohibited by other statutes. For instance, in United States v. Ibrahim, the defendant sought a judgment of acquittal arguing that he could be convicted under Section 554 for the shipment of hazardous substances only if he violated a law or regulation specifically related to the import or export of goods, in other words, a law or regulation declaring illegal the import or export of hazardous

---

[6] Lin argues that the Sentencing Guidelines contain no reference to smuggling without regard to the contents being smuggled and that it would not be possible to calculate an advisory Guidelines range for her offense. However, the Guidelines provide that in the scenario where none of the Guidelines provisions are applicable to the offense, the appropriate Guidelines range is the statutory minimum to the statutory maximum, see U.S.S.G. § 2X.1, which is 0 to 10 years for a Section 554 violation.

substances. The district court rejected that argument, finding that Section 554 "on its face does not limit the law or regulations to those specific to imports or exports." United States v. Ibrahim, No. CR-11-0811, 2013 WL 5434156, at *9-10 (N.D. Cal. Sept. 27, 2013).

Second, it was reasonably foreseeable to Lin that her conduct in accepting checked baggage from individuals other than ticketed passengers and checking in baggage in the names of individuals to whom the baggage did not belong was in violation of the regulations and the Air Carrier's security program. Lin argues that the purpose of the TSA regulatory regime is to keep dangerous items off airplanes, and blithely contends that this "is not the issue here." (Def. Mem. at 10). As explained above, the regulation at issue governs the process by which checked baggage is accepted for transport, thus the purpose of keeping dangerous items off airplanes does not absolve Lin of responsibility for complying with the applicable security requirements.

Third, the government will introduce evidence at trial that Lin had actual notice of the regulations and of the Air Carrier's security program concerning checked baggage, and was therefore aware that her conduct was prohibited. Such evidence will include TSA training provided to all Air Carrier employees, other less formal directives, and witness testimony concerning Lin's statements and actions. Although the government is not obligated at this stage to disclose how it will offer such proof, the government notes that because Lin's knowledge of whether her conduct was illegal is a factual, rather than a legal, issue, it is not appropriate for resolution at this stage of the case. Rule 12(b)(3) explains that a motion to dismiss is only appropriate where the motion can be determined without a trial on the merits, which is not the case here. Accordingly, Lin's argument that she did not have notice that her conduct was unlawful must be denied at this stage.

IV.    The Obstruction Charges Adequately State an Offense Against the Defendant

Lin moves to dismiss Counts Three and Four of the Superseding Indictment, which charge her with obstruction of justice and conspiracy to obstruct justice in violation of 18 U.S.C. §§ 1512(c)(2) and 1512(k). Section 1512(c)(2) imposes criminal liability for any person who: "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so." Section 1512(k), as applicable here, imposes liability for a conspiracy to obstruct justice in violation of Section 1512(c). Lin argues that those counts fail to state an offense because (1) they fail adequately to allege an official proceeding, (2) they charge witness tampering, which she claims does not fall within the scope of Section 1512(c)(2), and (3) they fail adequately to allege that Lin engaged in obstruction. For the reasons that follow, the Court should reject these arguments.

A.    Lin's Motion To Dismiss Is Premature

At bottom, Lin's motion to dismiss the obstruction charges rests more on the sufficiency of the government's factual allegations than it does on the facial validity of the Superseding Indictment. As a result, Lin's motion is premature. See, e.g., United States v. Kelly, 91 F. Supp. 2d 580, 583 (S.D.N.Y. 2000) (denying pre-trial motion to dismiss Section 1512(b) claim for failure to state an offense, and holding: "[Defendant's] motion, in essence, challenges the sufficiency of the indictment's factual allegations to establish a violation of § 1512(b) on the merits. However, '[i]t is axiomatic that, in a criminal case, a defendant may not challenge a facially valid Indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary sufficiency.'" (citations omitted)). So too here.

B.     The Superseding Indictment Adequately Alleges an Official Proceeding

Lin argues that the Superseding Indictment is defective because it fails adequately to allege an "official proceeding."  (Def. Mem. at 12).  However, the Superseding Indictment specifically identifies the "official proceeding" at issue as a "Federal Grand Jury investigation in the Eastern District of New York."  (Sup. Ind. ¶¶ 25, 27).  There can be no dispute that a grand jury investigation is an "official proceeding" under Section 1512(c)(2).  See 18 U.S.C. § 1515(a)(1)(A) (defining "official proceeding" to include a proceeding before a "Federal grand jury").

Lin speculates that no official proceeding actually existed and that the government was instead "involved in a mere fishing expedition or, at best, conducting a preliminary investigation" because the Superseding Indictment does not identify the target of the grand jury investigation or set forth the crime(s) under investigation.  (Def. Mem. at 13-14 & n.1).  Notably, however, the identity of the target of the grand jury proceeding and the nature of the crimes under investigation in that proceeding are not elements of a Section 1512(c)(2) charge and therefore do not need to be included in an indictment.  Rather, the elements are (1) that the defendant obstructed, influenced, or impeded an official proceeding and (2) that the defendant acted corruptly.  See Sand, Modern Federal Jury Instructions—Criminal, Instruction 46-69. With respect to an official proceeding, Sand explains that a jury is to be instructed as follows:

> An official proceeding means a proceeding before a court, judge or federal agency. The proceeding may be civil or criminal. You are instructed that (e.g., a federal grand jury investigation) is an official proceeding.
>
> The law does not require that the federal proceeding be pending at the time of defendant's actions as long as the proceeding was foreseeable such that defendant knew that [her] actions were likely to affect the proceeding. In addition, the government does not have to prove that the defendant knew that the proceeding would be in (e.g., federal court).

Sand, Modern Federal Jury Instructions—Criminal, Instruction 46-70.  That instruction, which is the entirety of the recommended instruction regarding the "official proceeding," makes clear that the details that Lin seeks are not elements of the crime, and therefore need not be charged in the Superseding Indictment.

Lin next argues that she is unable to defend against the intent element because she does not know the alleged "nexus" between the obstructive act and the official proceeding.  Again, however, such nexus need not be pleaded in the Superseding Indictment.  The Supreme Court, in interpreting 18 U.S.C. § 1503, has held that the government must prove a "nexus" or "relationship in time, causation, or logic" between the obstructive act and the judicial proceedings being obstructed.  United States v. Aguilar, 515 U.S. 593, 599 (1995).  The Second Circuit has since applied this "nexus" requirement to Section 1512(c)(2).  See United States v. Reich, 479 F.3d 179, 186 (2d Cir. 2007).  However, as the Honorable Jed Rakoff has observed, "there is nothing in Aguilar (a post-conviction case) that requires that the requisite 'nexus' be pleaded on the face of the indictment, in derogation of the hoary doctrine that an indictment that does little more than track the language of the statute is sufficient."  United States v. Gabriel, 920 F. Supp. 498, 501 (S.D.N.Y. 1996);[7] see also United States v. Sampson, No. 13-CR-269 (DLI), 2016 WL 756565, at *16 (E.D.N.Y. Feb. 26, 2016) ("The nexus requirement limits the scope of § 1503's omnibus clause, but is not itself a separate element of § 1503 the government must prove.").

The cases on which Lin relies do not support her argument.  The indictments in Pugh and Binday (cited in Def. Mem. at 13) may have identified that the relevant grand jury

---

[7] In Gabriel, which preceded the Second Circuit's decision in Reich, Judge Rakoff declined to apply the "nexus" requirement of Section 1503 to Section 1512(b).  920 F. Supp. at 501-02.

investigations related to terrorism crimes and fraudulent procurement of life insurance policies, respectively, but in neither case was there any judicial finding that the indictments would have been defective without those details. In <u>Murphy</u>, the indictment (which Lin did not quote in her brief) charged that the defendants "did knowingly and intentionally use intimidation or physical force, or did threaten another person or did attempt to do so, with intent to influence the testimony of any person in an official proceeding; namely did threaten Richard Watson, a witness in an <u>official proceeding</u>, with serious bodily harm," in violation of Section 1512(a)(1). <u>United States v. Murphy</u>, 762 F.2d 1151, 1153 (1st Cir. 1985) (emphasis added). Notably, that indictment did not contain any additional specification regarding the "official proceeding," unlike the Superseding Indictment at issue here, which specified that the official proceeding was a federal grand jury investigation in the Eastern District of New York. At trial in <u>Murphy</u>, the government advanced two different theories of which official proceeding the defendants had tried to obstruct, <u>see id.</u> at 1154-55, leading the First Circuit to find that the defendant was not adequately placed on notice of the charge, <u>see id.</u> at 1155.

Here, in contrast, the Superseding Indictment contains a section titled, "The Defendant's Obstruction of Justice," and explains (as set forth in more detail above) that the government was investigating the activities of the Confederate and that Lin obstructed justice by advising the Confederate of the government's investigation, instructing the Confederate to flee the United States, and making arrangements for the Confederate to do so. Together with the information that the official proceeding obstructed was a federal grand jury investigation in the Eastern District of New York, the Superseding Indictment provides Lin with ample notice of her alleged obstructive conduct and the official proceeding that she obstructed. Indeed, Lin's brief specifies (<u>see</u> Def. Mem. at 2) that she was easily able to identify the Confederate based on the

information set forth in the Superseding Indictment. Thus, the Superseding Indictment more than meets the requirements of Rule 7(c).

Moreover, to the extent the court wishes to construe Lin's motion as a request for a bill of particulars (as with the Section 554 claim), the government has now explained that the trial proof will show that there was a pending grand jury investigation of the Confederate's activities. Such additional detail provides more than adequate notice for Lin to defend against the charges contained in the Superseding Indictment.

C.     Section 1512(c)(2) Is a Much Broader Statute than Lin Argues

Lin argues that Section 1512(c)(2) is appropriately read to apply only to conduct involving records, documents or tangible objects, and does not apply to witness tampering. However, her arguments do not support such a narrow reading of a broad statute.

The plain language of Section 1512(c)(2) makes clear that it is an unambiguously broad statute. Section 1512(c) punishes:

> (c) Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the objects integrity or availability for us in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.

18 U.S.C. § 1512(c). By its plain terms, Section 1512(c)(2) constitutes an omnibus clause that reaches all manner of obstructive conduct and not merely acts of tampering with physical evidence. Construing Section 1512(c)(2), the Honorable I. Leo Glasser rejected a defense argument – like the one Lin advances – that the statute "applies only to efforts to tamper with physical evidence." United States v. Kumar, No. 04-CR-846 (ILG), 2006 WL 6589865, at *1 (E.D.N.Y. Feb. 21, 2006). Specifically, Judge Glasser held that the "otherwise" language at the

beginning of Section 1512(c)(2) made clear that the provision covered different conduct than merely obstruction related to records or documents.  Id. at *2 ("In my view, the defendants have been given fair warning in language that is commonly understood, that the law will be offended in a different way (i.e. 'otherwise') if they obstruct, influence or impede the justice that is pursued in an official proceeding.").[8]

Numerous other courts agree that Section 1512(c)(2) is to be read broadly.  See United States v. Petruk, 781 F.3d 438, 446-47 (8th Cir. 2015) (holding, in response to argument that statute is limited to obstruction involving documents or physical evidence, that Section 1512(c)(2) is "not so limited" to "a record, document, or other object"); id. at 447 (citing cases affirming convictions under Section 1512(c)(2) based on obstruction that does not involve documents); United States v. Volpendesto, 746 F.3d 273, 286 (7th Cir. 2014) ("This 'expansive' subsection [referring to 1512(c)(2)] 'operates as a catch-all to cover 'otherwise' obstructive behavior' that might not constitute a more specific offense like document destruction, which is listed in (c)(1).") (citation omitted); United States v. Stevens, 771 F. Supp. 2d 556, 563 (D. Md. 2011) (Section 1512(c)(2) conviction can be premised on obstructive conduct "even if no document was concealed, altered or destroyed"); United States v. Ring, 628 F. Supp. 2d 195, 224-25 (D.D.C. 2009) (following Kumar and applying Section 1512(c)(2) to conduct involving false statements); id. at 225 (citing cases affirming or upholding convictions under Section 1512(c)(2) involving false statements to a grand jury).  But see United States v. Pugh, No. 15-CR-116 (NGG), 2015 WL 9450598, at *17 (E.D.N.Y. Dec. 21, 2015) (holding that Section

---

[8] On appeal, the Second Circuit declined to reach the question of the scope of Section 1512(c)(2) because the conduct for which the defendant was convicted clearly fell within Section 1503(a).  See United States v. Kumar, 617 F.3d 612, 619 (2d Cir. 2010) (noting that "[w]hile the government may be correct that § 1512(c)(2) applies to testimonial evidence, we need not reach this issue of first impression in this circuit").

1512(c) provides "two ways of committing a single crime"); <u>United States v. Singleton</u>, No. 06-CR-080, 2006 WL 1984467, at \*5-6 (S.D. Tex. July 14, 2006); <u>United States v. Hutcherson</u>, No. 05-CR-039, 2006 WL 270019, at \*2 (W.D. Va. Feb. 3, 2006).

Lin advocates a narrow reading of Section 1512(c)(2), arguing (a) that that the Court should apply the principle of <u>ejusdem generis</u> to construe Section 1512(c)(2) in light of the emphasis on records and documents in Section 1512(c)(1), analogizing to the Supreme Court's recent decision in <u>Yates v.United States</u>, 135 S. Ct. 1074 (2015), and (b) that the word "otherwise" should be read narrowly, analogizing to the language of the Armed Career Criminal Act invalidated in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). (Def. Mem. at 16-17). However, Section 1512(c)(2) is not like the statutes at issue in <u>Yates</u> and <u>Johnson</u>.

In <u>Yates</u>, the Supreme Court construed the definition of "tangible object" in Section 1519, which prohibits various types of destruction or alteration of "any record, document, or tangible object." 135 S. Ct. at 1078. Applying the principle of <u>ejusdem generis</u>, a method of statutory interpretation that "Where general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," the Supreme Court construed "tangible objects" in light of the reference to records and documents. <u>See</u> <u>Yates</u>, 135 S. Ct. at 1086-87 (alteration in original). However, the principle of <u>ejusdem generis</u> applies only to "a general or collective term following a list of specific items . . . (<u>e.g.</u>, 'fishing rods, nets, hooks, bobbers, sinkers, and other equipment')." <u>Aguilar</u>, 515 U.S. at 615 (Scalia, J., concurring in part and dissenting in part). Section 1512(c)(2) does not follow this pattern. It is an independent prohibition, not merely an additional term following a list set forth in Section 1512(c)(1). In fact, the enumerated objects in 1512(c)(1), namely, "record[s], document[s], or other object[s],"

are separated from the omnibus clause of 1512(c)(2) by a mental state requirement – "with the intent to impair the object's integrity or availability for use in an official proceeding" – that does not apply to 1512(c)(2). By contrast, 1512(c)(2) prohibits conduct that "otherwise obstructs" a proceeding with no mention of intent to impair the availability of an object, but instead requires only that the act be done "corruptly." If 1512(c)(2) were part of the list of tangible objects in 1512(c)(1), then 1512(c)(2) would contain the same <u>mens rea</u> requirement found in 1512(c)(1).

Similarly, the definition of "violent felony" at issue in <u>Johnson</u> was likewise a collective term following a list of specific items: a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." <u>Johnson</u>, 135 S. Ct. at 2555-56 (quoting 18 U.S.C. § 924(e)(2)(B)). The Supreme Court tried to interpret the final grouping of items in light of the other enumerated items before concluding that it was unable to do so, and invalidating the last clause as unconstitutionally vague. <u>See id.</u> at 2560. Here, again, Section 1512(c)(2) does not share the characteristics of the definition of violent felony in that it is not a list of terms followed by a generic or concluding term.

In a context more similar to that of Section 1512(c)(2), the Second Circuit construed the term "otherwise" in an omnibus clause to require a broad meaning. In <u>Collazos v. United States</u>, 368 F.3d 190 (2d Cir. 2004), the Second Circuit interpreted 28 U.S.C. § 2466(a)(1), which provides that a claimant to seized funds may be barred if the claimant had, in order to avoid criminal prosecution: (a) left the United States, (b) declined to enter or reenter the United States, or (c) "otherwise evade[d] the jurisdiction of the court in which a criminal case is pending against the person." <u>Id.</u> at 198. The Second Circuit rejected the argument that because the first two clauses referred to common law fugitives, the third clause must also be

limited to such fugitives and could not be applied to a person who had been indicted <u>in absentia</u>

and who had left the United States before the alleged criminal conduct:

> [T]he use of the introductory word "otherwise" indicates that the evasion referred to in subpart (C) reaches beyond these specific examples to myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court where a criminal case is pending against him.

<u>Id.</u> at 200.

Indeed, "otherwise" means "in a different manner; in another way, or in other

ways." <u>See</u> Black's Law Dictionary (6th ed. 1990); <u>see also</u> American Heritage College

Dictionary, at 967 (3d ed. 1997) ("In another way; differently; under other circumstances").

Thus, "otherwise," as used in 1512(c)(2) means "different from" the actions addressed in

1512(c)(1) and does not warrant 1512(c)(2) being construed as applying only to items "similar

to" those in 1512(c)(1), as Lin contends.

Finally, the approach that Lin urges has been rejected in the context of the

omnibus clause of another obstruction statute, Section 1503(a). That statute provides:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, [i] endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or [ii] injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or [iii] injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or [iv] corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice.

18 U.S.C. § 1503(a) (bracketed clause numbers added).

Contrary to the argument Lin advances, courts have construed the final omnibus clause of Section 1503 (clause iv) broadly even though the first three clauses specifically prohibit actions aimed only at jurors and court officers.  In Aguilar, the Supreme Court observed that the "'Omnibus Clause' [of Section 1503] serves as a catchall, prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice.  The latter clause, it can be seen, is far more general in scope than the earlier clauses of the statute."  515 U.S. at 598 (holding that the omnibus clause was limited only by the "nexus" requirement, not by reference to the prior clauses of Section 1503(a)); see also id. at 610 (Scalia, J., concurring in part and dissenting in part) (reading the omnibus clause broadly to proscribe "any effort or essay to accomplish the evil purpose that the section was enacted to prevent") (emphasis in original).  As the Second Circuit observed, the Supreme Court interpreted the omnibus clause "as a 'catchall' intended to prohibit all obstructive behavior."  United States v. Kumar, 617 F.3d 612, 620 (2d Cir. 2010) (citing Aguilar, 515 U.S. at 598).  The Kumar Court then explained: "Courts in this circuit have likewise given § 1503's omnibus clause a generally non-restrictive reading. . . . Other circuits' readings of § 1503's omnibus clause have been as broad as, or even broader than, the reading in this circuit."  Id. (citing cases) (internal citations omitted).

Lin also suggests that the context of the enactment of Section 1512(c)(2) supports a reading that it should be limited to obstruction related to documents because the provision was part the Sarbanes-Oxley Act of 2002 in response to revelations about Arthur Andersen's destruction of documents.  (Def. Mem. at 15).  The legislative history of Sarbanes-Oxley, however, makes clear that Congress was not concerned only with document destruction.  Instead, it intended Section 1512(c)(2) to apply as broadly as the plain language reads.  Judge Glasser,

reviewing this legislative history, concluded that Section 1512(c)(2) was plainly not limited to document destruction.  <u>Kumar</u>, 2006 WL 6589865, at *2-4.

      During the debate on what would become Sarbanes-Oxley, a Senate report described the need for broad new obstruction legislation.  <u>See</u>, <u>e.g.</u>, S. Rep. No. 107-146, 2002 WL 863249, at *6 (2002) (recognizing that obstruction laws had evolved as a "patchwork" of prohibitions riddled with "loopholes" and "burdensome proof requirements").  Indeed, the report noted that obstruction statutes, such as Section 1503, had been "narrowly interpreted by courts, including the Supreme Court in <u>United States v. Aguilar</u>."  <u>Id.</u> at *6-7.  Notably, <u>Aguilar</u> is not a document-destruction case, but involved the making of false statements to an intermediary who was a potential grand jury witness, which conduct the Supreme Court held lacked sufficient nexus under Section 1503.  By citing <u>Aguilar</u> as the first example of narrow interpretations of obstruction statutes, Congress showed its intent to fill in loopholes beyond simply document destruction.

      Congress then acted to close these loopholes with, among other provisions, Section 1512(c)(2).  That provision was proposed as an amendment titled, "Tampering with a Record or Otherwise Impeding an Official Proceeding."  <u>See</u> 148 Cong. Rec. S6524-02, 2002 WL 1474352, at *S6542 (daily ed. July 10, 2002); <u>see also</u> 148 Cong. Rec. H4683-01, 2002 WL 1558880, at *H4688 (daily ed. July 15, 2002) (Rep. Capito states that the "legislation strengthens laws that criminalize obstruction of justice, clos[ing] gaping loopholes").

      While the legislative history does refer to the document destruction at Arthur Andersen, statements during the debate make clear that the statute was not addressed only to document destruction.  <u>See</u>, <u>e.g.</u>, <u>id.</u> (Rep. Sensenbrenner refers to "the whole issue of document shredding <u>and other forms of obstruction of justice</u>") (emphasis added); 148 Cong. Rec. S6524-

02, 2002 WL 1474352, at *S6550 (daily ed. July 10, 2002) (Sen. Hatch observes that Section

1512(c) is intended to "prosecute document shredding <u>and other forms of obstruction of justice</u>")

(emphasis added).

Based on this history, Judge Glasser concluded that "[a]n objective reading of the

remarks of the Senators and Representatives compels the conclusion that what they plainly

sought to eliminate was <u>corporate criminality in all of its guises</u> which, in the final analysis, had

the effect of obstructing, influencing or, impeding justice being pursued in an 'official

proceeding.'" <u>Kumar</u>, 2006 WL 6589865, at *4 (emphasis added). Thus, the legislative history

does not support a narrow construction of Section 1512(c)(2).

Lin also argues that a narrow reading of Section 1512(c)(2) is appropriate so as

not to render the remaining provisions of Section 1512 redundant. But the legislative history set

forth above shows that Congress intended to fill in gaps with the omnibus provision of Section

1512(c)(2). Congress commonly legislates redundancies into the criminal code to eliminate

loopholes. "It is not unusual for a particular act to violate more than one criminal statute."

<u>Aguilar</u>, 515 U.S. at 616 (Scalia, J., concurring in part and dissenting in part); <u>see also</u> <u>United

States v. Kim</u>, 193 F.3d 567, 573 (2d Cir. 1999) (statutes "may overlap or enjoy a partial

redundancy, . . . and yet be fully capable of coexisting") (internal citations and quotation marks

omitted). Indeed, even before Sarbanes-Oxley, Congress created earlier redundancies in the

obstruction-of-justice context with Section 1503's omnibus clause. <u>See</u> <u>Aguilar</u>, 515 U.S. at 616

(Scalia, J., concurring in part and dissenting in part) ("The fact that there is now some overlap

between § 1503 and § 1512 is no more intolerable than the fact that there is some overlap between the omnibus clause of § 1503 and the other provisions of § 1503 itself.").[9]

Moreover, Lin's argument that a broad reading of Section 1512(c)(2) "would subsume many of the detailed obstruction statutes" (Def. Mem. at 17) is incorrect.  As noted above, courts have limited the broad reach of Section 1512(c)(2)'s omnibus provision through the "nexus" requirement that Aguilar adopted for Section 1503 and that Reich applied to Section 1512(c)(2).  The "nexus" requirement does not apply to all other detailed obstruction statutes. See, e.g., United States v. Gray, 642 F.3d 371, 377-78 (2d Cir. 2011) (declining to extend "nexus" requirement to Section 1519).

Finally, Lin argues that the rule of lenity favors resolving any ambiguities in her favor.  (Def. Mem. at 17).  However, a statute is not ambiguous for purposes of lenity merely because "it [i]s possible to articulate a construction more narrow than that urged by the Government."  Moskal v. United States, 498 U.S. 103, 108 (1990) (emphasis in original).  As set forth above, the plain language of the statute is unambiguous, and nothing in the legislative history calls that plain meaning into question.  As a result, Lin cannot successfully invoke the rule of lenity.  See United States v. DiCristina, 726 F.3d 92, 104 (2d Cir. 2013) (rule of lenity is a last resort and applies only when grevious ambiguity persists after all other rules of construction have been applied); United States v. Kavoukian, 315 F.3d 139, 144 (2d Cir. 2002) (rule of lenity applies only where a statute is so grievously ambiguous that a court can only guess what Congress intended).

---

[9] The Second Circuit has eliminated one such redundancy, holding that, with the enactment of Section 1512 in 1982, Section 1503 can no longer be used to prosecute witness tampering, which now exclusively falls within Section 1512.  See United States v. Masterpol, 940 F.2d 760, 762-63 (2d Cir. 1991).  Notably, the Second Circuit holds a minority view, as all eight other Circuits that have considered this issue have disagreed with Masterpol.

<u>Lin's Charged Conduct, If Proven at Trial, Constitutes Obstruction of Justice</u>

Finally, Lin argues that even if Section 1512(c)(2) applies to witness tampering, Lin's conduct in advising the Confederate that the government was investigating him, instructing him to flee, and assisting him to leave the United States does not constitute obstruction. In support of that argument, Lin contends that it was not illegal for her to notify another person of a grand jury proceeding and that it was not illegal for a target of a grand jury investigation to leave the jurisdiction during the pendency of a criminal investigation. Therefore, she concludes, she cannot be liable for telling the Confederate of the government's interest in him and assisting him to leave the jurisdiction. (Def. Mem. at 18-19). Lin's argument is flawed.

First, in arguing that it was not illegal for her to tell the Confederate about the government's interest in him, Lin analogizes to a grand jury witness not being precluded from disclosing what took place in the grand jury. But Lin ignores that the Superseding Indictment charges that her <u>intent</u> in informing the Confederate of the government's interest was to corruptly obstruct, influence or impede the grand jury proceeding. While a grand jury witness may not be bound by grand jury secrecy rules, there is a vast difference between a grand jury witness merely disclosing what has occurred in the grand jury (which is not a crime) and a grand jury witness doing so for the purpose of obstructing that investigation (which is a crime). Here, the government has charged that Lin's actions were intended to obstruct a grand jury investigation. Specifically, the Superseding Indictment charges that Lin acted "knowingly, intentionally and corruptly." (Sup. Ind. ¶¶ 25, 27).

Second, in arguing that a defendant's flight does not constitute obstruction, Lin misreads the case law. She cites <u>United States v. Bando</u>, 244 F.2d 833 (2d Cir. 1957), for the proposition that flight cannot be a crime without a chargeable criminal offense and not merely an investigation. On the contrary, <u>Bando</u> held that a charge or indictment is not required at the time

of flight for the flight to constitute a crime.  See Bando, 244 F.2d at 843 (statute does not require that prosecution be pending); see also United States v. McCarthy, 249 F. Supp. 199, 202 (E.D.N.Y. 1966) (explaining Bando's holding).

Finally, Lin does not address situations in which a defendant advises another individual of a pending investigation and/or assists the person to flee a jurisdiction.  Multiple courts have held that such actions constitute an obstructive act under Section 1512.  See, e.g., Volpendesto, 746 F.3d at 286-87 (upholding conviction under Section 1512(k) for conspiring to violate Section 1512(c)(2) where one defendant found out from law enforcement friends that another individual was under investigation and tipped off that individual to the government's investigation); United States v. Ahrensfield, 698 F.3d 1310, 1325 (10th Cir. 2012) (upholding defendant's obstruction of justice conviction under Section 1512(c)(2) for informing a target of a law enforcement investigation that he and his automobile shop were being investigated for narcotics trafficking, and stating that "[a] rational juror could . . . conclude the natural and probable effect of disclosing the existence of the ongoing undercover investigation of Car Shop to [the target of the investigation] was to impede a potential grand jury investigation."); United States v. Newton, 452 Fed. Appx. 288, 290-91 (4th Cir. 2011) (per curiam) (unpublished) (affirming conviction under Section 1512(c)(2) for defendant who had communicated the existence of arrest and search warrants to her sister, a coconspirator); United States v. Matthews, 505 F.3d 698, 707 (7th Cir. 2007) (helping friend escape prosecution demonstrates improper purpose, in connection with conviction under Section 1512(c)(1)); cf. United States v. Batista, No. 06-CR-265 (DLI), 2010 WL 1193314, at *9-10 (E.D.N.Y. Mar. 24, 2010) (upholding the obstruction of justice conviction under Section 1512(c)(2) of an NYPD detective who, among other acts, attempted to dissuade others from cooperating with the government's investigation).

Accordingly, Lin's conduct in assisting the Confederate to flee the jurisdiction, with the intent to obstruct a grand jury investigation, falls within the conduct proscribed by Section 1512(c)(2).

CONCLUSION

For the reasons set forth above, the defendant's pre-trial motion to dismiss Counts One, Three and Four of the Superseding Indictment should be denied.

Dated:  Brooklyn, New York
        April 7, 2017

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:    /s/ Douglas M. Pravda
       Alexander A. Solomon
       Douglas M. Pravda
       Ian C. Richardson
       Assistant U.S. Attorneys
       (718) 254-7000