UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

                        15 CR 601 (S-1) (DLI)

-against-


YING LIN
--------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF YING LIN'S MOTION TO
DISMISS COUNTS ONE, THREE AND FOUR OF THE S-1 INDICTMENT**

Deborah Colson
Colson Law PLLC
80 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 257-6455

# Table of Contents

**PRELIMINARY STATEMENT**……………………………………………………..… 1

**THE SMUGGLING CHARGE FAILS TO STATE AN OFFENSE**…..………………..… 1

    A.  Count One Fails to Charge a Violation of § 1546.203(a)……………….….….…… 2

    B.  Count One Fails to Charge a Violation of § 554…………………...………….……. 5

    C.  No Plausible Reading of § 1546.203(a) Supports a Violation of the Regulation Based on the Allegations …………………………………………………...…….…………. 8

**THE SMUGGLING CHARGE IS BARRED BY DUE PROCESS**…………………...… 10

**THE OBSTRUCTION CHARGES FAIL TO STATE AN OFFENSE**……………….… 11

    A.  Counts Three and Four Fail to Allege an Official Proceeding……………………..... 11

    B.  § 1512(c)(2) Does Not Reach Witness Tampering………………………………….... 13

    C.  The Cases Cited by the Government Do Not Support an Obstruction of Justice Charge…………………………………………………………………………….... 16

**CONCLUSION**………………………………………………………………………... 17

# Table of Authorities

## Cases

*Collazos v. United States,* 368 F.3d 190 (2d Cir. 2004) ................................................................ 15

*Franco-Casasola v. Holder,* 773 F.3d 33 (5th Cir. 2014) ................................................... 2, 3, 6

*Russell v. United States,* 368 U.S. 749 (1962) ............................................................................. 5

*United States v. Ruffin,* 613 F.2d 408 (2d Cir. 1979) ................................................................... 7

*United States v. Aguilar,* 515 U.S. 593 (1995) .................................................................... 14, 16

*United States v. Ahrensfield,* 698 F.3d 1310 (10th Cir. 2012) ................................................... 16

*United States v. Bando,* 244 F.3d 833 (2d Cir. 1957) ................................................................ 17

*United States v. Batista,* 06-CR-265, 2010 WL 1193314 (E.D.N.Y. Mar. 24, 2010) ................. 17

*United States v. Cardenas,* 626 Fed. Appx. 441 (5th Cir. 2015) .................................................. 2

*United States v. Chi Tong Kuok,* 671 F.3d 931 (9th Cir. 2012) ................................................... 7

*United States v. Ezeta,* 752 F.3d 1182 (9th Cir. 2014) ................................................................ 8

*United States v. Galimah*, 758 F.3d 928 (8th Cir. 2014) ............................................................. 6

*United States v. Garcia-Paulin*, 627 F.3d 127 (5th Cir. 2010) ................................................... 8

*United States v. Hernandez,* 730 F.2d 895 (2d Cir. 1984) ......................................................... 15

*United States v. Ibrahim,* 11-CR-811, 2013 WL 5434156 (N.D. Ca. Sept. 27, 2013) ......... 5, 7, 10

*United States v. Johnson,* 135 S. Ct. 2551 (2015) ..................................................................... 14

*United States v. Joseph,* 530 Fed. Appx. 911 (11th Cir. 2013) .................................................... 7

*United States v. Kline,* 922 F.2d 610 (10th Cir. 1990) ................................................................. 8

*United States v. Kumar,* 04-CR-846 (ILG), 2006 WL 6589865 (E.D.N.Y. Feb. 21, 2006) ......... 13

*United States v. Kumar,* 617 F.3d 612 (2d Cir. 2010) ............................................................... 13

*United States v. Lanier,* 520 U.S. 259 (1997) ........................................................................... 11

*United States v. Lugo-Lopez,* 833 F.3d 453 (5th Cir. 2015) ........................................................ 6

*United States v. Martin,* 747 F.2d 1404 (11th Cir. 1984) ............................................................ 8

*United States v. Martinez,* 800 F.3d 1293 (11th Cir. 2015) ......................................................... 4

*United States v. Martinez-Santos,* 184 F.3d 196 (2d Cir. 1999) ................................................. 9

*United States v. Masterpol*, 940 F.2d 760 (2d Cir. 1991) .......................................................... 15

*United States v. Matthews,* 505 F.3d 698 (7th Cir. 2007) .......................................................... 16

*United States v. Mohammed,* 13-CR-250, 2014 WL 3908614 (D. Minn. Aug. 11, 2014) ............. 7

*United States v. Murphy,* 762 F.2d 1151 (1st Cir. 1985) ...................................................... 11, 12

*United States v. Newton,* 452 Fed. Appx. 288 (4th Cir. Oct. 25, 2011) ..................................... 16

*United States v. Pirro,* 212 F.3d 86 (2d Cir. 2000) ..................................................................... 3

*United States v. Pugh,* 15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ......... 13

*United States v. Richter,* 796 F.3d 1173 (10th Cir. 2015) ............................................... 6, 10, 11

*United States v. Teh,* 535 F.3d 511 (6th Cir. 2008) ..................................................................... 3

*United States v. Thompson,* 141 F. Supp. 3d 188 (E.D.N.Y. 2015) .................................... 3, 4, 12

*United States v. Volpendesto,* 746 F.3d 273 (7th Cir. 2014) ..................................................... 16

*United States v. White,* 87 Fed. Appx. 566 (6th Cir. Feb. 10, 2004) ........................................... 3

*Yates v. United States,* 135 S.Ct. 1074 (2015) .......................................................................... 16

**Statutes, Rules, and Other Authorities**

18 U.S.C. § 1503 .................................................................................................... 14, 15

18 U.S.C. § 1512 ......................................................................................................... 15

18 U.S.C. § 1512(c) .................................................................................................... 14

18 U.S.C. § 1512(c)(1) .......................................................................................... 13, 14

18 U.S.C. § 1512(c)(2) ........................................................................................ passim

18 U.S.C. § 1519 ......................................................................................................... 16

18 U.S.C. § 2(a)&(b) ..................................................................................................... 8

18 U.S.C. § 554 .................................................................................................... passim

18 U.S.C. § 924(e)(2)(B) ............................................................................................ 14

42 U.S.C. § 44906 ......................................................................................................... 1

49 C.F.R. § 1546.103(b)(4) ........................................................................................... 1

49 C.F.R. § 1546.202 ..................................................................................................... 1

49 C.F.R. § 1546.203(a) ...................................................................................... passim

49 U.S.C. § 44901(c) .................................................................................................... 9

Fed.R.Crim. P. 12(b)(3) ................................................................................................ 1

Fed.R.Crim. P. 7(c)(1) ................................................................................. 1, 3, 6, 12

Victim and Witness Protection Act of 1982, Pub. L. No. 970921, 96 Stat. 1248 (1982)............. 15

# I.

## PRELIMINARY STATEMENT

Ying Lin respectfully submits this memorandum in reply to the government's opposition to her motion to dismiss Counts One, Three, and Four of the S-1 indictment. The government asserts that Ms. Lin's motion rests more on the sufficiency of the evidence than the validity of the indictment. The motion does not purport to be a factual challenge, nor is it. Rather, assuming the facts alleged, Ms. Lin raises important questions of law pursuant to Federal Rules of Criminal Procedure 7(c)(1) and 12(b)(3) and the Due Process Clause of the U.S. Constitution. Nothing in the government's brief rescues the indictment's essential failure to state an offense within the meaning of the smuggling and obstruction statutes, 18 U.S.C. § 554 and 18 U.S.C. § 1512(c)(2). Indeed, it is the government that tries to salvage its indictment by invoking facts it failed to charge.

# II.

## THE SMUGGLING CHARGE FAILS TO STATE AN OFFENSE

The government makes no effort to defend the most reasonable reading of Count One as having charged Ms. Lin with the exportation of unaccompanied baggage contrary to 42 U.S.C. § 44906 or one of the two regulations quoted, 49 C.F.R. § 1546.103(b)(4) and 49 C.F.R. § 1546.202. *See* Ind. ¶ 3 (citing § 44906 and quoting regulations whose language matches these two). Instead, the government now contends that Count One actually concerns a violation of 49 C.F.R. § 1546.203(a). Recognizing that Ms. Lin, herself, could not have violated § 1546.203(a), the government stakes its newfound claim on an aiding and abetting theory with Ms. Lin's former employer, Air China, acting as the principal.

The government's reliance on § 1546.203(a) to support a § 554 violation fails for three reasons. First, the government neglected to present a violation of § 1546.203(a) to the grand jury. Second, the plain language of § 554 concerns export content, whereas § 1546.203(a) regulates transportation security procedures. Absent any allegation that the underlying export was illegal, the indictment fails to allege a violation of § 554. Third, the government misreads § 1546.203(a) to proscribe all violations of an air carrier's security program, whereas the plain language of the regulation prohibits only those violations designed to prevent or deter the carriage of unauthorized explosives or incendiaries.

A. Count One Fails to Charge a Violation of § 1546.203(a)

As Mr. Lin showed in her opening brief, an indictment alleging a violation of § 554 "requires stating the other laws the defendant acted contrary to," including their elements. *Franco-Casasola v. Holder,* 773 F.3d 33, 42 (5th Cir. 2014); *see id.* 36, 39-40. Effectively conceding that Ms. Lin could not have violated the law or regulations referenced in paragraph three, *see* Ind. ¶ 3, the government seeks to rescue Count One by invoking a new regulation, § 1546.203(a). But it does not cite, quote, or reference § 1546.203(a) anywhere in the S-1 indictment. For this reason alone, Count One fails to state an offense and must be dismissed.

Acknowledging its failure to cite § 1546.203(a), the government asks this Court to ignore as dicta the Fifth Circuit's recent decision in *Franco-Casasola*. The government fails to explain why it would be dicta and offers no contrary authority. It also claims that the Fifth Circuit failed to follow *Franco-Casasola* in its unpublished, per curiam decision in *United States v. Cardenas,* 626 Fed. Appx. 441, 442-43 (5th Cir. 2015). But *Cardenas* neither cited *Franco-Casasola* nor involved a challenge to an indictment.

Moreover, the mandate of *Franco-Casasola* is hardly unique. In fact, whenever "a statute makes it a crime to engage in certain conduct 'contrary to law,'… the pleading must show what other law was violated, either by citation to the other statute or by sufficient factual allegations." *United States v. Thompson,* 141 F. Supp. 3d 188, 195 (E.D.N.Y. 2015) (citation omitted). This rule as recited in *Thompson* is longstanding. *See, e.g., United States v. Pirro,* 212 F.3d 86, 93 (2d Cir. 2000) ("where an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense") (citation omitted); *United States v. Teh,* 535 F.3d 511, 517 (6th Cir. 2008) ("Because the indictment did not state which law Teh's actions were 'contrary to,' it failed to charge an offense"); *United States v. White,* 87 Fed. Appx. 566, 572 (6th Cir. Feb. 10, 2004) (indictment charging importation of firearm magazines "contrary to law" must identify specific law). And it merely implements the requirement of Rule 7 that an indictment "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." Fed.R.Crim. P. 7(c)(1).

The government argues that Ms. Lin could have identified § 1546.203(a) on her own because only a handful of TSA implementing regulations govern security procedures for checked baggage, and it was obvious from the various quotations that Part 1546 was applicable. It further asserts that Ms. Lin's reference to § 1546.203(a) evidences her understanding of the provision's relevance. All of that is beside the point under the case law cited above. If anything, the purported obviousness of this regulation's relevance calls into question the indictment's failure to identify it. In any event, Part 1546, entitled "Foreign Air Carrier Security," has five subparts and 411 individual provisions. The indictment's partial, uncited quotations from two of the 411

provisions hardly notified Ms. Lin that prosecutors actually had a *differen*t, unidentified provision in mind.

Finally, the government asserts that Ms. Lin could have moved for a bill of particulars and that its explanation of the regulatory scheme set forth in its brief "sufficiently answers any such request." (Gov. Br. 13). The government misunderstands the grand jury function. A grand jury indictment not only provides notice of the nature and cause of an accusation; it also "preserves the protection given by the Fifth Amendment from being 'held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.'" *Thompson,* 141 F. Supp.3d at 193 (citation omitted). *See also United States v. Martinez,* 800 F.3d 1293, 1295 (11th Cir. 2015) (per curiam) (requirement that indictment set forth elements "ensure[s] a grand jury found probable cause to support all the necessary elements of the crime, as required by the Fifth Amendment"). That is why the failure of an indictment to allege every element of the crime charged is a fatal defect.

Judge Glasser's decision in *Thompson* is on point. Thompson was charged in a twelve-count criminal indictment with various sex offenses, including interstate prostitution and illicit transportation of a minor with the intent to engage in "sexual activity for which a person could be charged." *Id.* at 192. Judge Glasser found the indictment partially insufficient for failure to allege a particular sexual activity. Although the government suggested during oral argument that it might introduce evidence of statutory rape, the indictment did not inform Thompson of that conduct. *Id.* at 196-97. Thus, it was unclear whether evidence of the statutory rape had been presented to the grand jury. Judge Glasser further concluded that a bill of particulars would not solve the grand jury presentment problem. *Id.* at 197.

B. <u>Counts Fails to Charge a Violation of § 554</u>

Assuming, for the sake of argument, that the government may rewrite Count One to allege a violation of § 1546.203(a), the § 554 charge still fails to state an offense for two reasons.

First, the government's reliance on § 1546.203(a) reflects a fundamental misunderstanding of § 554. In criminalizing the knowing exportation of "any merchandise, article, or object" contrary to law or regulation, § 554 contemplates that the export, itself, will be illegal or subject to regulatory restrictions. The illegality of the export is thus "the very core of criminality" under § 554 and "central to any prosecution under the statute." *Russell v. United States,* 368 U.S. 749, 759 (1962) (dismissing indictment alleging defendant refused to answer question pertinent to the "subject" of a congressional inquiry because indictment failed to identify the "subject"). Such illegality is absent here. The government does not allege that the baggage at issue contained illegal or regulated materials or, indeed, that it contained anything in particular. Rather, the government advocates an expansive reading of § 554 to include violations of procedural regulations, such as § 1546.203(a), having nothing to do with export content. *See* Gov. Br. at 20 ("Section 554 does not prohibit only the export of items that are already prohibited by other statutes"). But it does not cite a single case in support of this interpretation. Rather, consistent with Mr. Lin's reading, every known § 554 case concerns the exportation of contraband or heavily regulated items. (Lin Mot. 9-10).

Although the underlying laws need not be specific to exportation, the statutes and regulations at issue in these cases always target the risks presented by the items themselves. This is true even in *Ibrahim* and *Richter,* the two cases the government emphasizes in its brief. Both involved heavily regulated materials. *See United States v. Ibrahim,* 11-CR-811, 2013 WL 5434156, *10 (N.D. Ca. Sept. 27, 2013) (underlying law governed "the transportation of

hazardous substances" in interstate or foreign commerce); *United States v. Richter,* 796 F.3d 1173, 1180 (10th Cir. 2015) (indictment charged exporting hazardous waste in violation of the Resource Conservation and Recovery Act and smuggling hazardous waste in violation of § 554 and the same RCRA provision).

Section 1546.203(a) is not such a regulation. The provision requires foreign air carriers to "use the procedures, facilities, and equipment described in its security program to prevent or deter the carriage of any unauthorized explosive or incendiary onboard aircraft in checked baggage." 49 C.F.R. § 1546.203(a). The checked baggage, itself, is not an object of concern in the same way that firearms, drugs, explosives, or incendiaries are, even if the baggage might contain these things. Rather, § 1546.203(a) governs the *process* by which checked baggage is accepted for transport. That is not what § 554 proscribes. As a result, § 1546.203(a) cannot function as a predicate for a § 554 violation.

Second, the indictment fails to allege a principal violation of § 554, thus omitting "essential facts constituting the crime charged." Fed.R.Crim. P. 7(c)(1). Absent a principal violation, the aiding and abetting prosecution cannot survive.

Section 554 requires that someone knowingly export or attempt to export some merchandise, article or object contrary to law. The exporter is the individual who owns the item or offers it for shipment. *See, e.g., United States v. Lugo-Lopez,* 833 F.3d 453, 458 (5th Cir. 2015) (defendant oversaw smuggling operation involving purchases of firearms and ammunition and their transport into Mexico); *Richter,* 796 F.3d at 1173 (defendant purchased export company's hazardous electronic waste); *Franco-Casasola,* 773 F.3d at 35 (defendant purchased semi-automatic pistols with intent to export them, in connection with weapons trafficking operation); *United States v. Galimah*, 758 F.3d 928, 929 (8th Cir. 2014) (defendant purchased

and exported handguns without declaring them); *United States v. Joseph,* 530 Fed. Appx. 911 (11th Cir. 2013) (defendant purchased firearms with intent to export them to unlicensed persons); *United States v. Chi Tong Kuok,* 671 F.3d 931 (9th Cir. 2012) (defendant attempted to purchase military equipment for export without a license); *United States v. Mohammed,* 13-CR-250, 2014 WL 3908614 (D. Minn. Aug. 11, 2014) (defendant made straw purchase of firearms with intent to export them); *Ibrahim,* 2013 WL 5434156 (defendant exported hazardous chemicals without proper shipping papers and labels).

According to the government, the baggage in this case was presented for export by PRC agents. (Ind. ¶¶ 7-8). But, having no affiliation with a foreign air carrier, they could not have violated § 1546.203(a). And, as the government effectively concedes, neither could Ms. Lin. (Gov. Br. 13-14). Thus, the government has no choice but to claim she aided and abetted a violation by Air China. However, this theory is also flawed. Air China was not the exporter; it was merely the shipping agent. The government has not cited any cases in which a shipping agent has been found to violate § 554. Nor does the government allege a single fact indicating that Air China took any affirmative action to facilitate an illegal exportation. In its brief, the government states that Air China "intentionally violated" its own security program and TSA regulations, *see* Gov. Br. 6, 9-10, but those assertions are conspicuously devoid of citations in the S-1 indictment.

The government is not required to charge the principal in order to prosecute a defendant for aiding and abetting under Section 2. *See United States v. Ruffin,* 613 F.2d 408, 412 (2d Cir. 1979)*.* But an aiding and abetting charge cannot stand unless *someone* has committed the crime. *See id.* ("It is hornbook law that a defendant charged with aiding and abetting the commission of a crime by another cannot be convicted in the absence of proof that the crime was actually

committed."). So where, as here, the defendant has no legal capacity to commit the offense on her own, the indictment needs to allege the principal's violation. *See United States v. Garcia-Paulin*, 627 F.3d 127, 133 (5th Cir. 2010) (reversing guilty plea where defendant could not have committed offense and indictment included no facts "to establish the existence of a principal whom [defendant] aided or abetted"). *See also United States v. Kline,* 922 F.2d 610, 612-13 (10th Cir. 1990) (reversing conviction in light of jury instructions on 18 U.S.C. § 2(a)&(b) where, as to latter, indictment contained "[n]o allegation" suggesting causation by another); *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir. 1984) (reversing conviction under indictment that was "silent on what that principal offense is alleged to be and on the existence of a principal actor," and explaining that one must "aid or abet or procure someone else to commit a substantive offense. One cannot aid or abet himself") (citation omitted).[1] The government fails to allege a principal violation here. Accordingly, it also fails to state an offense against Ms. Lin. For this reason as well, Count One must be dismissed.

C.   No Plausible Reading of § 1546.203(a) Supports a Violation of the Regulation Based on the Allegations

Even had the government presented a § 1546.203(a) violation to the grand jury, Count One would still fail because the government ignores a critical provision of the regulation. As stated above, § 1546.203(a) requires foreign air carriers to "use the procedures, facilities and equipment described in its security program *to prevent or deter the carriage of any unauthorized explosive or incendiary onboard aircraft in checked bag.*" (emphasis added). The government reads § 1546.203(a) as if the italicized text is absent, such that the section ends at "security program." This reading enables the government to claim that § 1546.203(a) prohibits *all*

---

[1] Citing *United States v. Ezeta*, 752 F.3d 1182, 1186 n.3 (9th Cir. 2014), the government asserts that the existence of a knowing principal is immaterial to liability under Section 2. Nonetheless, there still must be *someone* who committed the prohibited act. *See Kline*, 922 F.2d at 612.

violations of security program procedures, whether or not they affect the regulatory objective of preventing and deterring the carriage of explosives or incendiaries. *See* Gov. Br. at 16-17 (arguing that air carrier "must" use security procedures, and that, whenever "those procedures are not followed," the regulation is violated). But the interpretation is at odds with the plain language of § 1546.203(a), and the government cites no authority for it. Moreover, it renders the explosives and incendiaries provision superfluous, thus violating a basic canon of statutory construction to "avoid reading statutory language in a way that would 'in any way make some of its provisions surplusage.'" *United States v. Martinez-Santos,* 184 F.3d 196, 204 (2d Cir. 1999) (citation omitted). It also criminalizes any regulatory misstep concerning checked baggage without any indication that Congress or TSA intended such a consequence.

How to read the "explosive or incendiary" provision is another question. It may require the air carrier to use its security procedures *with the result of* preventing or deterring the carriage of explosives or incendiaries. Or it may simply require use of those procedures *designed to* prevent or deter carriage of those items. It is not necessary for this Court to determine the precise meaning of the provision in order to reject the government's interpretation. It is enough that the language must mean *something*, such that every violation of a security program does not *ipso facto* violate the regulation. Here, as Ms. Lin noted in her opening brief, there is no allegation that the baggage at issue contained explosives, incendiaries, or anything unsafe. Nor does the government allege that anyone at Air China, including Ms. Lin, circumvented TSA security screening or introduced a new security risk *after* screening was complete. *See* 49 U.S.C. § 44901(c) (requiring the TSA to establish a system to "screen all checked baggage at all airports in the United States"). Thus, there is no allegation that acceptance of the baggage created or

could have created a security risk. Accordingly, the indictment fails to allege a violation of § 1546.203(a), and Count One must be dismissed.

**III.**

**THE SMUGGLING CHARGE IS BARRED BY DUE PROCESS**

The government makes no effort to deny the novelty of its § 554 charge. Instead, it cites just two cases, *Ibrahim* and *Richter*, neither of which can save Count One.

Initially, as noted above, both *Ibrahim* and *Richter* concerned the exportation of hazardous materials subject to strict regulation. Nothing of the sort is alleged here. Moreover, in neither case was the government's legal interpretation novel. *Ibrahim* did not even involve a due process argument but rather a question of statutory construction. The issue was whether a statute generally regulating the shipment of hazardous chemicals also applies to foreign exports. The defendant argued that § 554 requires violation of a law or regulation specific to imports or exports. The court rejected that argument and noted that "other courts had permitted prosecutions under § 554 where, as here, the law or regulation that had been violated applied to both interstate and foreign commerce." *Ibrahim,* 2013 WL 5434156, at *10.

The defendants in *Richter* did raise a due process claim, but the Tenth Circuit held that the regulation alone provided them with fair notice that their exports contained hazardous waste. *Richter,* 796 F.3d at 1189 ("the application of traditional tools of interpretation dictates an interpretation of the regulation consistent with the Waste Instruction. That alone is enough to demonstrate" fair notice). The Court also noted that the definition of hazardous waste applied at trial had been posted by the Colorado Department of Public Health and Environment on the agency's website. *See id.* at 1184. It explained that, because the defendants belonged to a

specialized group of waste recyclers, it was fair to charge them with knowledge of the agency definition. *Id.* at 1190.

Analogizing to *Richter,* the government argues that Ms. Lin's employment for Air China places her in a specialized group of people who may be fairly charged with knowledge of the TSA regulatory regime. (Gov. Br. 20). Ms. Lin's alleged knowledge of the TSA regime is, of course, a question of fact that cannot be determined prior to trial. Moreover, it is irrelevant to this motion. The critical issue is whether Ms. Lin had notice that violation of an air carrier security procedure, unrelated to export content, could be fairly understood to make the checking of baggage an illegal exportation under § 554. She did not. The plain language of § 554, the prior cases, and the Sentencing Guidelines all indicate that § 554 criminalizes the exportation of illegal or heavily regulated materials. Unaccompanied baggage containing nothing in particular does not fit within this definition. The government has "applie[d] a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier,* 520 U.S. 259, 266 (1997) (citations omitted). Accordingly, Ms. Lin was not on fair notice that her conduct was criminal, and Count One must be dismissed.

## IV.

## THE OBSTRUCTION CHARGES FAIL TO STATE AN OFFENSE

A. <u>Counts Three and Four Fail to Allege an Official Proceeding</u>

The government erroneously claims it had no obligation to allege the target or subject matter of the "official proceeding" because they are not elements of the offense. (Gov. Br. 23-24). As the First Circuit explained in *United States v. Murphy,* 762 F.2d 1151 (1st Cir. 1985), however, "some indication of the identity of the proceeding" is "[c]rucial to the preparation of

any defense to a charge under the statute." *Id.* at 1154. Counts Three and Four set forth a boilerplate allegation of the "official proceeding" as "a Federal Grand Jury Investigation in the Eastern District of New York." (Ind. ¶¶ 25, 27). This hardly includes "the essential facts constituting the offense charged." Fed.R.Crim. P. 7(c)(1). Accordingly, Counts Three and Four must be dismissed.

The government attempts to distinguish the *Murphy* indictment by asserting it alleged only an "official proceeding" while the instant indictment more specifically alleges "a Federal Grand Jury Investigation in the Eastern District of New York." (Gov. Br. 25). In fact, the allegations in *Murphy* were more specific than those here. The *Murphy* indictment charged the defendant with threatening a witness to the proceeding with serious bodily harm and named the witness as Richard Watson. *See Murphy,* 762 F.3d at 1153. Here, no witness, target, or subject matter is named. Thus, the same danger discussed in *Murphy* exists here: the government could identify one grand jury investigation at the outset of its case and another one at the end.

The government asks this Court to construe Ms. Lin's motion as a request for a bill of particulars and states that the additional details provided in its brief constitute adequate notice of the official proceeding. (Gov. Br. 26). Again, the government ignores the grand jury function. *See Thompson,* 141 F.Supp.3d at 193 (grand jury "preserves the protection given by the Fifth Amendment from being 'held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury'"). A bill of particulars does not answer whether evidence of a pending grand jury investigation against Mr. Qin was presented to the grand jury here.

Because the government fails to allege the official proceeding, Counts Three and Four must be dismissed.

B. § 1512(c)(2) Does Not Reach Witness Tampering

As Ms. Lin noted in her opening brief, the proper reach of § 1512(c)(2) is an open question in the Second Circuit. *See United States v. Kumar,* 617 F.3d 612, 619-20 (2d Cir. 2010) (avoiding question whether § 1512(c)(2) applies to obstruction by false statements). Federal judges in the Eastern District of New York have differing views. In *United States v. Kumar,* Judge Glasser held that the word "otherwise" in § 1512(c)(2) suggests the provision targets different forms of obstruction than those identified in § 1512(c)(1). *See United States v. Kumar,* 04-CR-846 (ILG), 2006 WL 6589865, *2 (E.D.N.Y. Feb. 21, 2006) ("In my view, the defendants have been given fair warning in language that is commonly understood, that the law will be offended in a different way (i.e. 'otherwise') if they obstruct, influence or impede the justice that is pursued in an official proceeding"). In a more recent case, however, Judge Garaufis held that the structure of the statute "suggests Section 1512(c)(2) articulates a single offense." *United States v. Pugh,* 15-CR-116 (NGG), 2015 WL 9450598, *18 (E.D.N.Y. Dec. 21, 2015). According to Judge Garaufis, "Section 1512(c)(1) is intended to enumerate conduct that violates the statute[.] Section 1512(c)(2) does not state a separate offense, but instead, is meant to criminalize difficult to enumerate conduct that would otherwise slip past 1512(c)(1)'s specific proscription." *Id.*

Relying on Judge Glasser's interpretation in *Kumar,* the government assumes that § 1512(c)(2) is an independent prohibition. (Gov. Br. 28). Because, however, the phrase "[o]therwise obstructs, influences, or impedes" is unclear on its own, the plain language of § 1512(c)(2) demands that it be read in conjunction with § 1512(c)(1). For this reason, Judge Garaufis interpreted the disjunctive "or" in § 1512(c)(1) and the word "otherwise" in § 1512(c)(2) to signal that the subsections "merely provid[e] two ways of committing a single crime." *Pugh,* 2015 WL 9450598, at *17; s*ee id.* at *18 (subsection (2) "enumerate[s] a means of

the same type of obstruction defined in subsection (1)"). In support of his ruling, Judge Garaufis further observed that the two provisions are linked by the *mens rea* element—"corruptly"—which precedes them both. *Id.* at *18.

Contrary to the government's assertion, the Supreme Court's decision in *United States v. Johnson,* 135 S.Ct. 2551 (2015), supports this same reading of § 1512(c)(2). *Johnson* concerned the scope of the Armed Career Criminal Act ("ACCA"). Like § 1512(c), the ACCA included a list of specific offenses—"burglary, arson, or extortion, involves use of explosives"—followed by a more general provision beginning with the words "or otherwise"—"or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Johnson,* 135 S.Ct. at 2555-56 (quoting 18 U.S.C. § 924(e)(2)(B)). The Court observed that, "[b]y asking whether the crime '*otherwise* involves conduct that presents a serious potential risk,' moreover, the residual clause forces courts to interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives." *Id.* at 2558 (emphasis in original). Similarly, here, by asking whether the defendant's conduct "*otherwise* obstructs, influences, or impedes," § 1512(c)(2) forces courts to interpret the provision in light of the enumerated offenses—"[a]lters, destroys, mutilates, or conceals"—in § 1512(c)(1). Ultimately, the Supreme Court decided that the ACCA's residual clause contained too many "uncertainties" to survive. *Id.* at 2560. But its effort read the clause in light of the preceding offenses demonstrates the structural similarity between the ACCA and § 1512(c)(2).

Nor is *United States v. Aguilar,* 515 U.S. 593 (1995), inconsistent with Ms. Lin's reading of § 1512(c)(2). *Aguilar* concerned the final provision of another obstruction statute, 18 U.S.C. § 1503. The Supreme Court held that the provision "serves as a catchall" and "is far more general in scope than the earlier clauses of the statute." *Id.* at 598. But the catchall provision of § 1503

differs significantly from § 1512(c)(2) because it begins with the word "or," not "or otherwise." The word "otherwise" is what mandated reading the residual clause in the ACCA in light of the enumerated offenses.

The government's reference to *Collazos v. United States,* 368 F.3d 190 (2d Cir. 2004), is inapposite. *Collazos* addressed whether the defendant was covered by a civil fugitive disentitlement statute, even though she did not qualify as a common law fugitive. The statute contains three subparts, the third of which begins with "otherwise." *See id.* at 198. The government misreads the Second Circuit's holding to distinguish between the second and third subparts. In fact, the Court found that *both* subparts extend beyond the reach of common law fugitives. *See id.* at 199-200. It further stated that its broad interpretation of subpart (b) was "reinforced by subpart (c)." *Id.* at 200. Thus, the Court read the subparts together and relied on the second to inform its understanding of the third.

The government also downplays existing Second Circuit law concerning redundancies in the obstruction statutes. In *United States v. Hernandez,* 730 F.2d 895 (2d Cir. 1984), the Second Circuit reversed a conviction for witness tampering under § 1503 on the ground that such conduct was actually covered by § 1512. The Court found that, because the Victim and Witness Protection Act of 1982, Pub. L. No. 970921, 96 Stat. 1248 (1982), deleted all references to witnesses from § 1503, and enacted § 1512, specifically designed witness protection, Congress intended "to remove witnesses entirely from the scope of § 1503." *Id.* at 898. The Second Circuit reaffirmed *Hernandez* in *United States v. Masterpol*, and stated it had no reason to "retreat from [its] position" to remove witness tampering from § 1503. *Masterpol*, 940 F.2d 760, 763 (2d Cir. 1991). Thus, while some criminal statutes may overlap, the Second Circuit has eliminated at least one such redundancy in the obstruction context.

Finally, the government overlooks the Supreme Court's decision in *Yates v. United States,* 135 S.Ct. 1074 (2015), regarding the reach of 18 U.S.C. § 1519. The *Yates* Court rejected the government's broad reading of the term "tangible object" in part because of its placement within a statute specifically targeting fraud in financial record keeping. *See id.* at 1087. *See also Aguilar,* 515 U.S. at 600 (Supreme Court "traditionally exercise[s] restraint in assessing the reach of a federal criminal statute"). Here, too, the Court should reject a broad reading of § 1512(c)(2) because of its placement in a residual subsection, subordinate to a provision relating only to documents and tangible objects. As Ms. Lin previously observed, should the Court accept the government's invitation to stretch § 1512(c)(2) to reach the conduct alleged here, this would expose individuals to a 20-year maximum sentence for the mere attempt to obstruct or impede a proceeding in *any* imaginable way.

C. <u>The Cases Cited by the Government Do Not Support an Obstruction of Justice Charge</u>

The cases cited by the government do not support an obstruction of justice charge against Ms. Lin. The government does not allege that Ms. Lin enlisted corrupt police officers to feed her information; interfered with an undercover sting operation; informed targets of pending search warrants; helped to hide physical evidence; or sought to persuade witnesses to testify falsely. *Cf. United States v. Volpendesto,* 746 F.3d 273, 287 (7th Cir. 2014) ("close case" where defendant "enlisted a cadre of corrupt officers to feed him information that he had no right to have" and was willing to pass the information on to associates); *United States v. Ahrensfield,* 698 F.3d 1310, 1325 (10th Cir. 2012) (defendant disclosed confidential details of an undercover operation, obtained from a police officer, to the target of that operation); *United States v. Newton,* 452 Fed. Appx. 288, 290-91 (4th Cir. Oct. 25, 2011) (defendant disclosed to targets upcoming execution of arrest and search warrants); *United States v. Matthews,* 505 F.3d 698, 706-07 (7th Cir. 2007)

(defendant orchestrated scheme to conceal target's revolver from federal officers); *United States v. Batista,* 06-CR-265, 2010 WL 1193314, *9 (E.D.N.Y. Mar. 24, 2010) (defendant sought to persuade witness to testify falsely). Rather, its chief complaint appears to be that Ms. Lin assisted a foreign national, visiting the United States, to return home during an investigation of unknown subject, status, duration, or timing. This is not illegal. Were it otherwise, foreign nationals of any imaginable interest would be obliged to remain in the United States indefinitely unless and until prosecutors announced a formal end to their "investigation."

Contrary to the government's assertion, *United States v. Bando,* requires that "a charge has already been lodged" or "will be lodged" against a defendant for flight to constitute a crime under § 1703. *Bando,* 244 F.3d 833, 843 (2d Cir. 1957); *see id.* ("fleeing felon" must be "subject to prosecution"). The government does not allege that charges had been lodged again Mr. Qin, that such charges were forthcoming, or even that it had probable cause to make an arrest. Given that, on the face of the indictment, Mr. Qin was free to return home, it was not illegal to recommend and arrange for him to do so by ordinary means. For these reasons as well, Counts Three and Four must be dismissed as a matter of law.

## V.

### CONCLUSION

For the foregoing reasons, and those stated in Ms. Lin's opening brief, Counts One, Three and Four must be dismissed as a matter of law.

New York, N.Y.
May 12, 2017

/s/
_____

Deborah Colson
Colson Law PLLC
80 Broad Street, 19th Floor
New York, N.Y. 10007
(212) 257-6455