1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - X
3
    UNITED STATES OF AMERICA,      : 15-CR-00601(DLI)
4                                  :
                                   :
5                                  :
        -against-                  : United States Courthouse
6                                  : Brooklyn, New York
                                   :
7                                  :
                                   : Wednesday, August 2, 2017
8   YING LIN,                      : 10:00 a.m.
                                   :
9          Defendant.             :
                                   :
10
    - - - - - - - - - - - - - - X
11
           TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION
12      BEFORE THE HONORABLE DORA L. IRIZARRY
             UNITED STATES CHIEF JUDGE
13
                 A P P E A R A N C E S :
14
    For the Government:  BRIDGET ROHDE, ESQ.
15                       United States Attorney
                         Eastern District of New York
16                         271 Cadman Plaza East
                           Brooklyn, New York 11201
17                       BY:DOUG PRAVDA
                         BY:ALEXANDER SOLOMON, ESQ.
18                       BY:IAN RICHARDSON, ESQ.
                           Assistant United States Attorney
19
    For the Defendant:   COLSON & HARRIS LLP
20                         80 Broad Street, 19th Floor
                           New York, New York 10004
21                       BY:DEBORAH AUSTERN COLSON, ESQ.

22  Court Reporter:  Michele D. Lucchese, RPR
                     Official Court Reporter
23                   E-mail:  MLuccheseEDNY@gmail.com

24  Proceedings recorded by computerized stenography.  Transcript
    produced by Computer-aided Transcription.
25

1          THE COURT:  Good morning.  Please be seated.

2          THE COURTROOM DEPUTY:  Criminal cause for oral

3   argument on motion, Docket No. 15-CR-601, *United States versus*

4   *Ying Lin*.  Please state your appearances.

5          MR. PRAVDA:  Good morning, Your Honor.  Doug Pravda,

6   Ian Richardson, and Alexander Solomon for the United States.

7          THE COURT:  Good morning.  Please be seated.

8          MS. COLSON:  Good morning, Your Honor.  Deborah

9   Colson for Ms. Lin and I am here with Dorea Silverman, an

10  attorney in my office, and Sara Waldron, a paralegal.

11         THE COURT:  Good morning to all of you.

12         Good morning, Ms. Lin.

13         Can I have the spelling of Ms. Silverman's name,

14  please.

15         MS. SILVERMAN:  Yes, Your Honor.  It is D-O-R-E-A,

16  and then Silverman is S-I-L-V-E-R-M-A-N.

17         THE COURT:  Thank you very much.

18         Good morning.

19         Ms. Lin, you can sit down.

20         We are assisted today by the Mandarin language

21  interpreter.  May we have your name, please, for the record?

22         THE INTERPRETER:  Patsy Ong.

23         THE COURT:  Good morning, Ms. Ong.

24         And would you please administer the oath to the

25  interpreter.

1          (Interpreter sworn.)

2          THE COURT:  And good morning to all of our observers

3    who are here this morning.

4          This matter is on today for oral argument on the

5    defendant's motion to dismiss several counts of the

6    indictment, Counts One, Three, and Four, which relate to the

7    charges of smuggling.  That's Count One.  And the remaining

8    Counts Three and Four relate to obstruction of justice

9    charges.

10         I am going to ask everyone to keep in mind that Ms.

11   Lin is being assisted by the Mandarin interpreter, so if you

12   could please try to speak slowly and in short sentences to

13   allow the Mandarin interpreter sufficient leeway in doing her

14   translation.

15         And, Ms. Ong, if there is anything you don't hear or

16   if you need to have something repeated, or if anyone is

17   speaking too quickly, please let us know, give me a sign and

18   we will try to rectify it.  Okay?

19         THE INTERPRETER:  Yes.

20         THE COURT:  You can remain seated.  I am going to

21   ask everyone as well to remain seated and make sure that you

22   speak into the microphones so that we can hear each other

23   better, so that the reporter can hear and, importantly, so

24   that our folks in the audience can hear, because they won't

25   hear anything if we don't speak into the microphones.

1    I'd like to address the smuggling issues that have

2  been raised first.  There are a number of arguments that the

3  defense has raised in connection with that charge.

4    I would like to know, first of all, the Government

5  can address one of the points that was raised by the defense,

6  with respect to the TSA implementation regs that were

7  allegedly supposed to have been implemented.  In the first

8  place, the defense alleges that the TSA regulations that were

9  supposedly violated by the Defendant were not specified in the

10  indictment, which is supposed to contain specific allegations,

11  at least to lay out the elements of any statutes that are

12  supposed to have been violated.

13    According to the Government, how does the Government

14  counter that argument given that there is no mention, at the

15  minimum, of which regulations were violated?

16    MR. PRAVDA:  Your Honor, if I may address that

17  argument.  When we set forth in the indictment what the

18  Section 554 violation was, we explained that it was contrary

19  to specify statute and to the TSA implementing regulations.

20  Now the Court is correct that we didn't cite to any specific

21  regulation.  We acknowledge that.  But the notice that is

22  required by indictment can be provided in one of two ways, one

23  is with a citation to the specific factual subsection, the

24  specific regulation that is being violated, and the other is

25  with sufficient factual allegation to put the defendant on

1   notice of what it is that the Government is alleging.

2        And here, the factual allegations that are set forth

3   in the superseding indictment at paragraphs six, seven, and

4   eight, which are under the heading the defendant smuggling

5   activities, set forth exactly what conduct we are alleging

6   that the defendant committed that it is in violation of those

7   regulations.

8        Now, with respect to the argument that the

9   Government needed to set forth the elements of the underlying

10  crime, that's actually not correct, Your Honor.  There is no

11  need for the Government to prove that the defendant violated

12  554 and the underlying statute and regulation.  And what

13  happened, Your Honor, is that in a number of different

14  circuits, and we cited this in your brief on, I think it is

15  page 12, we cited cases from a number of different circuits,

16  all of them are circuit level cases, making clear that in the

17  specific context of a 554 claim the Government is not required

18  to prove to the jury that the defendant had violated each of

19  the individual elements of the underlying statute or

20  regulation.  And the reason why these cases came up, Your

21  Honor, to the circuit level on this particular question is

22  because in many of them the district judge did not instruct

23  the jury in the jury instruction as to what the elements of

24  the underlying --

25        THE COURT:  But there are no Second Circuit cases

1    dealing with this from the circuit itself; correct?

2         MR. PRAVDA:  That is correct, Your Honor.  This is

3    actually relatively recent statute that was passed, I believe

4    in 2005 or in 2006.

5         THE COURT:  Well, considering that the Second

6    Circuit has many court districts, this one included, there are

7    many airports within the Second Circuit, it is a little

8    surprising that there wouldn't be any case law on this issue,

9    which actually comes to another point that the defense raises,

10   which is that there have been no prosecutions that at least

11   the defense could find, and I didn't see that the Government

12   pointed to any, where a prosecution was brought for smuggling

13   where there was no contraband in, in this case, the suitcase

14   is at issue or the package is at issue, and, basically, the

15   essence of the smuggling is that the suitcases were not

16   attached to the ticketed passenger.

17        Have there been any such prosecutions?  I am not

18   aware of any in this district.

19        MR. PRAVDA:  Well, there have been -- well, first of

20   all, Your Honor, the statute did not limit it to the

21   contraband itself being an item or an object that is on some

22   export list.  The statute is actually much broader than that

23   because it talks not only about exporting or sending

24   merchandise or articles out of the United States but also

25   about things like facilitating transportation, concealing

1   those objects, those articles and those merchandise knowing

2   that those items are intended for export.  So as an initial

3   matter --

4           THE COURT:  Intended for export contrary to the laws

5   of the United States, so most of the cases that have be

6   referenced dealt with drugs, with firearms, with explosive

7   devices.

8           What was smuggled here, allegedly?  Just for the

9   record, we are all talking about allegations here, just in

10  case sometimes it gets cumbersome to say allegedly every two

11  seconds.

12          MR. PRAVDA:  Your Honor, one of the cases that we

13  pointed to now was a case called *United States v. Ibrahim*,

14  which is a case from 2013 out of the Northern District of

15  California.  In that case there were two counts of 554 and one

16  of those counts was based on an attempt to ship chemicals

17  without the proper shipping papers and labeling.  So the

18  violation wasn't that the chemicals themselves were on some

19  export list somewhere but that the manner in which the

20  chemical was shipped, meaning without the proper shipping

21  papers and labeling, goes to the manner in which an item has

22  been sent out of the United States, which is the same type of

23  charge that the Government is bringing here, that the manner

24  in which these bags were checked on to airplanes either as

25  unaccompanied bags or checked on to airplanes in the name

1  names of other ticketed passengers to whom those bags did not

2  actually belong was a manner of sending or exporting items

3  outside of the United States, so clearly contrary to the

4  underlying TSA regulation.

5       THE COURT:  Would you like to address that argument,

6  Ms. Colson?

7       MS. COLSON:  Yes, I have a very different reading of

8  *Ibrahim*.  I believe that the case actually helps Ms. Lin.  It

9  is a case which concerns the exportation of hazardous

10 materials and it is focused on those hazardous materials,

11 whereas here we have a case that is not focused on the export

12 content.  The issue in *Ibrahim* was one of statutory

13 construction.  It was whether a statute which generally

14 regulates the shipment of hazardous chemicals also applied to

15 foreign exports and the Court held that 554 could be applied

16 to laws which regulate interstate commerce as well as foreign

17 commerce.  But the statute itself that was at issue regulated

18 the contents of the materials and the case itself also focused

19 on the content, which was the hazardous materials.

20      THE COURT:  I am looking at the statute and the

21 statute says any merchandise, article, or object contrary to

22 any law, regulation of the United States.

23      Now, what is it that is alleged to have been

24 smuggled in the packages at issue?

25      MR. PRAVDA:  Your Honor, we are not making any

1    specific allegation as to the content of the packages, but in

2    terms of the --

3              THE COURT:  I want a direct answer.  What is it that

4    was alleged to have been smuggled?

5              MR. PRAVDA:  The packages that were being sent by

6    the PLC military officers back to the Peoples Republic of

7    China?

8              THE COURT:  Yes.

9              MR. PRAVDA:  That's what is alleged to have been

10   smuggled, and what happened was there is a proper way in

11   which --

12             THE COURT:  What was it?

13             MR. PRAVDA:  You mean what was inside it?

14             THE COURT:  Yes.

15             MR. PRAVDA:  Well, that's something that the

16   Government is not making a part of its case, Your Honor.

17             THE COURT:  I don't care whether you are making it

18   part of your case or not.  I asked you a direct question.  Why

19   can't you answer the question?  Either you know or you don't

20   know.  These cases address the content of what was smuggled,

21   the actual items themselves.

22             MR. PRAVDA:  Your Honor --

23             THE COURT:  And I think that depending on how you

24   read the statute, and, again, and I have not made up my mind

25   on this, that is why I wanted to have oral argument today, is

depending on how you read the statute, it says whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object.

To me, that sounds like it is relating to the article that is being exported, which is why these cases talk about explosives and narcotics and firearms and so on.  So, yes, it is relevant.  Whether you think you need to make it part of your case or not, I am telling you that it is relevant to my analysis.

MR. PRAVDA:  Well, Your Honor, just to remind --

THE COURT:  Are you alleging that it is an explosive, a firearm, an incendiary device, narcotics or anything like that?

MR. PRAVDA:  Just to remind the Court, we addressed the content of the packages in the Government's classified CIPA filing, but our allegation, the one that we are going to prove in this unclassified setting relates not to the content of those boxes but to the manner in which the defendant proceeded to assist in sending those boxes outside of the United States.

In the Government's theory of the prosecution the

bags or the boxes that are being sent out aside of the United
States are the merchandise, article, or object.  And in terms
of the reading of the statute, it is a little bit odd to
describe a merchandise, an article, or an object as contrary
to a law or regulation.  It is not the underlying object that
is contrary to law; it is the export of that object that is
contrary to law.  And the Government's reading of the statute
is that it covered not only what the underlying item is but
also the manner in which that item is exported, and we think
that that is supported by the second half of this statute
which goes not simply to the act of export but also to the act
of facilitating the transportation, concealment, or sale of
that object before it is exported, and that taken together,
the statute criminalizes conduct that evades United States
export controls regardless of what the individual item is that
is inside those boxes.

       THE COURT:  Well, what is the intent of the TSA
regulations?

       MR. PRAVDA:  The intent of the TSA regulation that
we have cited here is to set up a screening process that is
designed to make sure that all items go through the required
screening process in order to --

       THE COURT:  Did the particular items here go through
TSA screening?

       MR. PRAVDA:  Well, these particular items were

1  placed on airplanes in a manner designed to evade TSA
2  requirement --
3          THE COURT:  I understand that, separate and apart
4  from the fact that the person did not match the baggage,
5  right?
6          MR. PRAVDA:  Right.
7          THE COURT:  That's the allegation here.  The person
8  did not match the baggage.  There is a TSA regulation that
9  says baggage must match the person.
10         MR. PRAVDA:  Yes.
11         THE COURT:  But the baggage also goes through
12 another screening process, they're X-rayed.  Sometimes they
13 are manually checked.  Did the bags passthrough that screening
14 process?
15         MR. PRAVDA:  We're not alleging that they did not.
16 But, Your Honor, this is not a case about --
17         THE COURT:  I don't like double negatives; we are
18 not alleging that they did not.
19         MR. PRAVDA:  Your Honor, I cannot affirmatively say
20 that they did.  I am saying the Government is not going to
21 present evidence that they did not.  I'm not trying to be cute
22 about it.  We don't know if it went through the screening, but
23 we are not going to say that it did not go through the
24 screening.
25         But, Your Honor, this is not a case about the

1   efficacy of the TSA's screening process.  We all know -- we

2   call see media reports that numerous weapons, explosives,

3   other objects get through TSA screening all the time, far more

4   than any one of use cares to admit, but this is not part the

5   Government's case.  The regulation issue requires checked bags

6   to match up to the passenger who checks the bags because that

7   is a manner not only of preventing but also deterring people

8   who would send hazardous or unsafe materials or explosives on

9   board airplanes.  And the TSA requires this process to be

10  followed as a means of deterring and preventing that kind of

11  conduct and that means essentially prohibiting a broader form

12  of simply not sending explosives on an airplane so that they

13  can deter people who would do that and those --

14          THE COURT:  First of all, the TSA regulations were

15  passed right after 9/11, right.  So the intent is to deter

16  dangerous devices from getting on planes, basically.

17          MR. PRAVDA:  Frankly, what 9/11 did was 9/11 exposed

18  a huge security gap in the screening processes, and, yes, the

19  regulations were passed to --

20          THE COURT:  So is it your position that if the

21  suitcase contained a suitcase full of mittens that were

22  purchased at Macy's and got on the plane under the

23  circumstances here that a person didn't match the baggage,

24  that that per se is a violation of Section 554?

25          MR. PRAVDA:  Not at all, Your Honor, because there

1  is mens rea of willful and knowing, and our argument is that

2  when the defendant took these actions of putting unaccompanied

3  bags on the airplanes and they are checking those bags in

4  under the names of other passengers she did so with the

5  specific intent to evade the security procedures that the TSA

6  has set up.

7          THE COURT:  No, you are not answering the question.

8  I said otherwise under the circumstance here, if that is what

9  the luggage contained, would that be a violation of Section

10 554?

11         MR. PRAVDA:  Well, I think the Government's

12 position, Your Honor, is that if you willfully take an object

13 that has been brought to an airport and put it on an airplane

14 without going through any screening whatsoever because you

15 intended to evade that screening process, it doesn't matter

16 whether there was a bomb or something else in that bag,

17 because what the defendant did was a knowing and willful

18 violation of the TSA's screening procedures.  She was trained

19 on those procedures.  She knew what they were.  We all know

20 that you can't just bring any package to a commercial airline

21 and say hey, can you ship this wherever the destination is.

22 We all know that you can't check-in bags under another

23 person's name.  But when you deliberately, as the defendant

24 did, circumvent those kinds of screening procedures, that's

25 the violation, whether or not there is a bomb in that box.

1    THE COURT:  Do you wish to be heard on that, Ms.
2  Colson?

3    MS. COLSON:  Yes, I would first start off by saying
4  the Government has mentioned that they addressed the content
5  of their packages in their ex-parte CIPA filings.  I obviously
6  have not seen those filings, but if it is at all relevant to
7  the Court, as I think it should be, what was inside those
8  packages, then I think that I should also be made aware of
9  that.  The Government has made absolutely no allegation as to
10  the content of the baggage.  It is not clear to me whether the
11  Government even knows what was inside the baggage at all.  And
12  certainly it doesn't, as the Government has stated, appear to
13  be its primary concern here.  But if I am wrong about that and
14  the Government is concerned about the content of the baggage
15  and has disclosed it to the Court in confidential filings, I
16  would respectfully request that I should be made aware of
17  that.

18    But, Your Honor, I do believe that the plain
19  language of 554 itself focuses on the merchandise article or
20  object to be exported.  And as the Court stated, it says that
21  those objects must be contrary to law.  And that
22  interpretation of 554 is explicit in every 554 case ever
23  decided.  Every 554 case we have found concerns the
24  exportation of contraband or heavily-regulated substances.

25    The Government does not appear to allege here that

1   Ms. Lin aided and abetted the smuggling of contraband or

2   heavily-regulated substances.  The Government's primary

3   concern is that she aided and abetted a violation of a

4   procedural regulation concerning checked baggage and they have

5   not cited a single case in which 554 has been used to

6   prosecute violations of procedural regulations.  The only case

7   that they have cited, as Mr. Pravda noted, is *Ibrahim*.  And

8   for the reasons I stated before, *Ibrahim* is not applicable

9   here and, in fact, assists Ms. Lin.

10          I would also add, Your Honor, there is another flaw

11  in the Government's legal theory, which is that they fail to

12  allege a principal violation.  The Government does not have to

13  charge the principal in order to charge an aider and abettor,

14  but they do have to prove that the principal committed a

15  crime.  And here, they have failed to allege that Ms. Lin's

16  former employer actually committed a crime, and nor can they

17  even make such an allegation even if they wanted to because

18  whatever the unaccompanied baggage contained, Air China was

19  merely the shipping agent for that baggage.  They did not own

20  or export the baggage.  According to the Government, the

21  baggage belonged to members of the PRC Mission and consulate.

22  The Government does not cite a single case in which a shipping

23  agent, rather than an owner/exporter, has been charged with

24  smuggling under 554.  That is another fatal flaw in the

25  Government's legal theory.

1      THE COURT:  Can I stop you there?  I would like to

2 hear the Government's response to that argument.

3      MR. PRAVDA:  Yes, Your Honor.  The requirement under

4 an aiding and abetting theory is actually that the government

5 prove that the crime was committed and that the defendant

6 aided and abetted the commission of that crime.  But Ms.

7 Colson seems to be suggesting that the Government had to

8 identify the principal who committed the crime in the

9 indictment and that is actually not right.  In fact, I pulled

10 out Judge Sand's jury instructions on aiding and abetting in

11 response to the defense argument and it makes clear that it is

12 not necessary that the principal even be identified for an

13 aider and abettor to be convicted as long as the evidence

14 demonstrates that the offense was committed and that the

15 defendant knowingly acted in a way to affirmatively evade that

16 crime.  So it is not something that the Government needs to

17 prove.  It is also not something that the Government needs to

18 charge in the indictment.  And, in fact, it is fairly common

19 for the Government to charge in all sorts of context aiding

20 and abetting where there is no allegation as to who the

21 principal even is.  So, for example, in drug courier cases

22 where a courier imports drugs into the United States, you

23 routinely charge them with aiding and abetting in the

24 importation, as well as the actual importation itself, even

25 though many of those cases you have no idea who the person is

1   that gave the drugs to that courier to bring into the United

2   States, and there has never been any issue that has been

3   raised with us charging in that kind of way.  Given that it is

4   not required that the Government identify the principal or

5   prove the principal to the jury, I can't see why it would

6   matter in this case.

7         Now, having said that, we all know who is alleged to

8   be the principal here.  There is no mystery that it is the

9   defendant employer.  It is just simply not a fact that has to

10  be charged in the indictment.

11        MS. COLSON:  Your Honor, may I respond to that?

12        THE COURT:  Yes.

13        MS. COLSON:  I think the Government misunderstands

14  what I'm saying.  It is not simply the failure to identify the

15  principal, but it is a failure to allege that the principal

16  actually committed a crime.  In order to prove that someone

17  aided and abetted the crime of a principal, the Government is

18  required to prove that a principal, at least some principal,

19  whoever that person is or entity is, committed a crime, and

20  they have failed to make such an allegation here.  Nor, for

21  the reasons I articulated before, can they make such an

22  allegation because in this case, the principal, who they have

23  identified, was merely the shipping agent for that baggage and

24  not the owner/exporter of the contents of that baggage.

25        Your Honor, it is --

1      THE COURT:  Can I stop you there?  I would like to

2  hear the Government's response to the defense argument that

3  the carrier is merely a shipping agent and not the actual

4  entity that is exporting and presumably are the people who

5  wanted to have the bags shipped that are the actual exporters.

6  So the defense is arguing that the carrier is acting simply as

7  a shipping agent and thus would not be liable.

8      MR. PRAVDA:  Because the carrier is the one who is

9  violating the regulation.  So the regulation sets up the

10  security screening requirements.  It is the carrier violating

11  that and the employees of the carrier are aiding and abetting

12  that violation by facilitating those boxes being placed on

13  planes either unaccompanied or in the names of passengers who

14  were not the people who delivered the boxes, and that falls

15  squarely within both exporting and in terms of transporting or

16  concealing the object contrary to law or regulation, which is

17  both halves of the 554 statute.  There is nowhere in here that

18  says that there is an exception for a shipping agent.  You

19  know, we don't say to follow my drug courier, for example,

20  that just because the drug courier is the person bringing the

21  drugs in but is not actually the owner of the drugs, that that

22  makes them not liable.  It is the same analogy here.  The

23  carrier is the one that is the violating the regulation and

24  the carrier is responsible for shipping those items contrary --

25      THE COURT:  But the courier is actually the person

1    carrying something that is clearly contraband.

2             MR. PRAVDA:  Yes.

3             THE COURT:  So the courier is actually acting in the

4    place of the principal as the actual exporter, especially if

5    you talk about couriers that are swallowers.  They are

6    everything.  They are exporting.  They are the package.  They

7    are everything.  Isn't that different, if they get on JetBlue

8    airlines, JetBlue airlines is carrying the courier.  The

9    courier is the package.  So JetBlue is liable?

10            MR. PRAVDA:  Well, in that example, Your Honor,

11   JetBlue is the entity --

12            THE COURT:  It is an extreme example, but if I

13   extrapolate your argument.

14            MR. PRAVDA:  I understand, Your Honor, but even in

15   that example, JetBlue is the entity that is carrying the bags.

16   But here, the exporter, by definition, is the person who is

17   physically taking the object across the border outside the

18   United States.  Here, that is the air carrier.  The air

19   carrier is the exporter here.  They are the ones who are

20   taking the bags from inside the United States to a place

21   outside the United States.

22            THE COURT:  So your claim is that they are not

23   acting as a shipping agent?

24            MR. PRAVDA:  Because they know that the manner of

25   the export is in violation of the regulation.  So that's why

1  the exporter, they are violating 554 because they know that

2  these security procedures are in place to prevent what they

3  are permitting to happen.

4         MS. COLSON:  I think that's why they may be

5  violating the Regulation 203A, but that doesn't mean that that

6  violation of the regulation is also a violation of 554, and

7  that's what we dispute here.  The Government has not

8  identified any cases in which violation of a procedural

9  regulation has been found to constitute smuggling under 554,

10 nor have they identified a single case in which a shipping

11 agent rather than the exporter has been held liable.

12         THE COURT:  Part of what I am having trouble

13 wrapping my head around here is the fact that the Government

14 didn't identify a specific regulation that was violated here,

15 so we are forced to sort of track down all the regulations

16 that might apply to Section 554 as implementing that statute.

17 And then there is at least one section that is discussed by

18 the defense, 49 CFR Section 1546.103(b)(4), that discusses the

19 content of a security program for a foreign air carrier, and

20 the defense argument is that Ms. Lin is a U.S. citizen and

21 therefore she doesn't fit the definition of a foreign air

22 carrier and, therefore, that regulation does not pertain to

23 her.

24         MR. PRAVDA:  I understand, Your Honor, and I think

25 that to the extent that the Court believes that that is a

1    problem, we would certainly be happy to supersede and correct

2    that.  We do think that the factual allegations have been

3    sufficient to place the defendant on notice.

4           Actually, in their reply brief, the defense pointed

5    to a case from Judge Glasser called United States against

6    Thompson, and the argument in that case was that because it

7    alleged a sex crime contrary to law or regulation of a state

8    or federal government, it is basically transporting minors

9    across state lines to engage in sexual activity contrary to a

10   state or a federal law, and in that case the Government had

11   not identified any specific underlying statute to say that

12   that conduct was in violation of state or federal law.  In

13   that case, Judge Glasser found that the allegation that the

14   defendant may have engaged in statutory rape wasn't mentioned

15   anywhere in the indictment and so the indictment was defective

16   in that regard.  But he also upheld, Your Honor, an example

17   where the Government had alleged that the defendant had

18   transported minors for the purpose of engaging in prostitution

19   contrary to state law even though the indictment identified no

20   state law whatsoever and didn't cite to any state law

21   prohibiting prostitution, but Judge Glasser found that because

22   prostitution was sufficiently definite to put the defendant on

23   notice of he Government's allegation that the indictment was

24   therefore adequate in that respect.

25           And what we are saying, Your Honor, is that given

1   that the superseding indictment here has a paragraph that

2   details specifically what conduct the defendant is engaged

3   that we are saying was in violation of law or regulation, that

4   that likewise is also adequate.  However, certainly to the

5   extent that this is a concern for the Court, we can supersede

6   to make clear the regulation that we believe the defendant

7   violated.  It wouldn't be any substantive change to the

8   allegations; it would just be to add the specific citation and

9   explain how they were violated so that that language is in the

10  indictment as well.

11          MS. COLSON:  Your Honor, may I respond to that?

12          THE COURT:  Yes, and specifically why shouldn't the

13  Court give the Government an opportunity to supersede the

14  indictment to cure a pleading defect?

15          MS. COLSON:  Yes.  First, just to be clear about

16  what the pleading defect is, it is not merely the failure to

17  cite the appropriate regulations, it is actually more severe

18  than that.  They actually cited regulations, or, at least,

19  quoted from regulations in their initial indictment that they

20  now acknowledge do not apply to Ms. Lin.  In their opposition

21  brief they identified an entirely new regulation, 1546.203A,

22  which they did not cite, quote, or reference anywhere in that

23  initial indictment.

24          The issue with that regulation is that that

25  regulation governs the conduct of the air carrier; it does not

1  govern the conduct of Ms. Lin.  So even that regulation is

2  inapplicable to Ms. Lin, which is why the Government then came

3  forward with the idea that Ms. Lin was just aiding and

4  abetting the air carrier.

5          THE COURT:  But let me ask you something about that.

6  The air carrier is a company, it is an entity.  In some ways,

7  it is a fiction when we say that a corporation is a person

8  even though for purposes of litigation it is treated as a

9  person.  Doesn't a company, in this case, an air carrier,

10  violate the law when it permits its employees to violate the

11  law?

12          MS. COLSON:  Well, I suppose --

13          THE COURT:  How else would a corporation be in

14  violation of the law if not through the conduct of its

15  employees?

16          MS. COLSON:  But I think what the Government is

17  saying, and maybe I have misread their brief, but what they

18  say on page 6 is that the air carrier intentionally violated

19  these regulations which led to unaccompanied baggage being

20  transported on air carrier flights.  So it is my understanding

21  that it is not just that the Government claims the air carrier

22  turned a blind eye, but the air carrier itself engaged in

23  criminal conduct.  I have several issues why the Government

24  shouldn't be able to supersede based on that theory.  The

25  first, which is what we have already discussed, is that the

plain language of 554 focuses on a merchandise, article, or object, and that every 554 case we have found concerns the exportation of contraband or heavily-regulated substances.  So even if the Government identified the specific procedural regulation they claim Ms. Lin violated, that would not be sufficient to make out a violation of 554.

The second issue is that the Government has failed to alleged in the indictment that the principal actually committed a crime and nor, even if it was given the opportunity, could it make such an allegation because whatever the baggage contained, the principal in this case is a shipping agent and not an exporter or owner, so that is why the Government should not be permitted to supersede and identify the appropriate regulation because that regulation still doesn't make out a crime under 554.

THE COURT:  So I would like to move on to the obstruction arguments.  I would like to hear the Government's response to the defendant's argument that with respect to obstruction that the Government failed to detail the official proceeding.  That is one thing.  And secondly, that merely assisting a foreign national to leave the United States during the pendency of any investigation is not itself illegal.  It is two things.

MR. PRAVDA:  Sure.  Let me take the second one first, Your Honor.

1          THE COURT:  Okay.

2          MR. PRAVDA:  I think the question of whether the

3     defendant's conduct is a violation of 1512(c)(2) turns on the

4     defendant's intent in engaging in that conduct.  And I think

5     the clearest example that comes to mind, Your Honor, is simply

6     in a document shredding example.  If I take this document and

7     put it in a shredder and cut it into a million pieces, nobody

8     is going to say that is a crime.  But if I do the same thing

9     because I intend to obstruct a grand jury proceeding, then

10    that is a crime.  So while it may not be a crime in the

11    abstract to help someone leave the United States, when the

12    defendant engaged in that conduct with the intent to obstruct

13    the grand jury proceeding, that is the crime that she engaged

14    in.

15         Now, with respect to the allegation of official

16    proceeding, we identified the proceeding in the indictment as

17    a federal grand jury proceeding in the Eastern District of New

18    York.  That has been held in a number of different cases to be

19    adequate to identify the nature of the proceeding.  The one

20    case that the defendant cited was a case where the official

21    proceeding was listed only as a proceeding and not even

22    identified as a grand jury proceeding, nor where that

23    proceeding was taking place.  We pointed out in our brief why

24    the allegation that it is a grand jury proceeding in the

25    Eastern District of New York is adequate.  They came back by

1  pointing to some factual allegations that are in that case

2  with respect to the defendant's conduct.  And, quite candidly,

3  Your Honor, the same specificity with respect to the factual

4  allegation are in the Government's indictment, because it

5  specifically says that the Government was conducting an

6  investigation of a confederate of the defendant, who is a PRC

7  national who visited the United States in approximately 2015.

8  Many other facts -- this is from paragraphs 15, 16, 17 of the

9  indictment -- many other facts about who the confederate was

10 and specifically what the defendant did to encourage the

11 confederate to leave.  So knowing that special agents of the

12 FBI had been asking questions specifically about the

13 confederate and knowing that -- I'm sorry, special agents of

14 the FBI asked her daughters questions about the confederate,

15 and she knew that her daughters had been served with subpoenas

16 in connection with an investigation, and knowing those things,

17 she immediately turned around and told the confederate, hey,

18 the FBI is asking a lot of questions about you, if you can get

19 out of the United States, you absolutely should do that right

20 away.  And that is all alleged right here.  She helped him

21 flee.  She purchased his tickets.  She told him that the

22 Government was interested in him and those actions were all

23 taken with knowledge that there was a federal grand jury

24 proceeding in the Eastern District of New York pursuant to FBI

25 agents asking questions about that person's activities.  Those

1   allegations are more than adequate to put the defendant on

2   notice of the conduct that she is charged with committing.

3           THE COURT:  Do you wish to respond?

4           MS. COLSON:  Yes.  I think they are not sufficient

5   and the reason is because the Government --

6           THE COURT:  But even in your papers you agreed that

7   Congress has, and I am reading from page 12 your opening

8   brief, Congress has defined an official proceeding as one

9   before a judge or grand jury, and even the instructions on

10  obstruction of justice that are given to a jury will say that

11  a federal grand jury investigation is an official proceeding,

12  and it is alleged in the indictment.

13          MS. COLSON:  That is correct.  I do believe that a

14  federal grand jury investigation is an official proceeding.

15  What the issue is is that while the indictment alleges a

16  federal grand jury proceeding, the indictment does not

17  identify the target of that proceeding, the subject matter of

18  that proceeding.

19          THE COURT:  But the indictment doesn't have to

20  allege that.  I have never seen an indictment -- well, I have

21  rarely seen an indictment that charges obstruction of justice

22  where the allegation is that the conduct affected an official

23  proceeding that was a grand jury proceeding, that it says

24  specifically what that grand jury proceeding was.

25          MS. COLSON:  I think that is sort of the point of

1    the Murphy case and also of the other cases that we cited,

2    Your Honor.  The Murphy case in particular establishes that in

3    order to put the defense on specific notice, on adequate

4    notice, the Government must provide some information as to the

5    subject matter or the target of that proceeding.  That is the

6    whole point of the Murphy case.  What happened there is that

7    the Government didn't provide sufficient information and then

8    when the trial began, the Government identified one official

9    proceeding in its opening statement and another in its closing

10   argument.

11              THE COURT:  First of all, that is a First Circuit

12   case from 1985.  Secondly, the indictment here in the

13   introductory section identifies exactly the conduct and the

14   investigation.

15              MS. COLSON:  But, Your Honor, the indictment --

16              THE COURT:  We are not talking about a situation

17   where the Government is likely to switch gears, I would doubt.

18              MS. COLSON:  I think the indictment in its factual

19   allegations says that it is investigating Mr. Qin's

20   activities, but then it doesn't identify any potential

21   criminal activities.  So in our reading of the indictment, it

22   wasn't until the Government actually filed its opposition

23   brief that we understood that Mr. Qin was the actual target of

24   the federal grand jury proceeding, and that certainly wasn't

25   presented in the indictment, and so we query whether that was

1    presented to the grand jury.

2          THE COURT:  Let me stop you there and let the

3    Government address that point.

4          MR. PRAVDA:  Your Honor, paragraph 15 of the

5    indictment specifically says during the summer and fall of

6    2016, the Federal Government was investigating the activities

7    of a confederate.  That's the defendant Ying Lin.  I don't

8    know how else to say that the indictment doesn't adequately

9    convey that.

10         MS. COLSON:  Well, I guess here's my issue:  Ms. Lin

11   has been under indictment for two years now.  Over the course

12   of that period, we have learned that there were and there

13   still may be several grand jury investigations in this

14   district alone that somehow touch upon or concern her or Mr.

15   Qin, and without identifying the subject matter or the target

16   of the grand jury investigation in the specific count, it is

17   possible that they could present one grand jury proceeding at

18   the beginning of case and one grand jury proceeding at the

19   end, or it's possible that they have presented one proceeding

20   to the grand jury in this case and will present another one at

21   trial.

22         THE COURT:  But it seems to me that the person,

23   let's say the person that is called the confederate, didn't

24   necessarily need to have been a target of the investigation.

25   The person could have been looked at as a potential witness to

1 testify in the proceeding.  It is not necessary that the

2 person necessarily have been involved in criminal activity,

3 him or herself.

4           There should not be any phones in this courtroom.

5           Who are you?  In the back.  Who had the phone?

6           A VOICE:  Sorry, Your Honor, I thought it turned it

7 off.

8           THE COURT:  Excuse me, who are you?  Are you an

9 attorney?

10           A VOICE:  No, I'm not an attorney.  I am a linguist

11 for the FBI.

12           THE COURT:  You need to go downstairs and turn in

13 your phone.  You should not have had a phone in here.

14           A VOICE:  My apologies.

15           THE COURT:  You go now and you turn in that phone.

16 Don't you ever come into this courthouse without turning in

17 your phone.

18           Anybody else who has a phone who is not an attorney

19 needs to turn that phone in now.

20           I'm sorry.

21           I don't think that it is necessary under the law

22 that the person necessarily be a target.  A person could have

23 pertinent information relating to an investigation that is

24 ongoing.  Even if that person doesn't necessarily get called

25 as a witness before the grand jury, that person may have

1    information that leads to other witnesses who then are placed

2    before the grand jury and not having that information could

3    impede the ongoing investigation.

4              MS. COLSON:  Of course, Your Honor.

5              THE COURT:  And the Government has alleged in its

6    introduction, in the paragraphs that were identified by the

7    Government, number one, what that person's role was, what the

8    conduct is that the defendant is alleged to have engaged in,

9    specifically talking to him about his activity concerning

10   properties and management of properties.

11             MS. COLSON:  Your Honor, I agree with you, that the

12   person does not have to be a target and could have merely been

13   a witness, but the issue that arose in Murphy and the reason

14   why this rule exists is because there could be multiple

15   investigations or grand jury investigations pending in a

16   single district simultaneously, which is exactly what I think

17   is happening here.  In one of those investigations, the person

18   could be a target.  In another one of those investigations,

19   the person could be a witness.  And if the Government is not

20   obliged in its indictment to identify which of those

21   investigations actually is applicable to this case, then we

22   run the risk that they either, A, didn't present the

23   appropriate investigation to the grand jury, or, B, they will

24   raise one investigation, as they did in Murphy, in the opening

25   and another in the closing.  So we have a very real issue

1    here, which is that I do believe there are multiple

2    investigations in this district which touch upon both my

3    client and Qin Fei.

4              THE COURT:  Do you want to address that particular

5    argument?

6              MR. PRAVDA:  Your Honor, I think that these

7    allegations in the indictment are sufficiently specific to

8    identify the Government's investigation.  As the Court said,

9    it is not necessary that the Government specifically identify

10   a target of the investigation nor the Government do so in the

11   indictment.  And, in fact, under 1512, there is actually no

12   requirement that a grand jury proceeding even be occurring.

13   It is adequate, under 1512, if the grand jury proceeding is

14   only reasonably foreseeable, not that one is actually

15   happening.  So I think the level of detail that Ms. Colson is

16   asking for, it is just simply not required by 1512 to be

17   alleged in the indictment.

18             Given the specificity of the factual allegation, I

19   don't think we are anywhere close to the situation in Murphy

20   where there is any danger that the Government is presenting

21   one theory to the grand jury and a different theory to the

22   jury at trial.

23             MS. COLSON:  Your Honor, just one last thing.  I

24   don't mean to belabor this point, but if you look at the other

25   indictments for the other cases that we cited, Teh, Binday,

1   and even the cases that the Government sent to you recently,

2   the Second Circuit case, Tejada, in all of those cases the

3   indictment provides some information about the subject matter

4   or target of the grand jury investigation in contrast to the

5   indictment here.

6           THE COURT:  Do you have anything else to add?

7           MR. PRAVDA:  No, Your Honor.

8           THE COURT:  The defense has also made an argument

9   that there has to be some sort of relationship between

10  subsection (c)(1) and subsection (c)(2) in order to support an

11  obstruction charge here under Section 1512.  Do you want to

12  address that?

13          MR. PRAVDA:  Yes, Your Honor.  I think that what we

14  did in our opposition brief was to identify a number of cases

15  in which courts have held that 1512(c)(2) addressed conduct

16  that was wholly separate and apart from any documents or

17  object that were covered by 1512(c)(1), and those cases are

18  cited -- I'm sorry, Your Honor, one second.  Those cases are

19  cited on page 36 of the Government's brief.  And in reply, the

20  defendant argues well, the conduct in those cases is not the

21  conduct that the defendant engaged in.  But that misses the

22  point of the argument.  The point of the argument was that

23  there are all of these cases in which conduct that is very

24  generically defined as witness tampering that bears no

25  relation to a document or other tangible object have been

1   found adequate under 1512(c)(2).  And the case that we just

2   forwarded to the Court last month, the Martinez case, the

3   Second Circuit affirmed a conviction for a police officer

4   under 1512(c)(2) and 1512(k) who had engaged in conduct that

5   also had nothing to do with destruction of documents or

6   tangible objects.  What that police officer had done was

7   essentially to advise potential targets of a federal grand

8   jury investigation whether or not there were arrest warrants

9   for them so that they could decide whether or not to return to

10  the United States because they were outside the United States

11  at the time.  This is conduct that clearly has no relationship

12  to a document or a tangible object, such as that covered in

13  1512(c)(1), yet the Second Circuit found no issue holding that

14  that conduct was sufficient to make out a case under

15  1512(c)(2).

16          And we also cited, Your Honor, Judge Glasser's

17  opinion, *Kumar*, which did go up to the Second Circuit but they

18  didn't reach the question, in which Judge Glasser found that

19  given the breadth of 1512(c)(2) and given all the legislative

20  history that he looked at, that it was apparent the 1512(c)(2)

21  was an independent prohibition on obstructive conduct and

22  wasn't limited by the language relating to a document or other

23  tangible object in 1512(c)(1).

24          Now, there is another case in this district, the

25  *Pugh* case that Judge Garaufis cited in which he did link

1    1512(c)(1) and 1512(c)(2).  He acknowledged that.  But the

2    underlying issue in *Pugh* was whether or not the defendant's

3    destruction of essentially thumb drives that he had brought

4    back with him from overseas fell within 1512(c)(1) and

5    1512(c)(2).  And because we are talking about the destruction

6    of a tangible object, namely the computer thumb drives, Judge

7    Garaufis wasn't presented with a question of something that

8    might arguably fall within 1512(c)(2) that wasn't covered by

9    1512(c)(1).  So we didn't really have occasion to consider the

10   question of whether 1512(c)(2) reached conduct that was not

11   covered by 1512(c)(1).

12            THE COURT:  Is there anything that you would like to

13   add in response?

14            MS. COLSON:  Yes, I would.  The first, just with

15   respect to the Second Circuit case that the Government cited,

16   the scope of 1512(c)(2) wasn't actually a question presented

17   in that case and nor did the Court consider it.  It just

18   wasn't an issue that actually came up.

19            The scope of 1512(c)(2) just remains an open

20   question in this circuit, even after the Martinez case

21   because, as I said, it wasn't addressed there.  I believe the

22   Government's reading of 1512(c)(2) does not comport with the

23   plain language of the statute or with the Supreme Court's

24   reading of similar statutes in Yates and Johnson.  The point

25   that we were trying to make in our brief is that the "or

1    otherwise" language in 1512(c)(2) forces the Court to

2    interpret 1512(c)(2) in conjunction with (c)(1), that (c)(2)

3    cannot be read independently of (c)(1).  As Judge Garaufis

4    explains in *Pugh*, when you read the two provisions together,

5    they simply provide two ways of committing the same crime.

6              THE COURT:  Well, but the facts of that case were

7    different.  I had a case that is cited in the Government's

8    papers, *United States versus Batista*, where the defendant was

9    an NYPD detective accused of obstruction of justice and that

10   conviction was upheld in the Second Circuit and that was under

11   1512(c)(2).

12             MS. COLSON:  I believe I read that case, Your Honor,

13   and I believe it is the same issue as Martinez, which is that

14   the defense simply didn't raise the scope of 1512(c)(2) before

15   this Court.  I believe that 1512(c)(2) is directly analogous

16   to the provision in the Armed Career Criminal Act which is

17   discussed and analyzed in Johnson.  The Armed Career Criminal

18   Act included a list of specific offenses and then it was

19   followed by a provision that begins with the language "or

20   otherwise," and the Court observed that by asking whether the

21   crime otherwise involved conduct presenting a risk, the

22   residual clause of the Armed Career Criminal Act forces courts

23   to interpret that clause in light of the enumerated crimes

24   listed before.  And here as well, the use of the word

25   "otherwise" in 1512(c)(2) forces the Court to go back to

1    1512(c)(1) to figure out the meaning of that provision.

2          THE COURT:  Except if the Congress intended (c)(2)

3    to apply in conjunction with (c)(1), then they would have said

4    "and."  They would not have said "or otherwise obstructs,

5    influences, or impedes any official proceeding" to cover

6    situations where you are not necessarily talking about the

7    physical destruction of evidence in whatever form it may take,

8    whether it is a document, the shredding of documents or the

9    destruction of a thumb drive, or the destruction of a

10   computer, or other objects, (c)(1) addresses objects.

11         MS. COLSON:  And I believe that (c)(2) is meant to

12   address objects as well.

13         THE COURT:  It can, but it is not exclusive.  It

14   says "or."  It doesn't say "and."

15         MS. COLSON:  I guess that's why I'm focused on the

16   word "otherwise," Your Honor, and in Johnson's interpretation

17   of the meaning of that word.  What Johnson specifically said

18   is that the language in the Armed Career Criminal Act "or

19   otherwise" is what forces the Court to interpret the more

20   general provision in light of the more --

21         THE COURT:  But isn't it difficult for Congress to

22   have to anticipate every single type of conduct that might

23   constitute obstruction?

24         MS. COLSON:  Well, Your Honor --

25         THE COURT:  It is going to be up to the jury to

1    determine whether or not the conduct actually amounted to

2    obstruction under (c)(2).  There is the intent element, the

3    mens rea element, a person has to act corruptly, the

4    Government has to prove that, and then corruptly has its own

5    definition.

6              MS. COLSON:  Your Honor, there are multiple

7    obstructions statutes, so I think Congress has thought long

8    and hard of what may constitute obstruction, although I agree

9    they can't anticipate every circumstance.  But should the

10   Court accept the Government's invitation to stretch 1512(c)(2)

11   to reach the conduct alleged here, then this would expose

12   individuals to a potential 20-year sentence for the mere

13   attempt to impede or obstruct justice in any imaginable way

14   and where this sort of legislative sea change intended it is

15   unlikely that Congress would have done so in a residual

16   subsection which is subordinate to a provision that relates

17   only to documents.

18             THE COURT:  Well, I don't know that it is

19   necessarily wrong if the Government can prove that an

20   individual's who is creative in finding a way to obstruct

21   justice that that person shouldn't be prosecuted, assuming

22   that the Government can prove the appropriate mens rea.

23             MS. COLSON:  Well, the question is whether this

24   provision covers the conduct that the Government has alleged.

25   There are other provisions that deal with potential witness

1  tampering.

2         THE COURT:  Right.  Which involves more allegations

3  of force or intimidation and so on.

4         MS. COLSON:  Right.

5         THE COURT:  Which is not the case here --

6         MS. COLSON:  I understand.

7         THE COURT:  -- and the Government charged that under

8  the facts here as alleged in the indictment and in the

9  Government's papers, would not apply.

10        MS. COLSON:  Would not apply or would apply?

11        THE COURT:  Would not apply.  I am talking about

12  subsection D, for example, whoever intentionally harasses

13  another person and thereby hinders, delays, prevents or

14  dissuades any person from attending or testifying in an

15  official proceeding.  There is no harassment that is alleged

16  here.

17        MS. COLSON:  That's correct, Your Honor.  I, again,

18  go back to your question of what Congress intended, and I do

19  believe that if Congress intended this legislative sea change

20  that the Government suggests, that it is unlikely they would

21  have done so in this residual subsection of a provision that

22  relates only to documents.

23        THE COURT:  All right.  I have no further questions.

24  I thank you all for your time and for being so prepared.

25        As to the point, Ms. Colson, that you made in

1    connection with the smuggling, obviously to the extent that in

2    considering this motion -- I'm considering this motion

3    together with the CIPA motion that the Government has made.

4    To the extent that I think it necessary as part of addressing

5    your point in connection with the smuggling, that it is

6    necessary for you to have access to some of those materials,

7    obviously I can let the parties know that and I will certainly

8    hold the decision open to give counsel an opportunity to argue

9    that under seal.  I'm not sure yet that it is necessary.

10              MS. COLSON:  Thank you, Your Honor.

11              THE COURT:  But it is something that I certainly

12   will consider as I am deliberating on the motion.

13              MS. COLSON:  Thank you.

14              MR. PRAVDA:  Your Honor, I know you have already

15   said this, but to the extent that you are considering that, we

16   certainly would like to be heard on that question, so we would

17   like the opportunity to address the Court.  So thank you for

18   that.

19              THE COURT:  Certainly.  Certainly.  I will do that.

20              I don't know if there are any other points.  We did

21   I think have -- I don't think Harry Rucker is here today.  But

22   in any event, I will be deciding this in due course.  I don't

23   know that we have a date set yet, but it might be helpful to

24   have a control date set.

25              Are the parties available any time during the week

of September 12th, not September 11th, but September 12th.

        MR. PRAVDA:  Yes, Your Honor.

        MS. COLSON:  Yes, that's fine.

        THE COURT:  So how about September 12th, say, at noon?

        MS. COLSON:  Okay.

        THE COURT:  That is for a status conference.  I am hoping to have an opinion out to you before that and obviously if there is going to be additional briefing, I will let the parties know that in advance.

        MR. PRAVDA:  One moment, Your Honor, we are trying to make sure that that date works for us.

        THE COURT:  Of course.

        MR. PRAVDA:  Your Honor, would it be possible to do Thursday or Friday of that week?  I am on trial and my colleagues may not be here either.

        THE COURT:  I have some time Friday morning, the 15th, if that is good for you, Ms. Colson.

        MS. COLSON:  That is fine, Your Honor.

        THE COURT:  11 o'clock?

        MS. COLSON:  Just one moment.

        MR. PRAVDA:  We actually have a sentencing with Ms. Colson.

        THE COURT:  How about the 14th at noon?

        MS. COLSON:  That is fine.

1          MR. RICHARDSON:  That works for Government.

2          THE COURT:  So September 14th at noon.

3          Time is excluded due to motion practice until the

4    14th.

5          MR. PRAVDA:  Your Honor, I would just ask that time

6    also be excluded in the interest of justice, the reason being

7    that the Speedy Trial Act by operation of law only excludes

8    time for 30 days following oral argument and our control date

9    is more than 30 days away.

10          THE COURT:  Any objection?

11          MS. COLSON:  No, Your Honor.

12          THE COURT:  It is also excluded in the interest of

13    justice.  I am only concerned that there might be, again, the

14    CIPA issues involved, so I wanted to build in time to that.

15          Anything else that the parties would like to address

16    today?

17          MS. COLSON:  I have one thing I would like to put on

18    the record.  The Government discovery has provided us with

19    more than eight terabytes of materials, and that includes

20    dozens of electronic devices that were seized, some from my

21    client's home, but most from the offices of her employer back

22    in April of 2016.  I have asked the Government whether they

23    intend to use any evidence from those electronic devices, and

24    they have said that they are not sure yet, but that at some

25    point in September they will give me a better sense and let me

1    know.  I just want to make clear that if I don't receive an

2    answer from the Government in September, I will have to come

3    back and write to the Court.

4         THE COURT:  Why will it take so long?  How long ago

5    were these items seized?

6         How many terabytes did you say that it was?

7         MS. COLSON:  It is more than eight.  I believe it

8    was around 8.4 terabytes, Your Honor, and that the items were

9    seized in April of 2016.  The Government conducted

10   simultaneously searches of my client's home and her employer's

11   offices.

12        MR. SOLOMON:  If I could address this point.

13        THE COURT:  Yes.

14        MR. SOLOMON:  We have already informed Ms. Colson as

15   to which devices we are likely to use at trial and we just

16   need additional time to make sure that there is not additional

17   material from devices that we don't anticipate using.  So we

18   have already given her clear guidance as to what she should

19   expect to see at trial should we make it to trial.

20        THE COURT:  All right.  We will see what happens

21   afterward.

22        MS. COLSON:  Thank you, Your Honor.

23        THE COURT:  Thank you.

24        MR. PRAVDA:  Thank you, Your Honor.

25        (Matter concluded.)