UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,  :
                                              :
        -against-  :     **MEMORANDUM AND ORDER**
                                              :
YING LIN,  :     15-cr-601(S-2)(DLI)
                                              :
          Defendant.  :
------------------------------------------------------------x

**DORA L. IRIZARRY, Chief Judge:**

Ying Lin ("Defendant") is charged by Second Superseding Indictment ("S-2") with: (1) acting as an agent of a foreign government without prior notification to the Attorney General in violation of 18 U.S.C. § 951(a); (2) conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; (3) obstruction of justice in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (4) conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k); and (5) structuring financial transactions in violation of 31 U.S.C. §§ 5324(a)(3), 5324(d)(1) and 18 U.S.C. § 2. *See* S-2, Dkt. Entry No. 87.

Before the Court are two motions filed by Defendant on March 16, 2018. Defendant moves to dismiss Count One of the Second Superseding Indictment, which alleges that Defendant acted as an agent of a foreign government without prior notification to the Attorney General. *See* Def.'s Mot. to Dismiss ("Mot. to Dismiss"), Dkt. Entry No. 92. Defendant does not move to dismiss the four remaining Counts in the Second Superseding Indictment. *See Id.* The government opposed Defendant's motion to dismiss on April 27, 2018. *See* Mem. in Opp. to Def.'s Mot. to Dismiss ("Opp. to Mot. to Dismiss"), Dkt. Entry No. 104. On May 18, 2018, Defendant replied. *See* Reply Response to Def.'s Mot. ("Reply to Mot. to Dismiss"), Dkt. Entry No. 114.

Defendant also filed a motion to suppress statements and physical evidence on March 16, 2018. *See* Def.'s Mot. to Suppress Physical Evidence and Statements ("Suppression Mot."), Dkt. Entry. No. 94. The government opposed the Suppression Motion on April 27, 2018. *See* Mem. of

Law in Opp. to Suppression Mot. ("Suppression Opp."), Dkt. Entry No. 105. Defendant replied on May 18, 2018. *See* Reply Response to Suppression Mot. ("Suppression Reply"), Dkt. Entry No. 115. On June 8, 2018, the court heard oral argument on both motions. For the reasons set forth below, Defendant's Motion to Dismiss Count One of the Second Superseding Indictment is denied and Defendant's Suppression Motion is denied in its entirety.

## BACKGROUND

On August 24, 2015, the Government filed a sealed complaint against Defendant for her role in allegedly defrauding two financial entities and for allegedly evading reporting requirements by structuring financial transactions. *See* Sealed Compl. and Aff. in Support of an Arrest Warrant ("Compl."), Dkt. Entry No. 1. Defendant was arrested and questioned by law enforcement agents on August 25, 2015. *See* Aff. of Ying Lin in Support of Suppression Mot. ("Lin Aff."), Dkt. Entry No. 95, at ¶ 7. On the day of her arrest, Defendant, represented by appointed counsel, was arraigned for charges of wire fraud, bank fraud, and structuring financial transactions. *See* Dkt. Entry No. 3. Defendant retained her current counsel two days after her arraignment. *See* Lin Aff., at ¶ 7. On October 8, 2015, federal agents questioned Defendant at her home outside the presence of counsel. *Id.* at ¶ 8.

On November 23, 2015, a federal grand jury returned an indictment charging Defendant with one count of structuring financial transactions. Indictment, Dkt. Entry No. 10. On August 31, 2016, the government charged Defendant by Superseding Indictment (S-1) with smuggling in violation of 18 U.S.C. § 554, conspiracy to commit wire fraud, obstruction of justice, and conspiracy to obstruct justice, in addition to the previously charged structuring financial transactions count. *See* S-1, Dkt. Entry No. 40. Defendant moved to dismiss the smuggling charge, as well as the obstruction of justice and the conspiracy to obstruct justice charges of the

Superseding Indictment. *See* Mot. to Dismiss S-1, Dkt. Entry No. 62. The Court dismissed the smuggling charge with prejudice, but denied Defendant's motion to dismiss the obstruction of justice charges. *See United States v. Ying Lin*, 270 F. Supp.3d 631 (E.D.N.Y. 2017). In its dismissal of the smuggling charge, the Court held that the government failed to allege that Defendant exported or facilitated the exportation of "any merchandise, article, or object contrary to any law or regulation of the United States," as required by the pertinent smuggling statute. *Id*. at 635.

The government filed a Second Superseding Indictment on December 6, 2017, which charges Defendant with acting as an agent of a foreign government without prior notification to the Attorney General (Count One) in addition to the previously charged counts of conspiracy to commit wire fraud (Count Two), obstruction of justice (Count Three), conspiracy to obstruct justice (Count Four), and structuring financial transactions (Count Five). *See* S-2.

The Second Superseding Indictment alleges that Defendant worked as a counter agent for an international air carrier (the "Carrier") headquartered in the People's Republic of China ("PRC") at John F. Kennedy International Airport ("JFK Airport") in Queens, New York from 2002 through the fall of 2015. *See Id.* at ¶ 2. Defendant allegedly used her position as a counter agent to smuggle items onto Carrier flights departing from JFK Airport to the PRC and to carry out other tasks at the direction and control of PRC agents working at the PRC Mission and PRC Consulate in exchange for benefits beyond her compensation as a Carrier employee. *Id.* at ¶ 5. According to the Second Superseding Indictment, on multiple occasions between January 2010 and April 2016, Defendant accepted packages marked "no ticketed passenger" from individuals from the PRC Mission and PRC Consulate that were transported from JFK Airport to the PRC as if the packages were checked bags in violation of Transportation Security Administration ("TSA")

regulations. *Id.* at ¶¶ 6, 17-21. It is further alleged that, or about 2012, after another Carrier employee refused to accept an unaccompanied bag, Defendant admonished said employee that the practice of transporting packages from JFK Airport to the PRC as unaccompanied luggage on behalf of PRC agents was a longstanding one. *Id.* at ¶ 8. The Carrier's general manager subsequently distributed a letter purportedly authorizing Carrier employees to accept unaccompanied baggage from individuals from the PRC Mission for shipping on Carrier flights from JFK Airport to the PRC. *Id.* at ¶ 9.

The Second Superseding Indictment further alleges that Defendant checked unaccompanied bags under the names of actual Carrier flight passengers. *Id.* at ¶ 10. For example, on June 26, 2014, Defendant allegedly checked in, under the names of actual Carrier flight passengers traveling to the PRC, two large shrink-wrapped boxes from two PRC Military Officials who were not Carrier passengers. *Id.* On July 24, 2014, Defendant allegedly assisted a PRC Military Officer who was about to depart on an outbound Carrier flight and had passed through a TSA checkpoint by taking a SIM card from the Officer's phone and bringing the SIM card to a second PRC Military Officer on the other side of the TSA checkpoint to ensure that the SIM card would not be subject to further screening. *Id.* at ¶ 11. Defendant allegedly received benefits from the PRC Mission and the PRC Consulate, including tax-exempt purchases of discounted liquor and electronic devices and free contracting work at Defendant's residence by PRC construction workers, in exchange for Defendant's actions conducted under the direction and control of PRC Military Officers and other PRC government officials. *Id.* at ¶ 12.

The government obtained and executed multiple warrants in connection with the charges against Defendant. On January 12, 2016, the government obtained a warrant to search Defendant's personal Microsoft account (the "Microsoft Warrant"). *See* Aff. of Deborah Colson in Support of

Suppression Mot. ("Colson Aff."), Dkt. Entry No. 97, at Ex. B. An investigative agent submitted an affidavit in support of the Microsoft Warrant (the "Microsoft Affidavit"). *Id.* at Ex. A. On April 4, 2016 and April 5, 2016, the government obtained warrants to search Defendant's home and electronic devices (the "Home and Phone Warrant"). *Id.* at Ex. D. An investigative agent submitted an affidavit in support of the Home and Phone Warrant (the "Home and Phone Affidavit"). *Id.* at Ex. C. The government obtained a search warrant to search one of Defendant's safe deposit boxes (the "Box 5366 Warrant") on April 5, 2016. *Id.* at Ex. G. An investigative agent's affidavit supported that warrant (the "Box 5366 Affidavit"). *Id.* at Ex. F. On April 11, 2016, the government obtained a warrant to search another safe deposit box corresponding to a key found in Defendant's home (the "Box 10239 Warrant"). *Id.* at Ex. J. On April 20, 2016, the government obtained a warrant to search two other safe deposit boxes corresponding to keys found in Defendant's home (the "Box 365 Warrant"). *Id.* at Ex. L. The government seized physical and electronic evidence during searches conducted by agents pursuant to the aforementioned warrants.

In moving to dismiss, Defendant argues that Count One of the Second Superseding Indictment fails to state an offense under 18 U.S.C. § 951. *See generally,* Mot. to Dismiss. Defendant also seeks suppress: evidence seized from Defendant's email account pursuant to the Microsoft Warrant; evidence seized from Defendant's home pursuant to the Home and Phone Warrant; and evidence seized from safe deposit boxes pursuant to the Box 5366 Warrant, the Box 10239 Warrant, and the Box 365 Warrant. *See generally,* Suppression Mot. Defendant alleges that the searches authorized by those warrants violated her Fourth Amendment rights because the warrants were not supported by probable cause and were overbroad, and because the searches exceeded the scope of the warrants. *Id.* Defendant also seeks to suppress the statements she made

5

to agents outside the presence of her attorney on October 8, 2015 (the "October 8, 2015 interrogation") as a violation of her Sixth Amendment right to counsel. *Id.*

## DISCUSSION

**I. Defendant's Motion to Dismiss Count One of the Second Superseding Indictment**

### A. Legal Standard

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), a defendant may move to dismiss an indictment for various defects, including "a failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "A motion to dismiss an indictment must satisfy a high standard." *United States v. Brooks*, 2009 WL 3644122, at *2 (E.D.N.Y. Oct. 27, 2009) (citations and internal quotations omitted). This is because "[a]n indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. De Le Pava*, 268 F.3d 157, 162 (2d Cir. 2001) (citation omitted). A court must "accept[] the facts alleged in the indictment as true and determine[] only whether the indictment is 'valid on its face.'" *Brooks,* 2009 WL 3644122, at *2 (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)).

The United States Supreme Court has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citations omitted); *see also, United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) ("[A]n indictment must charge a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.") (internal quotations and citation omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as [they] . . . fully, directly,

and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117-18 (citations and internal quotations omitted). "Essentially, the indictment must . . . be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Brooks*, 2009 WL 3644122, at *2 (citing Fed. R. Crim. P. 7(c)(1)).

Title 18 U.S.C. § 951 provides: "Whoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General" shall be punished. 18 U.S.C. § 951(a). Subsection (d) of § 951 defines "agent of a foreign government" as "an individual who agrees to operate within the United States subject to the direct or control of a foreign government or official." 18 U.S.C. § 951(d). "To violate § 951, (1) a person must act; (2) the action must be taken at the direction of or under the control of a foreign government; and (3) the person must fail to notify the Attorney General before taking such action." *United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010) (citing 18 U.S.C. § 951(a) and (d), 28 C.F.R. § 73.1(a) and § 73.3). The implementing regulation, 28 C.F.R. § 73.1(a) defines "agent" as "all individuals acting as representatives of, or on behalf of, a foreign government or official, who are subject to the direction or control of that foreign government or official . . ."

**B. Analysis**

Count One of the Second Superseding Indictment charges that "In or about and between January 2010 and April 2016, . . . [Defendant] did knowingly act in the United States as an agent of a foreign government, to wit: the PRC, without prior notification to the Attorney General . . ." S-2 at ¶ 38. Count One incorporates factual allegations against Defendant set forth in the Second Superseding Indictment, including facts alleging that Defendant used her position as a Carrier

7

counter agent to smuggle items onto flights departing from JFK to the PRC at the direction and under the control of PRC agents. *Id.* at ¶¶ 5, 37. Defendant argues that the Second Superseding Indictment fails to state essential facts necessary to allege that Defendant acted as an agent of a foreign government in violation of 18 U.S.C. § 951. *See generally,* Mot. to Dismiss. For the reasons set forth below, the Court finds that, unlike the previously dismissed smuggling count, the government has alleged facts sufficient to constitute the elements of a § 951 violation in the Second Superseding Indictment.

Defendant contends that § 951 prosecutions overwhelmingly have concerned intelligence gathering, espionage, or subversive activities. *See* Mot. to Dismiss at 7, 7 n.2 (collecting cases). However, the Eleventh Circuit in *United States v. Duran*, tracked the legislative history of § 951 and determined that the statute does not require that the charged conduct involve "espionage or traditional notions of spying and subversive activity." 596 F.3d at 1293. The court in *Duran* explained the following about the earliest form of § 951, enacted on June 15, 1917 shortly after the United States entered World War I:

> Although Congress' original intent in 1917 was national security, defense, and targeting espionage and subversive acts, over time, the original 1917 Act broke off into three directions to form three separate registration or notification statutes dealing with agents of foreign governments. Congress enacted legislation targeted specifically at such subversive acts through the Foreign Agents Registration Act of 1938 and 50 U.S.C. § 851, and Congress separated § 951, classifying it under "Foreign Relations." The limited legislative history persuasively suggests that Congress chose to separate § 951 and treat it as a catch-all statute that would cover all conduct taken on behalf of a foreign government.

*Id.* at 1294-95 (footnotes omitted). Thus, the registration requirement in § 951 reaches beyond spying and subversive activities "to *any* affirmative conduct undertaken as an agent of a foreign government." *Id.* at 1295 (emphasis in original).

The government contends that Count One of the Second Superseding Indictment alleges sufficiently that Defendant acted impermissibly as an agent of a foreign government. *See*

8

*generally,* Opp. to Mot. to Dismiss. The government supports its argument by relying on *United States v. Alfonso*, which held that an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." 143 F.3d at 776. In response, Defendant cites to two cases in which the Second Circuit has held that an indictment must provide enough details to: (1) ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury and (2) to inform the Defendant of the nature and cause of the accusation against her. *See* Reply to Mot. to Dismiss at 2-3 (citing *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) and *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)).

The Second Superseding Indictment, however, does more than merely track the language of § 951 by describing Defendant's specific conduct. *See* S-2 at ¶¶ 5-12. Nevertheless, Defendant maintains that, because the Second Superseding Indictment does not specify what were the contents of the baggage that Defendant allegedly smuggled, the government has failed to allege that Defendant acted at the direction or control of PRC officials in their official capacity. Mot. to Dismiss at 8-10. The Court disagrees. The government need not prove what were the contents of the baggage in order to state an offense under § 951. Instead, the government is required only to prove that Defendant (1) acted (2) at the direction of or under the control of a foreign government, and (3) failed to notify the Attorney General before taking such action. *See Duran*, 596 F.3d at 1291.

The government can and does allege that Defendant acted at the direction of a foreign government without specifying the nature of the contents of the baggage. To satisfy the "at the direction of or under the control of a foreign government" element of a § 951 charge, the Second Superseding Indictment alleges that Defendant told another Carrier employee that the practice of

9

transporting unaccompanied baggage on behalf of PRC agents was longstanding in the face of that employee's reluctance to engage in that practice. S-2 at ¶ 8. The government further alleges that the Carrier's general manager distributed a letter to Carrier employees purportedly authorizing Carrier employees to accept unaccompanied baggage from individuals from the PRC Mission. *Id.* at ¶ 9. The government claims that it intends to introduce more evidence that Defendant acted at the direction or under the control of PRC officials at trial, but argues that it need not make a full proffer of its trial evidence in the indictment. Opp. to Mot. to Dismiss at 8-9. The government is correct that it need not make a full proffer of evidence in the indictment. *Alfonso*, 143 F.3d at 776-77 ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . , the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").

Defendant also argues that the government fails to allege that Defendant acted at the direction or control of a foreign government or official because the Second Superseding Indictment also alleges that Defendant acted at the direction of her employer, the Carrier. *See* Mot. to Dismiss at 9-10. That argument ignores the allegations in the Second Superseding Indictment that Defendant's conduct went beyond the conduct authorized by her employer and that Defendant received benefits beyond her compensation as a Carrier employee in exchange for her actions. For example, the Second Superseding Indictment alleges that Defendant accepted unaccompanied baggage from PRC Military Officers by checking that baggage under the names of actual passengers on the Carrier flight. S-2 at ¶ 10. In exchange for her actions on behalf of PRC officials, the government alleges that Defendant received benefits including tax-exempt purchases and free contract work by PRC construction workers. *Id.* at ¶ 12. That the government also alleged

that Defendant's employer authorized some of her actions does not warrant dismissal of Count One if the Second Superseding Indictment.

## II. Defendant's Motion to Suppress Statements and Physical Evidence

### A. Legal Standard

#### i. The Fourth Amendment

Under the Fourth Amendment's Warrant Clause, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A "magistrate's finding of probable cause is entitled to substantial deference." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) (citations omitted). "[I]n close cases . . . doubts should be resolved in favor of upholding the warrant." *Id.* (citations omitted). "The test for probable cause is not reducible to precise definition or quantification." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotation marks and citation omitted). "The task of the [warrant] issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"Although somewhat similar in focus, [overbreadth and particularity] are two distinct legal issues: (1) whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." *United States v. Hernandez*, 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010). "A warrant is overbroad if it provides for the seizure of specific items for which there is not probable cause." *United States v. Nordlicht*,

2018 WL 705548, at *7 (E.D.N.Y. Feb. 2, 2018) (internal quotations and citation omitted). The prohibition on overbreadth requires that "the scope of the warrant be limited to the probable cause on which the warrant is based." *United States v. Scully*, 108 F. Supp.3d 59, 90 (E.D.N.Y. 2015).

To satisfy the Fourth Amendment's particularity requirement, a warrant must (1) "identify the specific offense for which the police have established probable cause;" (2) describe the place to be searched;" and (3) "specify the items to be seized by their relation to the designated crimes." *United States v. Galpin,* 720 F.3d 436, 445-46 (2d Cir. 2013) (internal quotations and citations omitted). "The level of specificity required by the Fourth Amendment depends on many factors. The nature of the crime, for example, may require a broad search." *United States v. Dupree*, 781 F. Supp.2d 115, 149 (E.D.N.Y. 2011). "'Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant.'" *United States v. Buck,* 813 F.2d 588, 590-91 (2d Cir. 1987) (quoting *United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984), *cert. denied*, 470 U.S. 1084 (1985)).

Even if a warrant lacks particularity, "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring v. United States,* 555 U.S. 135, 140 (2009) (citing *Gates*, 462 U.S. 213 (1983)). The Supreme Court has explained that the exclusionary rule has always been its "last resort," not its "first impulse." *Id.* "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. at 144. The exclusionary rule does not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v.*

*Leon*, 468 U.S. 897, 922 (1984). "'The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance' on an invalidated warrant." *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (quoting *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992)).

Finally, "[a] search must be confined to the terms and limitations of the warrant authorizing it." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 394 n.7 (1971)). When "items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search." *Id.* (citing *Andresen v. Maryland*, 427 U.S. 463, 482 n. 11 (1976)). However, a court may suppress all of the evidence seized pursuant to a search warrant if the law enforcement agents who executed the warrant acted "in flagrant disregard" of the warrant's terms. *Id.*; *see also*, *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000). "Government agents flagrantly disregard the terms of a warrant so that wholesale suppression is required only when (1) they effect a widespread seizure of items that were not within the scope of the warrant, and (2) do not act in good faith." *Shi Yan Liu*, 239 F.3d at 140 (internal quotations and citations omitted).

  i. The Sixth Amendment

The Sixth Amendment right to counsel "is offense specific," which means that it cannot be invoked for all future prosecutions. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). The Supreme Court in *Texas v. Cobb*, rejected an argument that the Sixth Amendment right to counsel attached to uncharged crimes that were "factually related" to or "inextricably intertwined with" a charged offense. 532 U.S. 162, 172 (2001). Instead, the Sixth Amendment right attaches only to conduct that is the "same offense" as the charged conduct, as defined by double jeopardy case law. *Id.*; *see*

*also, United States v. Moore*, 670 F.3d 222, 236 (2d Cir. 2012) (holding that a defendant did not have a Sixth Amendment right to counsel because "the Sixth Amendment is offense specific"). "[T]he fact that a person is the subject of an investigation is not enough to trigger his Sixth Amendment right to counsel." *United States. v. Vasquez*, 675 F.2d 16, 17 (2d Cir. 1982). "For a Sixth Amendment right to counsel to attach, adversarial proceedings must have commenced against an individual, 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Id.* (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977)).

**B. Analysis**

i. <u>The Microsoft Account Search</u>

Defendant argues that the Microsoft Warrant was not supported by probable cause because the government did not meet its burden to establish a smuggling conspiracy. *See* Suppression Mot. at 12-13. Although the Court dismissed the smuggling conspiracy count against Defendant, *see Lin*, 270 F. Supp.3d at 635, the Microsoft Affidavit contained sufficient probable cause to believe that evidence of a smuggling conspiracy would be found in Defendant's email account. *See Ganek v. Leibowitz*, 874 F.3d 73, 83 (citing *Gates*, 462 U.S. at 232) ("[the probable cause standard] is not usefully analogized to a *prima facie* case."). Thus, although the government failed to make a *prima facie* case for the smuggling conspiracy count, the Microsoft Affidavit demonstrated a "fair probability" that evidence of a smuggling conspiracy would be found in Defendant's email account. *See Gates*, 462 U.S. at 238.

The Microsoft Affidavit described Defendant's alleged involvement in a smuggling conspiracy. The Microsoft Affidavit includes a description of airport security footage showing Defendant accompanying PRC officials with large boxes, a description of law enforcement surveillance of an incident at the airport involving Defendant and a PRC official passing a SIM

14

card through security, and a description of airport security footage showing an exchange of boxes and bags between Defendant and an unidentified individual. *See* Microsoft Aff. at ¶¶ 20-27. The Microsoft Affidavit also described email exchanges relating to Defendant's apparent compensation for her participation in the alleged smuggling conspiracy. *Id.* at ¶¶ 39-40. The Microsoft Affidavit's description of Defendant's activities coupled with examples of emails apparently demonstrating that Defendant used her emails in connection with those activities provided the issuing magistrate judge a basis for determining that there was a fair probability that the email account contained evidence of a smuggling conspiracy.

The Microsoft Warrant was sufficiently particular and not overbroad. Although, as Defendant argues, the Microsoft Warrant does not contain temporal limitations, the Microsoft Affidavit alleges that Defendant worked for the Carrier since approximately 2002. *See* Microsoft Aff. at ¶ 7. The Microsoft Affidavit's description of the alleged conspiracy supported a conclusion that there was a fair probability that Defendant's email contained evidence of a conspiracy from the beginning of her employment with the Carrier. *See generally*, *Id.* Additionally, the Microsoft Warrant did not permit a "fishing expedition," as Defendant contends, *See* Suppression Mot. at 15, because the warrant authorized agents to seize only categories of communications relating to an alleged conspiracy. *See* Microsoft Warrant at Attach. B.

The searching agents did not flagrantly disregard the terms of the Microsoft Warrant so as to mandate wholesale suppression. *See Shi Yan Liu*, 239 F.3d at 140. Defendant maintains that the government agents conducted a "widespread seizure of items far beyond the warrant's scope." *See* Suppression Reply at 6-8; *see also,* Letter Regarding Discovery, Dkt. Entry No. 122. However, because the Microsoft Warrant authorized the seizure of the emails relating to an alleged

smuggling conspiracy, and the government seized emails reasonably believed to relate to that conspiracy, the search did not exceed the scope of the Microsoft Warrant.

ii. The Search of Defendant's Home and Electronic Devices

The Home and Phone Warrant also was supported by probable cause to believe that evidence of a smuggling conspiracy would be found in Defendant's home and contained in her electronic devices. Like the Microsoft Affidavit, the Home and Phone Affidavit provided details of an alleged smuggling conspiracy involving Defendant. *See* Home and Phone Aff. ¶¶ 15-39. The Home and Phone Affidavit also provided details regarding Defendant's alleged structuring activities and her alleged obstruction of justice. *Id.* at ¶¶ 45-51; 58-66. The details in the Home and Phone Affidavit demonstrated a fair probability that evidence of a crime would be found in Defendant's home or contained in her electronic devices.

The Home and Phone Warrant was sufficiently particular and not overbroad. The Home and Phone Warrant did not, as Defendant alleges, "impermissibly authorize[] sweeping categories of material, regardless of their connection to [Defendant]'s suspected criminal activity. *See* Suppression Mot. at 17-18. Instead, the Home and Phone Warrant authorized the seizure of evidence relating to: any alleged scheme to smuggle goods; any scheme to obstruct justice; structuring activities; possession of firearms by convicted felons; possession of firearms by illegal aliens; shipment, transportation, or receipt of any firearm or ammunition which has been shipped or transported in interstate or foreign commerce by an indicted defendant; distribution and possession with intent to distribute a controlled substance; and communications with other persons regarding any of the forgoing and the identities of co-conspirators. *See* Home and Phone Warrant at Attach. B. Defendant's argument that the Home and Phone Warrant was overbroad because it

16

authorized the seizure of items including bulk cash and bulk cash ledgers is also unavailing because those items reasonably related to Defendant's alleged structuring activities. *See Id.*

The searching agents did not act in flagrant disregard of the Home and Phone Warrant's terms. Although the government admittedly seized items ultimately determined to be unrelated to the charges against the Defendant, the government returned those items once it made that determination. *See* Opp. to Suppression Mot. at 20. Those items included jewelry, electronic devices, and personal records, items that constituted only a small portion of all of the items seized. *Id.* at 19-20. As explained by the government, agents reasonably seized these items because of their potential connection to Defendant's alleged criminal conduct. *Id.* The seizure and subsequent return of some items that the government determined were unrelated to Defendant's alleged criminal conduct did not constitute an impermissible "widespread seizure." *Shi Yan Liu*, 239 F.3d at 140. Additionally, the Court has no reason to believe that the government agents acted in bad faith. Instead, as the government submits, the agents brought Mandarin interpreters to assist in the determination of which Mandarin documents fell within the scope of the Home and Phone Warrant. *See* Suppression Opp. at 20.

### iii. The Search of the Safe Deposit Boxes

Defendant argues that the Box 5366 Warrant was not supported by probable cause to believe that safe deposit box 5366 contained evidence of a crime. *See* Suppression Mot. at 21-22. However, the Box 5366 Affidavit provided details regarding Defendant's alleged structuring activities and discussed the evidence seized from Defendant's home pursuant to the Home and Phone Warrant, including bulk cash, bulk cash ledgers, and financial records. Box 5366 Aff. at ¶¶ 45-51, 67-70. The Box 5366 Affidavit provided sufficient probable cause to believe that

evidence of Defendant's alleged criminal activities would be found in Defendant's safe deposit box 5366.

Defendant also argues that the evidence seized pursuant to the Box 5366 Warrant, the Box 10239 Warrant, and the Box 365 Warrant should be suppressed because it is "fruit of the poisonous tree." *See* Suppression Mot. at 21-23. Defendant contends that because agents relied on items they obtained from the search of Defendant's home to establish probable cause to search the safe deposit boxes, the evidence seized from those searches should be suppressed. *Id.* However, because the search of Defendant's home was lawful, Defendant's argument is without merit.

iv. Defendant's Statements

Defendant was arraigned and arrested on August 25, 2015 for charges of wire fraud, bank fraud, and structuring financial transactions. *See* Dkt. Entry No. 3. Defendant was appointed counsel at her arraignment. *Id.* Defendant retained her current counsel two days after her arrest. Lin Aff. at ¶ 7. The next day, Defendant and her retained attorney attended a reverse proffer session with the government to discuss Defendant's potential cooperation. Colson Aff. at ¶ 5. After the reverse proffer session, on October 8, 2015, federal agents questioned Defendant at her home, but did not advise Defendant of her right to counsel or notify Defendant's attorney of the interrogation. Suppression Mot. at 24. According to Defendant, during the October 8, 2015 interrogation, federal agents "deliberately elicited statements about the free labor she received as purported compensation for her participation in the smuggling scheme." *Id.* However, the government had not yet charged Defendant for her alleged participation in a smuggling conspiracy. *Id.* Because the Sixth Amendment right to counsel "is offense specific," Defendant's Sixth Amendment right to counsel did not extend to questions relating to an alleged smuggling conspiracy on October 8, 2015. *McNeil*, 501 U.S. at 175. Instead, Defendant's Sixth Amendment

18

right to counsel on October 8, 2015 was limited only to the allegations in the Complaint, namely that Defendant committed wire fraud, bank fraud, and structured financial transactions. *See* Compl. Accordingly, Defendant's Sixth Amendment arguments are without merit.

## CONCLUSION

For the reasons set forth above, Defendant's motions to dismiss Count One of the Second Superseding Indictment and to suppress physical evidence and statements are denied in their entirety.

SO ORDERED.

Dated: Brooklyn, New York
July 11, 2018

/s/
DORA L. IRIZARRY
Chief Judge