UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :
            -against-                    :   **MEMORANDUM & ORDER**
                                         :
YING LIN,                                :   15-cr-601 (S-2) (DLI)
                                         :
            Defendant.                   :
-------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

Ying Lin ("Defendant") is charged by a second superseding indictment ("S-2") with: (1) acting as an agent of a foreign government without prior notification to the Attorney General in violation of 18 U.S.C. § 951(a) ("Count One"); (2) conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 ("Count Two"); (3) obstruction of justice in violation of 18 U.S.C. §§ 1512(c)(2) and 2 ("Count Three"); (4) conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k) ("Count Four"); and (5) structuring financial transactions in violation of 31 U.S.C. §§ 5324(a)(3), 5324(d)(1) and 18 U.S.C. § 2 ("Count Five"). *See* S-2, Dkt. Entry No. 87.

On August 22, 2018, Defendant moved to sever Counts One and Two of S-2 from Counts Three, Four, and Five (the "Severance Motion"). *See* Mem. in Support of Mot. for Separate Trial ("Severance Mot."), Dkt. Entry No. 130. The government opposed the Severance Motion on September 21, 2018. *See* Mem. in Opp. to Severance Mot. ("Opp."). Defendant replied on October 4, 2018. *See* Reply, Dkt. Entry No. 147. For the reasons set forth below, Defendant's motion is denied.

**BACKGROUND**

On November 23, 2015, an Eastern District of New York ("EDNY") grand jury returned an indictment, charging Defendant with one count of structuring financial transactions. Indictment, Dkt. Entry No. 10. On August 31, 2016, an EDNY grand jury returned a superseding

indictment ("S-1"), charging Defendant with smuggling, conspiracy to commit wire fraud, obstruction of justice, and conspiracy to obstruct justice, in addition to the previously charged structuring financial transactions count. *See* S-1, Dkt. Entry No. 40. Defendant moved to dismiss the smuggling charge, as well as the obstruction of justice and the conspiracy to obstruct justice charges in S-1. *See* Mot. to Dismiss S-1, Dkt. Entry No. 62. The Court dismissed the smuggling charge with prejudice and denied Defendant's motion to dismiss the obstruction of justice charges. *See United States v. Ying Lin*, 270 F. Supp.3d 631 (E.D.N.Y. 2017).

On December 6, 2017, an EDNY grand jury returned S-2, charging Defendant with acting as an agent of a foreign government without prior notification to the Attorney General (Count One) in addition to the previously charged counts of conspiracy to commit wire fraud (Count Two), obstruction of justice (Count Three), conspiracy to obstruct justice (Count Four), and structuring financial transactions (Count Five). *See* S-2, Dkt. Entry No. 87. Defendant moved to dismiss Count One of S-2. *See* Mot. to Dismiss Count One, Dkt. Entry No. 92. The Court denied Defendant's motion to dismiss Count One. *See United States v. Ying Lin*, 2018 WL 3416524 (E.D.N.Y. July 11, 2018).

The Court presumes familiarity with the background of this case. *See generally, Id.*; *see also, United States v. Ying Lin*, 270 F. Supp.3d 631 (E.D.N.Y. 2017). The Court reiterates the following facts as they relate to the Severance Motion. According to S-2, Defendant worked as a counter agent at John F. Kennedy International Airport ("JFK Airport") for an international air carrier (the "Carrier") headquartered in the People's Republic of China ("PRC"). *See* S-2 ¶ 2. Defendant is charged with using her position as a counter agent to smuggle items onto Carrier flights departing from JFK Airport to the PRC and to carry out other tasks at the direction and control of PRC agents working at the PRC Mission and PRC Consulate in exchange for benefits

beyond her compensation as a Carrier employee. *Id*. at ¶ 5. Specifically, S-2 alleges that Defendant received benefits from the PRC Mission and the PRC Consulate, including tax-exempt purchases of discounted liquor and electronic devices worth tens of thousands of dollars, as well as free contracting work done at the Defendant's personal residence by PRC construction workers employed by a PRC-based construction business (the "Construction Business"). *Id.* ¶ 12. The PRC construction workers obtained diplomatic visas that permitted them to perform work only on PRC establishment facilities in the United States, but did not permit them to perform private contracting work at non-PRC facilities, such as Defendant's residence. *See Id.* The government intends to introduce evidence at trial that will demonstrate that: "(1) the Construction Business maintained offices in the PRC Mission and/or the PRC Consulate in New York City, and (2) U.S.-based representatives of the Construction Business were often accredited diplomats stationed at PRC establishments in the United States." *See* Opp. at 3.

S-2 further alleges that Defendant's close associate, described as the "Confederate," a "PRC national who visited the United States beginning in approximately August 2015," was a subject of an ongoing investigation. *See* S-2 ¶ 32. According to S-2, Defendant assumed responsibility for renovating and furnishing the Confederate's residence in Long Island, NY. *Id.* The government expects to introduce evidence at trial that will demonstrate that Defendant coordinated with the principals of the Construction Business, including a PRC diplomat, to arrange for contracting work at the Confederate's residence. *See* Opp. at 4. S-2 alleges that, after the federal government interviewed Defendant's daughters regarding the Confederate's activities, Defendant warned the Confederate about the federal government's interest in the Confederate's activities and instructed him to flee the United States immediately. *Id.* ¶¶ 32-33. Defendant then arranged for the Confederate's immediate departure aboard a Carrier flight to the PRC. *Id.*¶ 33.

3

Finally, S-2 alleges that, between August 2010 and August 2015, Defendant structured and assisted in structuring financial transactions in aggregate amounts in excess of $10,000 to evade federal reporting requirements. *Id.* ¶ 46. The government intends to prove that, "at the time of her arrest, the [D]efendant was in possession of approximately $50,000 in cash that she attributed in a post-arrest statement to one of the Confederate's confidantes; the cash was wrapped in distinctive paper." *See* Opp. at 4. Furthermore, subsequent searches of Defendant's residence and safe deposit boxes produced hundreds of thousands of dollars of additional cash, including $200,000 found in one of Defendant's safe deposit boxes and wrapped in the same paper found on Defendant's person at the time of her arrest. *Id.*

## LEGAL STANDARD

Federal Rule of Criminal Procedure 8(a) provides that "[t]he indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The Second Circuit has stressed that Rule 8(a) joinder "is not limited to crimes of the 'same' character but also covers those of 'similar' character, which means '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" *United States v. Werner,* 620 F.2d 922, 926 (2d Cir. 1980) (quoting Webster's New International Dictionary (2d ed.)). Courts also have found joinder proper for distinct criminal acts where they originated from a common scheme. *Id.* at 927 (citing *United States v. Rabbitt*, 583 F.2d 1014, 1021 (8th Cir. 1978)). Important policy considerations "of trial convenience and economy of judicial and prosecutorial resources" also support Rule 8(a) joinders. *Werner*, 620 F.2d at 928.

Where the proper joinder of offenses in an indictment appear to prejudice a defendant, a

district court may order separate trials. *See* Fed. R. Crim. P. 14 ("If the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts . . ."). The decision to order separate trials is within the "sound discretion" of the district court. *United States v. Salameh,* 152 F.3d 88, 115 (2d Cir. 1998) (per curiam). Generalized concerns of "spillover" prejudice are insufficient to demonstrate the level of prejudice necessary for a defendant to prevail on a Rule 14 motion. *See United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008). To prevail under a Rule 14 motion for a separate trial, "'the defendant must show not simply some prejudice but *substantial* prejudice.'" *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (quoting *United States v. Werner*, 620 F.2d at 928) (emphasis in original). "Granting separate trials under Rule 14 simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one, would reject the balance struck in Rule 8(a), since this type of 'prejudice' will exist in any Rule 8(a) case." *Werner*, 620 F.2d at 928; *See also, United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) ("Given the balance struck by Rule 8, which 'authorizes some prejudice' against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'").

## DISCUSSION

**I.      Joinder Under Rule 8(a)**

Defendant argues that joinder is improper under Federal Rule of Criminal Procedure 8(a) because she is charged with three distinct and unrelated criminal schemes: acting as a foreign agent, obstruction of justice, and structuring financial transactions. *See* Severance Mot. at 1. Defendant distinguishes the foreign agent scheme (Counts One and Two) from the obstruction of justice scheme (Counts Three and Four). *Id.* at 5-9. Defendant also differentiates between the

foreign agent scheme (Counts One and Two) and the structuring charge (Count Five). *See Id.* at 9-10. Specifically, Defendant contends that the charges against her are not based on the "same act or transaction," are not part of a "common scheme or plan," and are not of the "same or similar character." *Id.* at 5 (quoting Fed. R. Crim. P. 8(a)). The government disagrees, maintaining that Defendant's criminal conduct is related to her activities as a PRC agent in the United States, including her acceptance of improper benefits from PRC representatives and structuring cash to conceal her income, including income received as a PRC agent. *Id.* at 6. The government further contends that Defendant's obstructive conduct is evidence of Defendant's consciousness of guilt relating to the foreign agent charges against her. *Id.* Additionally, the government posits that her activities as a PRC agent motivated her structuring activities, and the structuring provides evidence of the benefits she received as a PRC agent. *Id.*

Counts One and Two are properly joined because they are of the same or similar character as Counts Three, Four, and Five in S-2, and are part of an overarching scheme involving Defendant's "criminal conduct related to her activities as a PRC agent on U.S. soil." *Id.* Defendant's alleged obstruction arose out of her knowledge of the government's investigation of her foreign agent activities. Defendant's alleged structuring arose in part out of her alleged compensation for acting as a foreign agent. Thus, as the government indicated, there is significant overlap in the witnesses and evidence necessary to prove these charges. Separate trials would result in inefficient use of government and Court resources. Finally, taking into consideration the important policy concerns for Rule 8(a) joinder regarding conservation of judicial resources, the Court finds that joinder is proper.

## II. Prejudicial Joinder Under Rule 14

Defendant also contends that joinder of the foreign agent charges (Counts One and Two)

6

with the remaining obstruction and structuring charges (Counts Three, Four, and Five) at trial will prejudice her, warranting relief under Federal Rule of Criminal Procedure 14. *See* Severance Mot. at 11-14. Defendant first argues that, because the government's case for the foreign agent charges is "weak," a jury "might cumulate otherwise inadmissible evidence of the obstruction and structuring offenses to bolster the government's foreign agent case and/or to infer [Defendant]'s general criminal disposition." Severance Mot. at 11-12. Defendant adds that her "alleged service to communist China will substantially prejudice the obstruction and structuring trial." *Id.* at 13. Defendant references two recent high profile cases involving Russia, including the recent trial, *United States v. Paul Manafort*, 17-CR-201 (D.D.C.), to support her argument that the foreign agent charges might inflame the jury. *Id.* at 13-14.

In its opposition, the government argues that Defendant's contentions regarding joinder amount to nothing more than generalized concerns of "spillover" prejudice. *See* Opp. at 5 (citing *Rivera*, 546 F.3d at 254). The government further suggests that a limiting instruction to the jury will mitigate any theoretical prejudice. *Id.* at 10-11. The Court concurs with the government and finds that joinder will not prejudice Defendant.

Without addressing whether the government's case for the foreign agent charges is "weak," an argument the Court does not find persuasive, the Court refers to its July 11, 2018 Order, in which it denied Defendant's motion to dismiss Count One. *See Ying Lin*, 2018 WL 3416524. Defendant's concerns that the strength and political nature of the allegations in Counts One and Two will prejudice the jury as to the rest of the allegations do not rise to the level of substantial prejudice necessary to justify granting the Rule 14 motion. Moreover, despite Defendant's contentions to the contrary, Defendant's concerns can be addressed by appropriate limiting jury instructions. *See United States v. Feyrer*. 333 F.3d 110, 114 (2d Cir. 2003) (noting that, even in

7

situations where the risk of prejudice is high, less drastic measures, such as limiting instructions, often suffice). The Court finds that limiting instructions would be sufficient to address any purported prejudice, and, therefore, severance is unnecessary. Accordingly, the Severance Motion is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to sever Counts One and Two from Counts Three, Four, and Five of the second superseding indictment is denied.

SO ORDERED.

Dated: Brooklyn, New York
        October 19, 2018

/s/
DORA L. IRIZARRY
Chief Judge