AAS:DMP/ICR
F. #2014R00564

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                            Cr. 15-601 (S-2)(DLI)

YING LIN,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO FOR
<u>DISCLOSURE OF CERTAIN GOVERNMENT COMMUNICATIONS</u>


                                        RICHARD P. DONOGHUE
                                        United States Attorney
                                        Eastern District of New York


Alexander A. Solomon
Douglas M. Pravda
Ian C. Richardson
Assistant U.S. Attorneys

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the defendant Ying Lin's motion for disclosure of government communications with counsel for the person identified in the Second Superseding Indictment (the "Indictment") as the Confederate. As alleged, the defendant obstructed justice by instructing and arranging for the Confederate to flee from the United States because of investigative interest by the U.S. government. As described below, the information sought by the defendant—purportedly to demonstrate the Confederate's state of mind before he left the United States or to show whether the U.S. government somehow authorized the Confederate's departure from the United States—is irrelevant to whether the defendant in fact obstructed justice, and is therefore not discoverable.

FACTUAL BACKGROUND

I. The Obstruction of Justice Charges

On December 6, 2017, a grand jury sitting in the Eastern District of New York returned the Indictment charging Lin with, among other violations of federal law, obstruction of justice and conspiracy to obstruct justice in violation of 18 U.S.C. §§ 1512(c)(2) and 1512(k) (Counts Three and Four).

As charged in the Indictment, between October 2015 and April 2016, Lin obstructed justice and conspired to obstruct justice by, among other things, instructing the Confederate to flee the United States and making arrangements for the Confederate to flee. (Ind. ¶¶ 32-34). During the summer and fall of 2015, the federal government was investigating the activities of the Confederate. (Ind. ¶ 32). As part of the government's investigation of the Confederate's activities, Special Agents of the Federal Bureau of Investigation ("FBI") interviewed Lin's two adult daughters on October 20, 2015, during which agents asked Lin's daughters questions about the Confederate. (Ind. ¶ 32).

1

Following these interviews, Lin warned the Confederate about the federal government's interest in the Confederate's activities and instructed him to flee immediately. (Ind. ¶ 33). At the request of the Confederate and while working with others, Lin arranged for the Confederate's immediate departure from the United States. (Ind. ¶ 33). On or about October 28, 2015, the Confederate departed for Beijing in the People's Republic of China ("PRC") aboard a flight from John F. Kennedy International Airport ("JFK Airport"). (Ind. ¶ 34).

The government's trial proof will show that, prior to the interview with Lin's daughters, the government served a federal grand jury subpoena on one of Lin's daughters with respect to a pending grand jury investigation in the Eastern District of New York involving the Confederate. As Lin was aware that her daughter had received a grand jury subpoena, she was therefore aware of a then-pending grand jury investigation in the Eastern District of New York.

The government's trial proof will also include numerous electronic messages that Lin sent to the Confederate through a third-person in order to avoid detection by law enforcement. In those messages, Lin advised the Confederate that law enforcement was asking questions about him and encouraged him to leave the United States immediately, in order to avoid apprehension. As noted, Lin subsequently made arrangements for the Confederate's outbound travel to the PRC.

At trial, the government will prove that, moments before the Confederate boarded a flight at JFK Airport for the PRC on October 28, 2015, FBI agents served the Confederate with a subpoena commanding his appearance on November 5, 2015, before a grand jury in the Eastern District of New York. The government will further prove that the Confederate has never returned from the PRC to testify in the grand jury.

II.   Communications with Counsel for the Confederate

In the days surrounding the Confederate's departure from the United States, the Confederate's counsel had several brief communications with a prosecutor in the Southern District

of New York ("SDNY") working on an investigation separate from the instant prosecution. The Confederate's counsel first contacted a prosecutor in the Eastern District of New York ("EDNY") working on this instant case the day after the Confederate's departure from JFK Airport.

As part of the SDNY investigation, FBI agents briefly interviewed the Confederate on September 19, 2015. During this interview, agents asked about the present location of one individual who eventually became a defendant in the SDNY's prosecution.

On October 23, 2015, the Confederate's counsel first attempted to contact the SDNY. On or about October 28, 2015—the day of the Confederate's departure—the Confederate's counsel verbally informed an SDNY prosecutor that the Confederate might return to the PRC soon. The SDNY prosecutor responded that the Confederate was at liberty to do as he wished, and if there came a time when the prosecutor had more to say, the prosecutor would contact the Confederate's counsel. The prosecutor did not disclose whether any agency of the United States government was then investigating the activities of the Confederate.

During the evening of October 28, 2015, shortly after agents had served the Confederate with a grand jury subpoena at JFK Airport, the Confederate's counsel sent an email to the SDNY prosecutor and asked why his client had been served with a grand jury subpoena notwithstanding their conversation earlier that day. In the email, the Confederate's counsel suggested that the SDNY prosecutor could have contacted the counsel to arrange for service of the subpoena. The SDNY prosecutor responded by directing the Confederate's counsel to contact EDNY, because the subpoena related to an EDNY investigation.

On October 29, 2015, the Confederate's counsel contacted an EDNY prosecutor to notify the prosecutor of the fact of the Confederate's representation by counsel. This was the first contact between the Confederate's counsel and the EDNY. Subsequent email communications

concerned an adjournment of the Confederate's scheduled grand jury appearance from November 5, 2015 until his eventual return to the United States. As noted, the Confederate has not returned to the United States.

## ARGUMENT

I. The Communications at Issue Are Not Discoverable

The communications the defendant seeks—purportedly to show the Confederate's state of mind as to the ongoing grand jury investigation or whether the U.S. government actually granted permission for the Confederate to depart the United States—are not discoverable under the Federal Rules of Criminal Procedure, absent relevance to any material issues of fact regarding the pending obstruction of justice charges.

The Federal Rules of Criminal Procedure require the government to provide, upon the defendant's request, material that is "within the government's possession, custody, or control" and "is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Evidence is "material" if it can "be used to counter the government's case or to bolster a defense[.]" United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993) (citation omitted). However, "[m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case." United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991) (quoting United States v. Ross, 511 F.2d 757, 762-63 (5th Cir. 1975)). Instead, the requested evidence must "enable the defendant 'significantly to alter the quantum of proof in his favor.'" United States v. McGuinness, 764 F. Supp. 888, 894 (S.D.N.Y. 1991) (quoting United States v. Whiteside, 810 F.2d 1306, 1308 (5th Cir. 1987) and citing United States v. Agajanian, 852 F.2d 56, 58 (2d Cir. 1988)). In sum, evidence is "material" if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting

4

impeachment or rebuttal." United States v. Stein, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (citing United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993)).

The defendant bears the burden of establishing materiality. McGuinness, 764 F. Supp. at 894-95 ("[I]t is incumbent upon a defendant to make a prima facie showing of 'materiality.'" (quoting United States v. Buckley, 586 F.2d 498, 506 (5th Cir. 1978) and citing, inter alia, United States v. Jordan, 399 F.2d 610 (2d Cir. 1968))); see also Maniktala, 934 F.2d at 28. To carry this burden, the defendant must do more than proffer conclusory allegations. United States v. Persico, 447 F. Supp. 2d 213, 217 (E.D.N.Y. 2006) ("To the extent that [defendants] rely upon Rule 16(a)(1)(E)(i)'s requirement that the government, upon motion of a defendant, disclose items 'material to preparing the defense,' the mere claim that the items sought are 'material' is not enough."); United States v. Finnerty, 411 F. Supp. 2d 428, 431 (S.D.N.Y. 2006) ("Conclusory allegations are insufficient . . . to establish materiality[.]"); United States v. Rigas, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003) ("To establish a showing of materiality, a defendant must offer more than the conclusory allegation that the requested evidence is material.") (citation and quotation marks omitted). That is, a defendant must specify what evidence he is seeking, why he expects that the government has such evidence and what he intends to make of the information. United States v. Reddy, 190 F. Supp. 2d 558, 573 (S.D.N.Y. 2002).

Here, the defendant has failed to make the requisite showing of materiality. The defense purportedly seeks communications with the Confederate's counsel to demonstrate the Confederate's state of mind or to prove that the Confederate somehow left the United States with the blessing of the U.S. government. However, the communications are not discoverable under either theory.

Section 1512(c)(2) imposes criminal liability for any person who: "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so." Whether the Confederate believed he himself was under investigation or had independent plans to leave the United States—however so informed by his counsel's communications with a different prosecuting office—has no relevance to whether the defendant, with corrupt intent, sought to undermine an ongoing grand jury investigation in this district by warning the Confederate of the focus of the EDNY's inquiry and by arranging for the Confederate to flee the jurisdiction. In sum, the information sought by the defense has no relevance to any element of an offense under Section 1512(c)(2). As the Court ruled in previously denying the defendant's pretrial motion to dismiss the obstruction of justice charges in this case:

> As the Government correctly notes, the issue is not whether [the Confederate's] leaving the jurisdiction was legal, but whether Defendant had the intent to obstruct an official proceeding. The Government sufficiently alleges that Defendant had the requisite intent for obstruction. Thus, the question of Defendant's intent is properly posed to the jury to determine based upon the admissible evidence and the Court's legal instruction.

(Dkt. 80 at 8-9 (citations omitted)).[1]

Indeed, multiple courts have held that assisting others in avoiding investigation or prosecution constitutes an obstructive act under Section 1512. For example, in United States v. Martinez, 862 F.3d 223, 237-38 (2d Cir. 2017), the Second Circuit recently upheld the trial conviction under Section 1512 of a police officer who reported to coconspirators located out of the United States as to whether there were outstanding warrants in their names. "[I]t could be easily inferred that [the defendant's] persistent searches of NYPD databases, and his reports back

---

[1] Similarly, the defendant has requested a copy of the subpoena served on the Confederate. However, the defendant is not entitled to anything more than receiving notice of the subpoena, as the subpoena itself has no relevance to the defendant's state of mind and intent in engaging in the obstructive conduct.

to coconspirators who had not been arrested, were intended to make it possible for them to avoid arrest by absconding before any outstanding warrants could be executed, thereby potentially interfering with an ongoing grand jury proceeding." Id. at 238; see, e.g., United States v. Volpendesto, 746 F.3d 273, 286-87 (7th Cir. 2014) (upholding conviction under Section 1512(k) for conspiring to violate Section 1512(c)(2) where one defendant found out from law enforcement friends that another individual was under investigation and tipped off that individual to the government's investigation); United States v. Ahrensfield, 698 F.3d 1310, 1325 (10th Cir. 2012) (upholding defendant's obstruction of justice conviction under Section 1512(c)(2) for informing a target of a law enforcement investigation that he and his automobile shop were being investigated for narcotics trafficking, and stating that "[a] rational juror could . . . conclude the natural and probable effect of disclosing the existence of the ongoing undercover investigation of Car Shop to [the target of the investigation] was to impede a potential grand jury investigation."); United States v. Newton, 452 Fed. Appx. 288, 290-91 (4th Cir. 2011) (per curiam) (unpublished) (affirming conviction under Section 1512(c)(2) for defendant who had communicated the existence of arrest and search warrants to her sister, a coconspirator); United States v. Matthews, 505 F.3d 698, 707 (7th Cir. 2007) (helping friend escape prosecution demonstrates improper purpose, in connection with conviction under Section 1512(c)(1)); cf. United States v. Batista, No. 06-CR-265, 2010 WL 1193314, at *9-10 (E.D.N.Y. Mar. 24, 2010) (upholding the obstruction of justice conviction under Section 1512(c)(2) of an NYPD detective who, among other acts, attempted to dissuade others from cooperating with the government's investigation).

Moreover, as the factual proffer above makes clear, the U.S. government never informed the Confederate whether he was under investigation, or encouraged the Confederate to leave the United States. At most, the SDNY prosecutor provided no information to the

7

Confederate's counsel regarding the Confederate's status, and the Confederate's counsel had no contact with the prosecuting office in this case until <u>after</u> the Confederate had already departed the United States. Accordingly, the materials the defendant seeks are not discoverable under Rule 16, and the defendant's motion to compel should be denied.

II.     The Communications at Issue Are Not Discoverable Under <u>*Brady*</u>

Under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), and its progeny, the government must disclose "evidence favorable to the accused." Evidence is not "favorable" merely because it is not affirmatively incriminating. <u>United States v. Scarpa</u>, 913 F.2d 993, 1010-11 (2d Cir. 1990) (tape recordings of conversations in which defendants made statements that were either innocuous or relevant only to uncharged crimes not discoverable under <u>Brady</u>).

As demonstrated above, the materials sought by the defense are not discoverable and in no way exculpate the defendant's corrupt efforts—committed after she had already been arrested in this case—to frustrate an ongoing grand jury investigation by removing a witness of interest to the inquiry from the United States. Moreover, assuming <u>arguendo</u> any merit to the defendant's claims, the government has already complied with its <u>Brady</u> obligations by providing the detailed summary above of communications between U.S. prosecutors and the Confederate's counsel.[2]

---

[2]     Should the Court be so inclined, the government is prepared to show the Court the communications at issue in an <u>in camera</u> proceeding.

8

CONCLUSION

      For the reasons set forth above, the defendant's motion for disclosure of communications between government lawyers and counsel for the Confederate should be denied.

Dated:  Brooklyn, New York
         November 2, 2018

                                    Respectfully submitted,

                                    RICHARD P. DONOGHUE
                                  United States Attorney

           By:    /s/ Alexander A. Solomon
                   Alexander A. Solomon
                   Douglas M. Pravda
                   Ian C. Richardson
                   Assistant U.S. Attorneys
                   (718) 254-7000