UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA                 15 CR 601 (S-2) (DLI)


-against-                               ECF


YING LIN
-----------------------------------------------------x




**YING LIN'S MEMORANDUM OF LAW IN RESPONSE TO THE
GOVERNMENT'S OPPOSITION TO HER REQUEST FOR DISCOVERY**

Deborah Colson
Colson Law PLLC
80 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 257-6455

# I.

## PRELIMINARY STATEMENT

Ms. Lin respectfully submits this memorandum in response to the government's opposition to her request for discovery concerning the obstruction of justice charges in the S-2 indictment. The evidence Ms. Lin seeks is discoverable under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland,* 373 U.S. 83 (1963), because it is "favorable" to her and "material to preparing the defense." First, the government has charged Ms. Lin with conspiracy to obstruct justice, and it suggests in the indictment and its present brief that it intends to offer Qin Fei as a co-conspirator. The requested evidence directly bears on whether he agreed with Ms. Lin to impede the government's investigation. Second, given Ms. Lin's interactions with Mr. Qin in September and early October 2015—including her attempt to help him find a lawyer—his counsel's subsequent communications with the government are relevant to her state of mind.

# II.

## BACKGROUND

### A.  Procedural History

Counts Three and Four of the S-2 indictment charge Ms. Lin with obstruction of justice and conspiracy to obstruct justice, in violation of 18 U.S.C. §§ 1512(c)(2) and 1512(k). The charges concern a 2015 grand jury investigation into the "activities" of a Chinese national named Qin Fei, mysteriously identified in the indictment as the "Confederate." (S-2 ind. ¶ 32.) The government alleges that Ms. Lin improperly advised Mr. Qin of the investigation, encouraged him to leave the country, and made arrangements for his outbound travel to the PRC. (*Id.* at ¶¶ 32-33.)

Ms. Lin first sent the government a written request for discovery related to the obstruction counts on November 23, 2016. *See* Ex. A. When the government neglected to

respond, she reiterated her discovery demands in a second letter dated June 1, 2018. *See* Ex. B.

Among other items, Ms. Lin requested:

A. <u>Communications with Qin Fei and his Attorney</u>: All records, reports, memoranda, notes, emails, texts, or other writings that contain the substance of any oral or written statements made in September or October 2015 to Qin Fei or his attorney by law enforcement authorities or members of the Justice Department, including agents or employees of the U.S. Attorneys' offices in the Southern and Eastern Districts of New York. Include all statements addressing whether Qin Fei was: (1) a witness, target, or subject of a criminal or grand jury investigation, (2) under surveillance, and/or (3) permitted to leave the United States.

B. <u>Interrogation of Qin Fei</u>: All law enforcement reports, documents, memoranda, notes, emails, or texts referencing the interaction between law enforcement agents and Qin Fei on September 19, 2015, in or around the Waldorf Astoria Hotel. Include all statements addressing whether Qin Fei was: (1) a witness, target, or subject of a criminal or grand jury investigation, (2) under surveillance, and/or (3) permitted to leave the United States.

C. <u>Surveillance of Qin Fei</u>: All surveillance logs, law enforcement reports, documents, memoranda, notes, emails, or texts memorializing the surveillance of Qin Fei by law enforcement agents in September and October 2015. Also state the dates of surveillance, the scope and nature of the surveillance, and the number and names of all law enforcement agents involved.

D. <u>Qin Fei Subpoena</u>: A copy of the subpoena served on Qin Fei prior to his departure from the United States on October 28, 2015.

The government responded on October 18, 2018. *See* Ex. C. It confirmed that the FBI had interviewed Mr. Qin in September 2015, but declined to provide additional information or materials, including: (1) a written report of the FBI interview, (2) communications between the government and Mr. Qin or his attorney, or (3) the subpoena served on Mr. Qin prior to his departure from the United States. *See id.*

In its current filing, the government argues that the requested materials are "irrelevant to whether the defendant in fact obstructed justice." (Gov. Br. 1.)

B.  Factual Background

The government's summary of its expected trial evidence mischaracterizes and ignores critical information.

First, the government incorrectly implies that Ms. Lin had notice of the grand jury investigation "involving the Confederate [Mr. Qin]" in September 2015 when her daughter was subpoenaed. (Gov. Br. 2.) This is untrue. The subpoena served on Ms. Lin's daughter ordered her "to testify before the court's grand jury" but did not identify Mr. Qin as the target or provide any information about the suspected offender or offense. *See* Ex. D. Accordingly, Ms. Lin could not have known that the investigation concerned Mr. Qin. Notably, Ms. Lin herself was also under investigation at the time.

Second, the government ignores evidence demonstrating that Mr. Qin knew of its interest in him prior to Ms. Lin's "warn[ing]." (Gov. Br. 2.) Ms. Lin will show that Mr. Qin retained counsel nearly two weeks before her daughters were interviewed by the FBI. Mr. Qin was first advised to retain a lawyer by a male colleague in late September 2015, the week after he was questioned at the Waldorf-Astoria Hotel. The two discussed hiring an attorney again on October 1, 2018, by which time Mr. Qin had also noticed that he was under FBI surveillance. He retained counsel on October 7, 8 or 9, 2015. Ms. Lin's daughters were not interviewed and asked questions about him until October 20, 2015. (*Id.* at 1.)

The centerpiece of the government's case appears to be the electronic messages it claims Ms. Lin sent to Mr. Qin through an intermediary in late October 2015. According to the government, she advised him that "law enforcement was asking questions about him and encouraged him to leave the United States immediately." (Gov. Br. 2.) Again, the government ignores critical information. Ms. Lin will demonstrate that she never expected Mr. Qin to flee the

country surreptitiously. In fact, in early October 2015, she attempted to help him find a lawyer to represent him in connection with a possible investigation. The message referenced by the government was sent weeks later, after Mr. Qin had retained counsel and his counsel had attempted to communicate with the SDNY. Further, while Ms. Lin encouraged Mr. Qin to leave New York, she also advised that he might be required to remain if ███████████████ ████████████████████████████████████ (emphasis added).

Mr. Qin left the United States on October 28, 2015. As the government acknowledges, prior to his departure, his counsel "verbally informed an SDNY prosecutor that the Confederate [Mr. Qin] might return to the PRC soon." (Gov. Br. 3.) The prosecutor neglected to mention the EDNY investigation. (*Id.*) Instead, he responded that Mr. Qin "was at liberty to do as he wished." (*Id.*)

According to the government, Mr. Qin was served with a subpoena prior to boarding his flight. (Gov. Br. 2.) Ms. Lin will demonstrate that she had no prior knowledge of the subpoena and no communication with Mr. Qin at the airport or after he left New York.

## III.

## THE DISOCVERY MS. LIN REQUESTS IS MATERIAL AND EXCULPATORY

The Court should order the government to comply with Ms. Lin's discovery request because the evidence she seeks is "favorable" to her and "material to preparing the defense."

### A. Rule 16 and *Brady*

Federal Rule of Criminal Procedure 16 requires the government to disclose evidence that is "within the government's possession, custody, or control" and is "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E)(i). "The 'materiality standard normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating

testimony, or assisting impeachment or rebuttal.'" *United States v. Stein,* 488 F.Supp.2d 350, 356-57 (S.D.N.Y. 2007) (quoting *United States v. Lloyd,* 992 F.2d 348, 351 (D.C.Cir. 1993)). "'Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense.'" *Stein,* 488 F.Supp.2d at 357 (quoting *United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir. 1993)). "'There must be some indication that the pretrial disclosure of the disputed evidence would ... enable[] the defendant significantly to alter the quantum of proof in his favor.'" *Stein,* 488 F.Supp.2d at 357 (quoting *United States v. Maniktala,* 934 F.2d 25, 28 (2d Cir. 1991)).

*Brady v. Maryland,* 373 U.S. 83 (1963), requires the government to disclose information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999); *see also Brady,* 373 U.S. at 87 (due process obligates disclosure of "evidence favorable to an accused"). "This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions." *United States v. Rodriguez,* 496 F.3d 221, 225 (2d Cir. 2007). Accordingly, "it recognizes the possibility that the evidence on which the prosecution relies to prove the defendant's guilt is not necessarily truthful, accurate, or complete." *Id.*

B. The Evidence Ms. Lin Requests is Discoverable under Rule 16 and *Brady v. Maryland*

The government contends that the materials Ms. Lin seeks are irrelevant because they concern Mr. Qin's state of mind, not hers. (Gov. Br. at 6.) In so arguing, however, the government conveniently avoids mentioning that it has also charged Ms. Lin with conspiracy to obstruct justice under 18 U.S.C. § 1512(k). Mr. Qin's state of mind is directly relevant to the conspiracy count.

To convict Ms. Lin of conspiracy, the government must demonstrate that she entered into an agreement with at least one other person to commit the crime of obstruction under § 1512(c)(2).[1] *See United States v. Praddy,* 725 F.3d 147, 153 (2d Cir. 2013) ("The essence of the crime of conspiracy … is the *agreement* … to commit one or more unlawful acts") (emphasis in original) (citation omitted); *United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181, 1191 (2d Cir. 1989) ("The gist of conspiracy is, of course, agreement"); *see also United States v. Volpendesto,* 746 F.3d 273, 286-87 (7th Cir. 2014) (finding sufficient evidence of a conspiracy under § 1512(k) because the defendant entered into an "unlawful agreement" to violate § 1512(c)(2)).

In the indictment and its present brief, the government suggests that Ms. Lin  agreed to obstruct justice with Mr. Qin. *See* Gov. Br. 2 ("Following these interviews, Lin warned the Confederate about the federal government's interest in the Confederate's activities and instructed him to flee immediately. *At the request of the Confederate* and while working with others, Lin arranged for the Confederate's immediate departure from the United States") (emphasis added); S-2 ind. ¶ 33 (same). Accordingly, Mr. Qin's state of mind directly bears on the conspiracy charge. If he lacked the intent to impede the grand jury investigation, then there was no agreement with Ms. Lin and accordingly, no conspiracy.

The evidence Ms. Lin requests will help her to prove Mr. Qin's lack of criminal intent. The report of his FBI interview establishes how he learned of the government's interest in him before Ms. Lin's "warning." His counsel's communications with the SDNY prosecutor demonstrate his good faith effort to cooperate with the government by apprising prosecutors of

---

[1] The elements of obstruction under 18 U.S.C. § 1512(c)(2) are: (1) awareness of a pending or reasonably foreseeable official proceeding, (2) obstruction or attempted obstruction of that proceeding, and (3) corrupt intent. *United States v. Batista,* 06-CR-265, 2010 WL 1193314, * 10 (E.D.N.Y. March 24, 2010).

his travel plans. And his counsel's communications with the EDNY prosecutor prove he lacked knowledge of the Eastern District investigation before he left New York.

The government's attempt to distinguish between the Southern and Eastern District investigations is a red herring. The prosecutors in those districts are members of the same Justice Department. Accordingly, no lay person should be expected to predict that they would neglect to communicate regarding overlapping or related investigations.

Moreover, contrary to the government's assertion, its summary of the communications is insufficient to satisfy its obligations under *Brady* or Rule 16. Should Mr. Qin's attorney or the prosecutors fail to accurately remember what they said, Ms. Lin will need their emails and notes to impeach them and/or refresh their recollection.

The communications also bear on Ms. Lin's state of mind. The government argues that "assisting others in avoiding investigation or prosecution constitutes an obstructive act under Section 1512." (Gov. Br. 6.) But not all such assistance amounts to obstruction. The defendant must act "corruptly," that is "with the purpose of *wrongfully* impeding the due administration of justice." *United States v. Matthews,* 505 F.3d 698, 706 (7th Cir. 2007) (citation omitted). And there must be a "nexus" between the obstructive act and the judicial proceeding. *See United States v. Reich,* 479 F.3d 179, 186 (2d Cir. 2007), *cert. denied*, 552 U.S. 819 (2007) (holding that § 1512(c)(2) incorporates a "nexus requirement"). "If the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Arthur Anderson LLP v. U.S.,* 125 S.Ct. 2129, 2137 (2005). As stated above, Ms. Lin will prove that she attempted to assist Mr. Qin to find an attorney in early October 2015. Mr. Qin's subsequent retention of counsel and his counsel's eventual communication with the government were the natural and probable consequences of the assistance she provided. Thus, they bolster

her argument that she lacked the intent to interfere with a judicial proceeding (or even thought that she could). In fact, while Ms. Lin encouraged Mr. Qin to leave New York, she also told him that ████████████████████████████████████████████████████████████

In a footnote, the government objects to production of the subpoena served on Mr. Qin at the airport because it alleges that the subpoena is irrelevant to Ms. Lin's state of mind. (Gov. Br. 6 n. 1.) But the subpoena is not irrelevant under the government's theory of prosecution. The government alleges that the conspiracy continued for six months after Mr. Qin left New York (until April 2016) and that he failed to comply with the subpoena during this period. *See* Gov. Br. at 2 ("At trial, the government will prove that, moments before the Confederate boarded a flight …FBI agents served the Confederate with a subpoena commanding his appearance on November 5, 2015...The government will further prove that the Confederate has never returned from the PRC to testify in the grand jury."). Such evidence, without more, may create the misimpression that Mr. Qin fled New York illegally and/or that he declined to return on the advice of Ms. Lin. In fact, Ms. Lin had no prior knowledge of the subpoena and no contact with Mr. Qin after it was served. Accordingly, the government should be prohibited from mentioning the subpoena at all during the trial. If, however, the Court permits the government to elicit testimony regarding the subpoena, including Mr. Qin's alleged lack of compliance, then Ms. Lin should be permitted to introduce the document into evidence both to complete the story and to show that nothing in it prohibited Mr. Qin's departure from New York.

## IV.

## CONCLUSION

For the above reasons, the Court should order the government to comply with Ms. Lin's discovery request.

New York, N.Y.
November 15, 2018

Deborah Colson
Colson Law PLLC
80 Broad Street, 19th Floor
New York, N.Y. 10004