U.S. Department of Justice

United States Attorney
Eastern District of New York

AAS/DMP/ICR
F. #2014R00564

271 Cadman Plaza East
Brooklyn, New York 11201

September 24, 2019

By ECF and Courtesy Copy by Interoffice Mail

Jaime L. Turton
Senior U.S. Probation Officer
U.S. Probation Department
147 Pierrepont Street
Brooklyn, New York 11201

        Re:    United States v. Ying Lin
                  Criminal Docket No. 15-601 (S-2) (AMD)

Dear Officer Turton:

        The government respectfully submits this letter in response to the defendant Ying Lin's objections to the Presentence Investigation Report ("PSR"), dated September 9, 2019. The government is prepared to prove any of the facts detailed below in a Fatico hearing.

        1.    Paragraph 6. The government does not object to the proposed insertion by the defense.

        2.    Paragraph 11. The government does not object to the proposed insertion by the defendant regarding Yuming Xia. However, any proposed insertion should also include the facts that Yuming Xia was a high-ranking member of the PRC Ministry of Foreign Affairs and that he and his daughter—who acted as the courier for the unaccompanied luggage belonging to the PRC military attaches—were both personal acquaintances of the defendant.

        3.    Paragraph 12. The defendant's objection has no merit. First, baggage that does not belong to a ticketed passenger does not become "accompanied" baggage simply because it is checked in under the name of a ticketed passenger. Second, the source and other Air Carrier employees have advised the government that the practice of accepting unaccompanied baggage and checking it in under the names of ticketed passengers—who did not check in the baggage and allowed PRC governmental authorities to take possession of the

baggage upon arrival in the PRC—violated the Air Carrier's policy and was inconsistent with the formal written arrangement between the PRC and the Air Carrier.[1]

In the case of Yuming Xia's daughter, the defendant checked the boxes in under the name of a passenger whose only direct physical contact with the boxes was to allow PRC governmental authorities to take possession of the boxes upon her arrival in the PRC. Moreover, Mr. Xia's daughter, has advised law enforcement that she was never told anything about what was inside the boxes that were checked in under her name. Thus, the defendant's suggestion that Mr. Xia's daughter meaningfully "accompanied" these boxes is without merit.

4. Paragraph 14. The paragraph regarding free construction work performed at the defendant's personal residence by Rilin workers present in the United States on diplomatic visas should remain in the PSR. The investigation revealed that, in return for foreign agent services performed on behalf of PRC officials and representatives—including through services provided through her employment with the Air Carrier and also through personal services she provided to the owners and users of the Long Island home—the defendant enjoyed substantial benefits, including free construction work performed at her home in Fresh Meadows and also at her cooperative apartment in Queens. These construction projects were not "de minimis" as the defendant falsely claims, but rather involved work crews performing multiple day contracting projects, and the tax-free purchases of home appliances that these work crews installed.

In the October 8, 2015 event described in Paragraph 14 of the PSR, agents encountered five Rilin workers present in the United States on A-2 or G-2 diplomatic visas performing construction work on the defendant's house in Fresh Meadows. Electronic communications between the defendant and Landong Wang—at the time a manager of Rilin with diplomatic privileges and immunities attached to a PRC Government diplomatic mission—indicate that the defendant arranged for a significant renovation of the ground floor rental apartment in the Fresh Meadows house in which she lived after one of her tenants moved out. This October 2015 renovation followed a multi-day May 2015 renovation of the kitchen and bathroom of a different cooperative apartment owned by the defendant after her tenant moved out. In both cases, Rilin performed all of the construction work and prepared the defendant's rental units for new occupants. Similar to the benefits she received from PRC military officers, the defendant also sought and obtained the agreement of Rilin employees to use their diplomatic tax-exempt status to make tax free purchases of home appliances. For example, in 2012, Rilin manager and accredited PRC diplomat Landong Wang used his diplomatic tax exemption to purchase a $3,454 Viking refrigerator tax free for installation in the defendant's house and moved her old refrigerator to the defendant's ground floor rental apartment

---

[1] Because this document is being publicly filed, the government refers to the defendant's former employer as "the Air Carrier."

2

In their electronic communications, Landong Wang, as well as his boss, Dan Zhong, asked for and received the defendant's agreement to perform various tasks like those that the defendant performed for other PRC government officials. For example, electronic communications reflect that the defendant arranged for objects to be shipped back to Beijing aboard Air Carrier aircraft at the request of Rilin managers present in the United States on diplomatic visas that authorized them to work only at PRC Government facilities.

5. <u>Paragraphs 17</u>. The paragraphs regarding the defendant's efforts to obstruct an ongoing grand jury investigation and her structuring activities should both remain in the PSR. In rejecting the defendant's motion to sever these charges from the § 951 charge, Chief Judge Dora L. Irizarry found that the obstruction of justice charges in the Superseding Indictment (Counts Three and Four) and the structuring charge (Count Five) "are part of an overarching scheme involving Defendant's 'criminal conduct related to her activities as a PRC agent on U.S. soil.'" <u>United States v. Lin</u>, 2018 WL 5113139, at *3 (E.D.N.Y. Oct. 19, 2018) (citing government's brief ECF No. 136). Moreover, Chief Judge Irizarry further found, "Defendant's alleged obstruction arose out of her knowledge of the government's investigation of her foreign agent activities. Defendant's alleged structuring arose in part out of her alleged compensation for acting as a foreign agent." <u>Id.</u> Accordingly, the defendant's claim that her obstruction of justice and her structuring activities have no relation to her activities as a PRC agent are entirely without merit.

6. <u>Paragraph 17</u>. The government is prepared to prove at a <u>Fatico</u> hearing that the defendant regularly conducted structuring activities, that she provided cash to coworkers in exchange for checks, and that she sent funds from the United States to the PRC, all of which activities were conducted "to conceal her income, including income received as a PRC agent," and which activities "provide[] evidence of the benefits she received as a PRC agent." <u>Id.</u> The government does not disagree with the defendant's assertion that "it was not illegal to maintain a bank account in China or to transfer money there." (Def. Ltr. at 3). However, the defendant's use of a foreign bank account is relevant conduct that, like her structuring activity, was part of her efforts to avoid government scrutiny of her assets and wealth, which are inconsistent with her employment as a customer service agent for an airline.

7. <u>Paragraph 19</u>. Assuming, <u>arguendo</u>, that there is an analogous Guidelines provision applicable to the defendant's conduct, which the government contends there is not (<u>see</u> <u>supra</u> No. 8), the obstruction of justice enhancement would be appropriate, as the "Defendant's alleged obstruction arose out of her knowledge of the government's investigation of her foreign agent activities." <u>Lin</u>, 2018 WL 5113139, at *3. Moreover, the defendant's foreign agent activities were not limited to official services provided in her capacity as an Air Carrier employee. Rather, the defendant's foreign agent activities extended to aiding the Confederate, who was himself under investigation for acting as an agent of the PRC. Accordingly, the obstructive conduct related to the defendant's conviction

3

or a closely related offense, and the obstruction of justice enhancement therefore applies. See U.S.S.G. § 3C1.1.

8. Paragraph 22. The defendant's argument that U.S.S.G. § 2B1.1 is the most analogous Guideline should be rejected for the same reason that the Probation Department's selected Guideline, § 2C1.1, is not the most analogous Guideline: neither Guideline adequately accounts for the serious threat to U.S. national security caused by a foreign agent's undisclosed activities in the United States on behalf of a foreign government, in violation of 18 U.S.C. § 951.

As the Probation Department acknowledges in the PSR (See PSR ¶ 79), and as the government informed the Court during the defendant's plea hearing, the government does not believe that there is a sufficiently analogous Guideline for the offense of conviction, 18 U.S.C. § 951. See Def. Plea Agr. ¶ 2 ("Because 18 U.S.C. § 951 is a felony for which no Guideline expressly has been promulgated, and because there is no sufficiently analogous Guideline, the Office believes that the provisions of 18 U.S.C. § 3553 control the imposition of an appropriate sentence in this case, pursuant to U.S.S.G. § 2X5.1."). The government's position is supported by the majority of courts to have considered the issue of what Guideline range to apply to violations of 18 U.S.C. § 951. See United States v. Soueid, No. 11-CR-494, ECF No. 59 (E.D. Va.) (Defendant convicted of a violation of § 951 for conducting surveillance on Syrian dissidents in the United States on behalf of Syrian government; Court found no sufficiently analogous Guideline); United States v. Chun, No. 16-CR-618, ECF No. 17 at 10 (S.D.N.Y.) (Defendant, a FBI technician, convicted of violating § 951 for providing sensitive, but not classified, information to Chinese officials) (Parties jointly submitted that there was no analogous Guideline, and Court agreed); United States v. Alvarez, No. 05-CR-20943 (S.D. Fla.) (Defendant responded to taskings by Cuban intelligence services over thirty-year period and sent reports back to Cuba in response to those taskings; Court found no sufficiently analogous Guideline range); United States v. Buryakov, No. 15-CR-73 (S.D.N.Y.), ECF No. 158 at 6-7, 17 (Defendant convicted for violating § 951, following a plea pursuant to Fed. R. Crim. P. 11(c)(1)(C), for agreeing to provide information to a Russian official; Court found no analogous Guideline range); United States v. Duran, No. 07-CR-20999 (S.D. Fla.), ECF No. 488 at 42-43 (Defendant convicted of §§ 371 and 951 for attempting to bribe/extort a U.S. citizen on behalf of the government of Venezuela; Court found no analogous Guideline).

The defendant's chosen Guideline, § 2B1.1, is designed to quantify the harm caused or intended by theft of property through fraud and other means. While the defendant certainly deprived New York State tax authorities of sales tax revenue through her receipt of tax-free goods and services as part of her compensation for acting as an agent of the PRC Government, it is absurd to argue that her theft of sales tax revenue is the primary conduct for which she should be punished, or that her offense conduct, and her ultimate sentence, is appropriately compared to that of other thieves and fraudsters. Similarly, the Probation Department's chosen Guideline, § 2C1.1, while intended to quantify and approximate the harm caused by those in positions of public trust who betray their responsibility to act in the

4

public interest, is not intended to incorporate any measure of the harm caused or threatened to U.S. national security by those who covertly aid a foreign government on U.S. soil. Thus, while the defendant did abuse her privileged access to areas of JFK Airport to perform tasks beyond the scope of her employment in exchange for compensation separate from the salary she received from her employer, i.e., commercial bribes, § 2C1.1 does not adequately address the most harmful aspects of that conduct: that she performed these actions to aid the military officers of the PRC Government without disclosing her activities to the U.S. government.

9. Paragraph 25. Assuming arguendo that § 2C1.1(a)(2) applies, which it does not, the benefits provided to the defendant, which included tax savings on and electronics purchases listed in the indictment, as well as the free contracting work at two of the defendant's real estate properties, exceeds $5,000. The government agrees with the defendant that she benefitted from tax savings on liquor, rather than the full price of the liquor.

10. Paragraphs 44, 46, 48. The government does not object to the proposed changes by the defendant.

11. Paragraph 48. The government cannot prove by a preponderance of the evidence that the shotgun and ammunition, seized from the defendant's home on April 6, 2016, belonged to the defendant.

12. Paragraphs 53, 54, 76. The government does not object to the proposed changes by the defendant.

Very truly yours,

RICHARD P. DONOGHUE
United States Attorney

By: /s/ Alexander A. Solomon
Alexander A. Solomon
Douglas M. Pravda
Ian C. Richardson
Assistant U.S. Attorneys
(718) 254-6074

cc: Defense counsel (by ECF and email)
Clerk of the Court (AMD) (by ECF and interoffice mail)